PAGES 1 - 112

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| PAYMENTONE CORPORATION, | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-11-2186 YGR |
| | ) | |
| VS. | ) | WEDNESDAY, DECEMBER 19, 2012 |
| | ) | |
| PAYPAL, INC., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| DEFENDANT. | ) | CLAIMS CONSTRUCTION |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:          NIRO, HALLER & NIRO
                        181 WEST MADISON STREET, SUITE 4600
                        CHICAGO, ILLINOIS 60602
                   BY:  MATTHEW G. MC ANDREWS, ESQUIRE
                        KARA L. SZONDOWSKI, ESQUIRE
                        OLIVER D. YANG, ESQUIRE


FOR DEFENDANT:          FISH & RICHARDSON
                        12390 EL CAMINO REAL
                        SAN DIEGO, CALIFORNIA 92130
                   BY:  JUANITA R. BROOKS, ESQUIRE

                        FISH & RICHARDSON
                        500 ARGUELLO STREET, SUITE 500
                        REDWOOD CITY, CALIFORNIA 94063
                   BY:  KATHERINE K. LUTTON, ESQUIRE

                        (APPEARANCES CONTINUED)

REPORTED BY:            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                        OFFICIAL COURT REPORTER


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1

2      **FOR DEFENDANT:**          FISH & RICHARDSON
                                   1425 K STREET NW, SUITE 1100
3                                  WASHINGTON, DC 20005
                             BY:  STEPHEN A. MARSHALL, ESQUIRE
4

5      **ALSO PRESENT:**           JOE LYNAM, CEO PAYMENTONE
                                   EVAN MEYER, CFO PAYMENTONE
6                                  MARK SNYCERSKI, VP OF ENGINEERING

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1   WEDNESDAY, DECEMBER 19, 2012                    10:20 A.M.

2                    P R O C E E D I N G S

3        THE CLERK:  CALLING CIVIL ACTION 11-2186 PAYMENTONE

4   VERSUS PAYPAL.

5     COUNSEL, PLEASE STATE YOUR APPEARANCES.

6        MR. MC ANDREWS:  ON BEHALF OF PLAINTIFF, PAYMENTONE

7   CORPORATION, MATT MC ANDREWS.

8        MS. SZPONDOWSKI:  ON BEHALF OF PAYMENTONE KARA

9   SZPONDOWSKI.

10        MR. YANG:  OLIVER YANG ALSO ON BEHALF OF PAYMENTONE.

11        MR. MC ANDREWS:  YOUR HONOR, WOULD YOU LIKE ME TO

12   INTRODUCE OUR CLIENT REPRESENTATIVES?

13        THE COURT:  I WOULD.

14        MR. MC ANDREWS:  WE HAVE JOE LYNAM, CHAIRMAN AND CEO

15   OF PAYMENTONE.  WE HAVE EVAN MEYER, THE CHIEF FINANCIAL

16   OFFICER OF PAYMENTONE.  AND MARK SNYCERSKI, WHO IS THE CHIEF

17   TECHNOLOGY OFFICER.  SO WE HAVE THREE OF THE CHIEFS HERE WITH

18   US, AND I AM THE INDIAN.

19        THE COURT:  GOOD MORNING.

20        MS. BROOKS:  GOOD MORNING, YOUR HONOR, JUANITA

21   BROOKS, KATHY LUTTON AND STEVE MARSHALL FROM FISH & RICHARDSON

22   ON BEHALF OF PAYPAL.

23     WE ALSO HAVE PRESENT FROM IN-HOUSE COUNSEL HELEN LI AND

24   RACHEL SHICOFF FROM EBAY.

25     OUR PRESENTATION TODAY, YOUR HONOR, WITH THE COURT'S
```

1    PERMISSION, MS. LUTTON IS GOING TO HANDLE THE TERMS -- THE

2    DISPUTED TERMS OF THE '049 PATENT.  MR. MARSHALL AND I HAVE

3    SPLIT UP THE DISPUTED TERMS OF THE '500 AND THE '504 PATENTS,

4    AND I WILL BE HANDLING THE ONE DISPUTED TERM OF OUR

5    AFFIRMATIVE PATENT, THE '917.

6              **THE COURT:**  OKAY.

7              **MS. BROOKS:**  THANK YOU.

8              **THE COURT:**  SO I REALIZED THAT I HAD KIND OF CHANGED

9    THE WAY I'VE DONE MY MARKMANS, BUT I AM NOT GOING TO DO THAT

10   WITH YOU BECAUSE I DIDN'T PUT YOU ON NOTICE OF IT.

11       AND I ASSUMED THAT YOU WOULD HAVE ALL WORKED ON THESE

12   BEAUTIFUL PRESENTATIONS AND WERE READY TO GO THE WAY YOU

13   INTENDED TO GO, SO I AM GOING TO LET YOU GO THAT THIS TIME.

14       FOR FUTURE REFERENCE, WHAT I HAVE BEEN DOING AND WHAT I

15   FIND TO BE VERY HELPFUL IS THAT I'VE HAD THE PARTIES NOW DO

16   POINT COUNTERPOINT BY TERM.  AND FOR ME THAT TENDS TO BE MOST

17   HELPFUL BECAUSE I THINK ABOUT THESE THINGS IN TERMS.

18       SO, HAVING HEARD THE WAY I NOW DO IT, I HAVE ONE PARTY

19   START WITH THEIR ARGUMENT REGARDING THE TERM AND THEN I GO TO

20   THE OTHER PARTY AND HAVE THEM ARGUE.  AND THAT ALLOWS ME TO

21   KIND OF FLUSH IT ALL OUT IN ONE SITTING OR IN ONE COHESIVE

22   PERIOD BEFORE MOVING ON TO THE NEXT TERM.

23       BUT I AM NOT GOING TO DO THAT BECAUSE I SUSPECT YOU'VE GOT

24   A NICE, COHESIVE PRESENTATION AND ESPECIALLY IN LIGHT OF MY

25   FRUSTRATION THE LAST TIME I WAS IN FRONT OF YOU, WHICH I ADMIT

```
1    I SLEPT 11 HOURS THAT NIGHT, BY THE WAY, SO I WAS VERY TIRED.

2    I DECIDED I WOULD NOT PUT YOU THROUGH THAT LAST-MINUTE CHANGE.

3       BUT THAT DOESN'T MEAN THAT I MIGHT NOT ASK SOME QUESTIONS

4    OF THE OTHER SIDE WHEN WE GO THROUGH IT.

5          MR. MC ANDREWS:  WE HAVE CONFERRED, AND I THINK WE

6    ARE GOING TO GO ALONG WITH YOUR HONOR'S WAY.  WE HAVE AGREED

7    TO GO TERM BY TERM, WHICH I THINK IS A BETTER FORMAT FOR THE

8    PARTIES AS WELL AS THE COURT, IF THAT'S ALL RIGHT.

9          THE COURT:  GREAT.

10         MS. BROOKS:  WE ARE PREPARED TO DO THAT, YOUR HONOR.

11   WE HAVE SPLIT THE SLIDE DECKS ACCORDINGLY.

12         THE COURT:  I DIDN'T TELL YOU I WAS DOING THAT.

13         MS. BROOKS:  WE JUST KNEW.

14         THE COURT:  MAYBE IT'S GETTING OUT THERE.  YOU NEVER

15   KNOW.  GOOD ENOUGH.

16      LET ME JUST PULL UP MY NOTES AND THEN WE WILL GET STARTED.

17   MR. MC ANDREWS, CORRECT?

18         MR. MC ANDREWS:  IT IS, YOUR HONOR, THANK YOU.

19      I JUST WANTED TO MAKE CERTAIN EVERYONE'S MONITOR IS

20   PROJECTING THIS IN THE CORRECT LANDSCAPE.

21         THE COURT:  I DO HAVE THAT LANDSCAPE UP.

22      THANK YOU.  OKAY.  I AM READY.  THANK YOU.

23         MR. MC ANDREWS:  GOOD MORNING, YOUR HONOR.

24         THE COURT:  GOOD MORNING.

25         MR. MC ANDREWS:  WE HAVE GENERALLY TARGETED THE TWO
```

1    TO THREE HOURS' TIME PERIOD ALLOTTED FOR A MARKMAN THAT I

2    THINK IS SPECIFIED IN YOUR STANDING ORDER.  I DON'T KNOW

3    WHETHER OR NOT YOU WERE EXPECTING --

4            **THE COURT:**  THAT IS ALL I WAS EXPECTING.

5            **MR. MC ANDREWS:**  OKAY.  I WAS ACTUALLY GOING TO SAY A

6    SHORTER PRESENTATION BY THE PARTIES.

7            **THE COURT:**  IF I DON'T SPECIFY, THEN I THINK IT'S

8    ONLY FAIR THAT YOU ARE ALLOWED WHAT'S IN MY STANDING ORDER,

9    AND THAT'S WHAT WAS THERE.

10       GO AHEAD.

11           **MR. MC ANDREWS:**  VERY WELL.  I WAS NOT THE LAST ONE

12   IN ON THE JOKE.  I REALIZE THAT WHAT WE ARE LOOKING AT, THIS

13   NICE BACKDROP OF THE OPENING SLIDE, OF COURSE IS NOT OAKLAND,

14   CALIFORNIA.  IT'S WHAT I SAW THIS MORNING LOOKING ACROSS THE

15   BAY.  I USED ONE OF OUR CLIENT'S SOURCE SLIDES.

16       SO WE PREPARED A VERY, VERY BRIEF DECK OF SLIDES.  THERE

17   ARE ONLY SIX SUBSTANTIVE SLIDES HERE.  THEY REALLY COVER SOME

18   OF THE BASIC PRINCIPLES OF CLAIM CONSTRUCTION.

19       WHY ARE WE HERE.  YOU WILL SEE OTHER -- MANY MORE THINGS

20   THAT WE WANT TO SHARE WITH THE COURT, BUT THAT WILL COME FROM

21   THE SOURCE MATERIAL, THE PATENTS THEMSELVES, IN A FEW

22   INSTANCES SOME OF THE BRIEFING OF THE PARTIES, AND THE

23   PROSECUTION HISTORY OF THE PATENT.

24       SO, LET'S TURN TO SOME OF THE OVERRIDING PRINCIPLES OF

25   CLAIM CONSTRUCTION.  AND REALLY THE FRAMEWORK THAT THE SUPREME

```
1    COURT SET OUT FOR THE COURTS AND PATENT COUNSEL WITH ITS 1995

2    DECISION IN THE MARKMAN CASE.

3              THE COURT:  I AM GOING TO INTERRUPT ALREADY.

4         DO I HAVE A HARD COPY OF YOUR SLIDES?

5              MR. MC ANDREWS:  YOU DO.

6         I AM SORRY, I GAVE -- I GAVE YOU ONE.  I THOUGHT THAT

7    WAS -- I AM SORRY ABOUT THAT, YOUR HONOR.  I THOUGHT WE WERE

8    HANDING THAT UP.

9                   (SLIDES HANDED TO COURT.)

10        SO, WHY ARE WE HERE?  WHAT IS CLAIM CONSTRUCTION ALL

11   ABOUT?  IN THE BROADEST AND MOST GENERAL AND MOST IMPORTANT

12   SENSE, WE ARE HERE BECAUSE THE CLAIMS THEMSELVES DEFINE THE

13   METES AND THE BOUNDS OF MY CLIENT'S PROPERTY RIGHT WITH

14   RESPECT TO ITS THREE PATENTS IN SUIT AND OF COURSE WITH

15   RESPECT TO PAYPAL'S PROPERTY RIGHT WITH RESPECT TO THE PATENT

16   AND THE CLAIMS IT'S ASSERTED IN THIS LITIGATION.

17        THAT PROPERTY RIGHT IS VERY MUCH, I THINK, A SIMPLE AND

18   GOOD ANALOGY IS A FENCE.  IT TELLS THE PUBLIC WHERE JOE

19   LYNAM'S PROPERTY BEGINS AND WHERE THEIR INFRINGEMENT STARTS IF

20   THEY CROSS THAT LINE.

21        IT ALSO -- THE CLAIM LANGUAGE AND CLAIM CONSTRUCTION IS

22   IMPORTANT AS WELL BECAUSE IN THE CASE OF INFRINGEMENT, IT

23   DEFINES THE REMEDY IN TERMS OF INFRINGEMENT.  YOU CAN'T, YOU

24   CAN'T BLINDLY READ CLAIMS OR CLAIM TERMS ONTO AN ACCUSED

25   PRODUCT, YOU CERTAINLY CAN'T DO IT IN A VACUUM.  SO AS THE
```

```
1    SUPREME COURT HAS SAID, THE FEDERAL CIRCUIT HAS SAID, AND NOW

2    IT IS THE DISTRICT COURT'S PRACTICE, IT'S THE JOB OF THE COURT

3    TO CONSTRUE DISPUTED CLAIM TERMS VERY MUCH LIKE COURTS HAVE

4    HISTORICALLY GONE THROUGH THE EXERCISE OF CONSTRUING TERMS IN

5    A CONTRACT.

6         NOW, IN A RECENT CASE, THE THORNER CASE, THAT I ACTUALLY

7    ARGUED AT THE FEDERAL CIRCUIT, THE COURT SAID IN ITS OPINION:

8              "THE PATENTEE IS FREE TO CHOOSE A BROAD TERM AND

9              EXPECT TO OBTAIN THE FULL SCOPE OF ITS PLAIN AND

10             ORDINARY MEANING UNLESS THE PATENTEE EXPLICITLY

11             REDEFINES THE TERM OR DISAVOWS ITS FULL SCOPE."

12        WE ARE TALKING ABOUT TWO EXCEPTIONS REALLY TO THE

13   FUNDAMENTAL RULE THAT WE LOOK TO THE PRIMACY OF THE CLAIM

14   LANGUAGE ITSELF.  WE FOCUS ON WHAT THE INVENTOR SAID WHEN THEY

15   DRAFTED THEIR CLAIM 1, THEIR INDEPENDENT CLAIM 2, THEIR

16   DEPENDENT CLAIM 10, AND SO FORTH.  FROM THERE, THERE ARE

17   CERTAIN EXCEPTIONS THAT APPLY, BUT THERE ARE VERY, VERY STRICT

18   REQUIREMENTS THAT THE FEDERAL CIRCUIT HAS IMPOSED IN ORDER FOR

19   THOSE EXCEPTIONS TO OBTAIN IN THE PARTICULAR CASE.

20        ORDINARILY, AGAIN, BACK TO THE LANGUAGE OF THE CLAIMS,

21   THEY ARE GIVEN THEIR ORDINARY AND CUSTOMARY MEANING AS

22   UNDERSTOOD BY ONE OF SKILL IN THE ART -- WE TALKED A LITTLE

23   BIT ABOUT THAT THE LAST TIME WE WERE HERE FOR THE TUTORIAL --

24   WHEN READ IN THE CONTEXT OF THE SPECIFICATION AND THE

25   PROSECUTION HISTORY.
```

1        AGAIN, THIS CONSTRUCTION, LOOKING AT THE LANGUAGE OF THE

2    CLAIMS THEMSELVES, AND THEN NOT DEVIATING FROM THAT ORDINARY

3    MEANING UNLESS THERE ARE EXCEPTIONS, HAS BEEN REPEATED.  THIS

4    THEME HAS BEEN REPEATED THROUGHOUT THE CASE LAW.

5        THESE ARE ALSO IMPORTANT ISSUES AS YOUR HONOR HAS SEEN IN

6    OUR BRIEFING.  THERE ARE SOME DISPUTES ABOUT WHETHER OR NOT

7    EITHER OF THE PARTIES OR BOTH ARE TRYING TO READ SPECIFIC

8    LIMITATIONS OUT OF THE EMBODIMENTS OR EVEN THE PREFERRED

9    EMBODIMENTS THAT ARE DISCLOSED IN THE SPECIFICATION OR THE

10   WRITTEN DESCRIPTION OF THE PATENTS.

11       BACK TO THE CONCEPT OF THE PRIMACY OF THE CLAIM LANGUAGE.

12   APART FROM THE WRITTEN DESCRIPTION, THE PROSECUTION HISTORY,

13   THE CLAIMS THEMSELVES PROVIDE SUBSTANTIAL GUIDANCE AS TO THE

14   MEANING OF PARTICULAR CLAIM TERMS.  THIS WAS THE PHILLIPS

15   CASE, WHICH IS THE FEDERAL CIRCUIT'S, THE FIRST SEMINAL

16   DECISION ON CLAIM CONSTRUCTION FOLLOWING THE MARKMAN DECISION.

17       AND THE FEDERAL CIRCUIT, IF YOU WILL, ADJUSTED ITS SAILS

18   WITH RESPECT TO THE ANALYSIS THE COURTS ARE TO APPLY.  AGAIN

19   THEY FOCUS ON THE PRIMACY OF THE CLAIMS SUBJECT TO EXCEPTIONS.

20       THE CONTEXT IN WHICH THE TERM IS USED IN THE ASSERTED

21   CLAIM CAN BE HIGHLY INSTRUCTIVE.  THAT IS SELF-EVIDENT.  IT'S

22   A THEME YOU HAVE SEEN IN PAYMENTONE'S BRIEF.  WE THINK FOR

23   MANY OF THESE DISPUTED TERMS, THE COURT NEEDN'T LOOK FURTHER

24   OR MUCH FARTHER THAN THE CLAIM LANGUAGE ITSELF IN THE CONTEXT

25   OF THE LANGUAGE SURROUNDING THE DISPUTED TERM, EITHER IN THAT

```
1    PARTICULAR CLAIM OR IN SOME INSTANCES IN DEPENDENT CLAIMS OR

2    EVEN OTHER INDEPENDENT CLAIMS IN THE PATENT.  THAT'S THE THIRD

3    POINT ON THE LIST.

4        OTHER CLAIMS OF THE PATENT IN QUESTION, ASSERTED AND

5    UNASSERTED, AND I WOULD ADD THE PARENTHETICAL THERE THAT THEY

6    CAN ALSO BE DEPENDENT CLAIMS WHICH BRINGS UP THE CONCEPT

7    OCCASIONALLY OF CLAIM DIFFERENTIATION.  THEY CAN ALSO BE

8    SIMILARLY WORDED PATENTS -- OR CLAIMS IN THE SAME PATENT,

9    ALTHOUGH THEY DON'T HAVE AN INDEPENDENT/DEPENDENT

10   RELATIONSHIP.

11       THE PHILLIPS COURT EMPHASIZED, OF COURSE, THAT THE PATENT

12   CLAIMS ARE TO BE READ IN VIEW OF THE SPECIFICATION.  AND THE

13   COURT WENT ON TO POINT OUT THAT THE CLAIMS ARE ACTUALLY PART

14   OF THE SPECIFICATION.

15       BACK TO THE POINT I JUST MADE ABOUT USING LANGUAGE IN

16   OTHER DEPENDENT OR EVEN INDEPENDENT CLAIMS TO ADVISE THE

17   MEANING OF A DISPUTED CLAIM TERM, THE CLAIMS ARE PART OF THAT

18   SPECIFICATION THAT IS A PRIMARY SOURCE FOR ADVISING THE CLAIM

19   CONSTRUCTION ANALYSIS.

20       AND THAT, OF COURSE, THE SPECIFICATION IS HIGHLY RELEVANT.

21   THE COURT HAS SAID THAT IN CERTAIN INSTANCES IT IS DISPOSITIVE

22   OF THE MEANING OF A DISPUTED TERM.

23       IN THE THORNER CASE, THE FEDERAL CIRCUIT EMPHASIZED THAT

24   WE DO NOT READ LIMITATIONS FROM THE SPECIFICATION INTO THE

25   CLAIMS.  WE DON'T REDEFINE WORDS; ONLY THE PATENTEE CAN DO
```

1    THAT.

2       AND IN ONE OF THE TWO EXCEPTIONS TO THE ORDINARY MEANING

3    RULE, THE EXAMPLE IS LEXICOGRAPHY.  A PATENTEE CAN BE HIS OR

4    HER OWN LEXICOGRAPHER.  HE OR SHE CAN DEVIATE FROM THE

5    ORDINARY MEANING OF A TERM PROVIDED THAT THE INVENTOR PATENTEE

6    MAKES THAT ABUNDANTLY CLEAR IN THE SPECIFICATION OR THE

7    PROSECUTION HISTORY THAT THEY INTEND TO DEVIATE FROM THE

8    ORDINARY TERM.

9       AND THEN PHILLIPS, I KNOW FOR PLAINTIFF'S COUNSEL AND

10   DEFENSE COUNSEL ALIKE, IN THIS CASE WE HAVE A LITTLE BIT OF A

11   BLEND OF THOSE.  THE PHILLIPS COURT TALKED ABOUT THE CARDINAL

12   SIN IN CLAIM CONSTRUCTION, WHICH IS READING LIMITATIONS OR

13   IMPOSING LIMITATIONS FROM THE SPECIFICATION INTO THE CLAIM

14   LANGUAGE.

15      IN THE THORNER CASE, IT INVOLVED CLAIMS DIRECTED TO A

16   TACTILE FEEDBACK HAND CONTROLLER.  AND ONE OF THE ISSUES --

17   THE CLAIM LANGUAGE ITSELF PROVIDED THAT THERE WERE MOTORS THAT

18   GENERATED VIBRATION IN THESE HAND CONTROLLERS THAT WERE

19   ATTACHED TO THE CONTROLLER.  AND THE ACCUSED PRODUCT WAS THE

20   SONY PLAYSTATION DUAL SHOCK 2 THAT GIVES YOU THE RUMBLE WHEN

21   YOU ARE PLAYING WHEN YOU REV THE ENGINE OR WHEN YOU TACKLE

22   SOMEONE IN THE MADDEN FOOTBALL GAMES.

23      THE SPECIFICATION ONLY DISCLOSED EXAMPLES WHERE THE

24   ACTUATOR THAT CREATED THE VIBRATION WAS ATTACHED TO THE

25   EXTERIOR OF THE CONTROLLER WITH AN ADHESIVE OR A VELCRO STRAP

1    OR SOMETHING OF THAT NATURE.

2        AND AT THE CLAIM CONSTRUCTION HEARING, THE JUDGE DID A

3    VERY NICE JOB IN CONSTRUING THE CLAIMS.  HE ACTUALLY CONSTRUED

4    THEM IN REAL TIME.  HE DICTATED HIS CONSTRUCTIONS IMMEDIATELY

5    FOLLOWING THE HEARING WITH COUNSEL PRESENT.

6        AND ON THAT PARTICULAR LIMITATION, THE COURT CONSTRUED THE

7    CLAIM ELEMENT AS REQUIRING THAT THE CONTROLLERS BE ATTACHED TO

8    THE OUTSIDE WHICH DID NOT ALLOW, OF COURSE, FOR CONSTRUCTION

9    WHERE YOU HAD MOTORS ON THE INSIDE.  THAT, OF COURSE, WOULD

10   HAVE BEEN DISPOSITIVE OF THE ENTIRE CASE.

11       THE FEDERAL CIRCUIT REVERSED NOTING THAT THERE WAS NO

12   LIMITING LANGUAGE IN THE CLAIM ITSELF.  AND IN LIGHT OF THE

13   CLAIM LANGUAGE, IT WAS PERFECTLY PLAUSIBLE THAT YOU COULD HAVE

14   A CONSTRUCTION WHERE SOMETHING IS ATTACHED EITHER TO THE

15   OUTSIDE OF THE STRUCTURE OR THE INSIDE.

16       I BEAR ON THIS POINT SIMPLY BECAUSE WE ARE GOING TO SEE

17   THIS AS A RE-OCCURRING THEME AS WE GO THROUGH ARGUMENT TODAY

18   ON MANY OF THE TERMS.

19       AND THEN FINALLY ON THE ISSUE OF -- I ACTUALLY OFFER AN

20   EXAMPLE HERE, WHICH I THINK I PROBABLY -- I PROBABLY GAVE A

21   BETTER EXAMPLE OF IN THE SONY DUAL SHOCK.  THIS IS A VERY,

22   VERY SIMPLE DIAGRAM THAT ILLUSTRATES THE POINT.

23       IF YOU HAVE A UNIVERSE OF FASTENERS THAT INCLUDES NAILS,

24   SCREWS, BOLTS AND THUMBTACKS, BUT THERE'S A PATENT

25   SPECIFICATION THAT MERELY DISCLOSES THE THUMBTACKS AND THE

```
1    BOLTS, UNLESS THE LEXICOGRAPHY OR THE CLEAR DISAVOWAL
2    EXCEPTIONS TO THE ORDINARY MEANING RULE APPLY, IT WOULD BE
3    IMPROPER TO CONSTRUE A CLAIM USING THE TERM "FASTENER" AS
4    ELIMINATING THE NAILS OR THE SCREWS FROM THE SCOPE OF THAT
5    CLAIM.
6         AND FORGIVE ME FOR THE OVERLY SIMPLE GRAPHIC.  I HAVE USED
7    IT BEFORE AND HOPEFULLY IT ILLUSTRATES THE POINT.
8         EXPERT TESTIMONY.  THAT IS SOMETHING THAT CAME UP AT OR
9    ABOUT THE TIME OF OUR TUTORIAL.  OUR COLLEAGUES AT PAYPAL
10   OFFERED THE EXPERT TESTIMONY OF ROBERT FLOOD IN THEIR RESPONSE
11   TO OUR OPENING CLAIM CONSTRUCTION BRIEF.  WE THEN COUNTERED
12   WITH A DECLARATION AND TESTIMONY OF AMY STERN, ANOTHER EXPERT.
13        AS I SAID DURING THE TUTORIAL, YOUR HONOR, I THINK THAT
14   THE ROLE OF EXPERT TESTIMONY, PARTICULARLY IN THIS CASE, HAS
15   TO BE SUBSIDIARY AND SIGNIFICANTLY SUBSIDIARY TO THE LANGUAGE
16   OF THE CLAIMS AND THE OTHER ANALYSIS THAT FOLLOWS FROM THE
17   TEACHING IN THE SPECIFICATION, THE PROSECUTION HISTORY.
18        I REMEMBER ONE OF THE QUESTIONS YOU POSED WAS, WELL, WHAT
19   VALUE CAN AN EXPERT'S TESTIMONY REALLY ADD IN THE CONTEXT OF
20   CLAIM CONSTRUCTION?
21        AND I THINK, PARTICULARLY IN THIS CASE, I DON'T SEE A
22   GREAT DEAL OF VALUE.  WE HAVE OFFERED MS. STERN'S DECLARATION.
23   THE COURT, OF COURSE, IS FREE TO CONSIDER EXTRINSIC EVIDENCE.
24   I THINK THAT THE CLAIM LANGUAGE AND THE RULES OF EXCEPTION
25   CARRY THE DAY IN THIS CASE, AND WE WILL TELL YOU WHY AS WE
```

```
1    MOVE ON.

2        IN PHILLIPS, THE FEDERAL CIRCUIT SAID CONCLUSORY

3    UNSUPPORTED ASSERTIONS BY EXPERTS AS TO THE DEFINITION OF A

4    CLAIM TERM ARE NOT USEFUL TO THE COURT.  AND AS WE ARGUED IN

5    OUR REPLY, WE THINK AT LEAST SOME OF MR. FLOOD'S STATEMENTS

6    ARE JUST THAT, THEY ARE CONCLUSORY.

7        WHERE WE DIDN'T THINK THEY WERE CONCLUSORY, BUT WE DIDN'T

8    FEEL THAT THEY WERE OF TERRIBLE BENEFIT, WE COUNTERED WITH A

9    RESPONSE BY MS. STERN.

10       THEN PHILLIPS JUST FOLLOWS UP WITH THE SAME PRINCIPLE

11   PROVIDING THAT A COURT SHOULD DISCOUNT ANY EXPERT TESTIMONY

12   THAT IS CLEARLY AT ODDS WITH THE CLAIM CONSTRUCTION MANDATED

13   BY THE CLAIMS THEMSELVES, AGAIN, THE PRIMACY OF THE CLAIM

14   LANGUAGE ITSELF, THE WRITTEN DESCRIPTION IN THE PROSECUTION

15   HISTORY.  IN OTHER WORDS, WITH A WRITTEN RECORD OF THE PATENT.

16       YOUR HONOR, IF YOU DON'T HAVE ANY QUESTIONS OR COMMENTS

17   WITH RESPECT TO THE GENERAL PRINCIPLES, YOU HAVE BEEN THROUGH

18   MARKMANS BEFORE, I THINK WE CAN GET INTO ARGUMENT ON -- WITH

19   RESPECT TO THE FIRST TERM, WHICH IS COMMUNICATION LINE.

20       AND THERE ARE SOME SIMILARITIES BETWEEN THE DISPUTE -- IN

21   THE DISPUTE BETWEEN THE PARTIES WITH RESPECT TO THE FIRST AND

22   SECOND DISPUTED TERMS, COMMUNICATION LINE AND SUBSCRIBER LINE.

23   THERE IS A NUANCE DIFFERENCE, AND FOR THAT REASON, I WOULD

24   LIKE TO TAKE THEM SERIATIM, RATHER THAN ARGUE AT THE SAME

25   TIME.  I THINK THE SUBSCRIBER LINE ARGUMENT WILL BE
```

1   SIGNIFICANTLY ABBREVIATED, THOUGH.

2       THE FIRST DISPUTED TERM, OF COURSE, IS COMMUNICATION LINE.

3   AND THIS APPEARS INITIALLY IN THE '049 PATENT, THE FIRST OF

4   PAYMENTONE'S THREE ASSERTED PATENTS.

5       WHAT ARE THE PARTIES' RESPECTIVE CONSTRUCTIONS?

6   PAYMENTONE SIMPLY SAYS THAT THE CLAIM OUGHT TO BE CONSTRUED TO

7   MEAN A COMMUNICATION CHANNEL THAT FACILITATES A WIRELESS OR

8   PHYSICAL COMMUNICATION BETWEEN A VENDOR AND AN ELECTRONIC

9   TERMINAL OVER A WIRELESS OR PHYSICAL COMMUNICATION NETWORK.

10      SO YOU SEE AT THE END IT'S REALLY THE CRUX OF THE ISSUE.

11   I KNOW, AGAIN, THIS WAS SOMETHING THAT CAME UP DURING THE

12   TUTORIAL.  ARE WE TALKING ABOUT WIRELESS AND PHYSICAL OR JUST

13   A PHYSICAL CONNECTION?

14      AND THAT LEADS US TO PAYPAL'S PROPOSED CONSTRUCTION WHICH

15   IMPOSES THREE SIGNIFICANT LIMITATIONS INTO THIS CLAIM THAT

16   CERTAINLY DON'T APPEAR IN THE CLAIM LANGUAGE, BUT WE WILL GET

17   TO THAT IN A SECOND.

18      PAYPAL'S CONSTRUCTION IS -- FOR COMMUNICATION LINE, IS A

19   WIRE OR CABLE FOR WHICH A CUSTOMER HAS AN ACCOUNT WITH A LOCAL

20   TELEPHONE COMPANY THAT -- THAT'S ACTUALLY ANOTHER LIMITATION.

21   THEY ARE TALKING ABOUT AN ACCOUNT TIED TO A TELEPHONE COMPANY,

22   WHICH IS A PHYSICAL LOCATION -- THAT PHYSICALLY CONNECTS THE

23   CUSTOMER'S ELECTRONIC TERMINAL TO THE LOCAL TELEPHONE COMPANY.

24      I DON'T THINK THE PARTIES DISPUTE WHAT PAYPAL'S PROPOSED

25   CONSTRUCTION IS.  WE UNDERSTAND THEY ARE SAYING THIS IS A

1    HARD-WIRED CONNECTION.  IT'S A LAND LINE TO USE SOME SIMPLE

2    TERMINOLOGY AND DESCRIPTIVE TERMINOLOGY.

3        THEY ARE ALSO SAYING THAT THIS WIRE OR CABLE IS ASSOCIATED

4    WITH, OR EVEN MORE SPECIFICALLY, THE WIRE CABLE HAS AN ACCOUNT

5    WITH THE LOCAL TELEPHONE COMPANY.  SO IT'S VERY CONFINING

6    LANGUAGE.

7        AND THAT'S OKAY IF IT'S PROVIDED FOR IN THE CLAIM LANGUAGE

8    ITSELF OR BY WAY OF THE LEXICOGRAPHY OR CLEAR DISAVOW

9    EXCEPTIONS.  NONE OF THOSE APPLY, AND LET'S TAKE A LOOK AT WHY

10   NOT.

11       HERE IS THE LANGUAGE IN WHICH WE FIRST SEE THE TERM

12   "COMMUNICATION LINE".  JUDGE, I AM SORRY IF THAT IS --

13   ACTUALLY THAT IS NOT TOO BAD.

14       IS THAT LEGIBLE ON YOUR MONITOR?

15           **THE COURT:**  THAT'S FINE.

16           **MR. MC ANDREWS:**  WE SEE IN THE CONTEXT OF CLAIM 8,

17   YOU SEE REFERENCE TWICE TO COMMUNICATION LINE.  JUST AT ABOUT

18   LINE 55, WE SEE AN OPTION TO SELECT PAYMENT FOR THE

19   TRANSACTION FROM AN ACCOUNT ASSOCIATED WITH THE COMMUNICATION

20   LINE.

21       DOESN'T SAY ANYTHING ABOUT A TELEPHONE ACCOUNT AND IT

22   DOESN'T SAY ANYTHING MORE THAN A COMMUNICATION LINE.  THERE'S

23   NO LAND BASED OR HARD-WIRED LIMITATION OR LANGUAGE INCLUDED IN

24   THE CLAIM.

25       THERE IS ANOTHER INSTANCE OF COMMUNICATION LINE AS WELL

1   AND SO TOO WITH THAT EXAMPLE, WE DON'T SEE ANY LIMITING

2   LANGUAGE, AND CERTAINLY NOTHING ABOUT A HARD WIRE OR A CABLE

3   OR A PHYSICAL CONNECTION TO A TELEPHONE COMPANY HAVING AN

4   ACCOUNT TIED TO THAT LINE.  SO, THE CLAIM LANGUAGE ITSELF IS

5   NOT LIMITING.

6       AND SO REFERRING BACK TO THE FEDERAL CIRCUIT LAW, THE

7   CLAIM SHOULD BE CONSTRUED BROADLY.  THE TERM SHOULD BE

8   CONSTRUED BROADLY.  COMMUNICATION LINE SHOULD NOT BE LIMITED

9   UNLESS IT'S CLEAR FROM THE CONTEXT IN WHICH IT APPEARS IN

10  CLAIM 8 OR UNLESS THE SPECIFICATION MAKES CLEAR --

11          **THE COURT:**  LET ME ASK YOU THIS.

12          **MR. MC ANDREWS:**  YES.

13          **THE COURT:**  BECAUSE ONE OF THE FIRST THINGS I DO

14  PREPARING FOR A MARKMAN IS TO LOOK AT THE TERMS AND THE TERMS

15  EACH TIME THEY APPEAR IN THE PATENT, REGARDLESS OF WHETHER OR

16  NOT IT'S PART OF THE DISPUTE BECAUSE THE TERM HAS TO HAVE

17  GENERALLY THE SAME MEANING IF IT IS A TERM OF ART THROUGHOUT

18  THE PATENT.

19      SO, IN -- RIGHT AFTER YOU HAD UP 8, IN THE NEXT PARAGRAPH,

20  9, IT SAYS, "A SYSTEM IS CLAIMED IN CLAIM 8 IN WHICH THE

21  COMMUNICATION LINE IS A SUBSCRIBER LINE."

22      COMMENT ON THAT.

23          **MR. MC ANDREWS:**  WHAT THAT IS SAYING -- LET ME PULL

24  UP THE SECTION.  I CAN ACTUALLY PROJECT IT.

25          **THE COURT:**  AND IT CONTINUES, JUST SO YOU HAVE IT AS

1    YOU'RE GETTING IT.  SAYS, "IS A SUBSCRIBER LINE AND THE UNIQUE

2    IDENTIFIER IS A TELEPHONE NUMBER ASSOCIATED WITH THE

3    SUBSCRIBER LINE."

4              **MR. MC ANDREWS:**  IT'S CLAIM 9, YOUR HONOR, YES?

5              **THE COURT:**  RIGHT.

6              **MR. MC ANDREWS:**  THIS IS ONE OF THE DEPENDENT CLAIMS.

7    AND TO THE POINT ABOUT THE IMPORTANCE OF THE LANGUAGE OF OTHER

8    CLAIMS, THIS IS ONE OF THE EXAMPLES.

9         SO A SYSTEM AS CLAIMED IN CLAIM 8, IT'S INCORPORATING ALL

10   OF THE LIMITATIONS OF CLAIM 8, INDEPENDENT CLAIM 8, CLAIM 9

11   DEPENDS FROM CLAIM 8, AS WE SAY IN PATENT LAW, IN WHICH A

12   COMMUNICATION LINE IS A SUBSCRIBER LINE.

13        NOW, THE INTERESTING THING ABOUT THIS IS THAT THE

14   SUBSCRIBER LINE ITSELF -- THERE ARE TWO POINTS I WOULD LIKE TO

15   MAKE.

16        THE SUBSCRIBER LINE ITSELF IS IDENTIFIED AS ITEM NUMBER 96

17   IN FIGURE 1 OF THE PATENT.  IF I CAN PICK UP MY PAPERS, I CAN

18   PUT THAT UP AND IT WILL HELP WITH MY EXPLANATION.

19        LET ME SEE IF I CAN HIGHLIGHT THE RELEVANT SECTION.  IS

20   THAT LEGIBLE, YOUR HONOR?

21             **THE COURT:**  UH-HUH.

22             **MR. MC ANDREWS:**  CONNECTION 96 IS DEFINED IN THE

23   CONTEXT OF THE '049 PATENT AS A SUBSCRIBER LINE.  BUT THE

24   SALIENT POINT, ONE OF THE TWO POINTS I WANT TO MAKE ON THIS IS

25   THAT ITEM NUMBER 24, WHICH IS RIGHT NEXT TO IT, IN WHICH

```
1    APPEARS, OF COURSE, AS A GENERIC PERSONAL COMPUTER OR

2    COMPUTING DEVICE, A TERMINAL DEVICE THAT THE CUSTOMER, THE

3    CONSUMER USES, THIS IS DEFINED IN CONNECTION WITH THE

4    SUBSCRIBER LINE 96 AS SPECIFICALLY INCLUDING A CONNECTION THAT

5    CAN BE TO A PC.  AND I AM READING FROM LINE 25, STARTING IN

6    COLUMN 64.

7        "THE PC 24" -- WE ARE TALKING ABOUT ITEM NUMBER 24 IN THE

8    DIAGRAM, WHICH IS CONNECTED TO THE -- OR WHICH COMMUNICATES

9    OVER THE SUBSCRIBER LINE, "AND MODULES 30, 32 ARE EXEMPLARY

10   FORMS" --

11            THE COURT:  COUNSEL, YOU NEED TO STAY FACING THAT MIC

12   SO THE COURT REPORTER --

13            MR. MC ANDREWS:  I'M SORRY.

14            THE COURT:  -- CAN HEAR YOU.

15            MR. MC ANDREWS:  I CAN WORK OFF OF MY SHEET HERE.

16       -- "ARE EXEMPLARY FORMS OF COMPUTER SYSTEMS."

17       SO MR. LYNAM AND HIS CO-INVENTORS WERE SAYING RIGHT IN THE

18   BODY OF THEIR SPECIFICATION THAT THE PC THAT APPEARS AS NUMBER

19   24 IS MERELY AN EXEMPLARY FORM OF THE INVENTION, OR ONE OF THE

20   ELEMENTS OF THE INVENTION OF THEIR CLAIMS.

21            "EXEMPLARY FORMS OF COMPUTER SYSTEMS OR MACHINES

22             WITHIN WHICH A SET OF INSTRUCTIONS, FOR CAUSING THE

23             MACHINE TO PERFORM ANY ONE OF THE METHODOLOGIES

24             DISCUSSED ABOVE, MAY BE EXECUTED IN ALTERNATIVE

25             EMBODIMENTS."
```

1        SO THEY ARE ACTUALLY -- THEY ARE LEAVING NOTHING TO DOUBT,

2    AS WAS THE CASE IN THE THORNER CASE WHERE THE SPECIFICATION

3    DIDN'T SAY ANYTHING AT ALL ABOUT MOTORS OR VIBRATING ACTUATORS

4    ON THE INSIDE.  THE ONLY DISCLOSURE WAS ON THE OUTSIDE.

5        IN THIS CASE, WE ARE NOT ONLY TALKING ABOUT AVOIDING THE

6    TEMPTATION OF READING LIMITATIONS FROM THE SPECIFICATION INTO,

7    WE WOULD ACTUALLY BE IGNORING AN EXPRESS TEACHING OF THE

8    PATENT.  LET ME READ ON.

9            "IN ALTERNATIVE EMBODIMENTS OF THE INVENTION OF THESE

10           CLAIMS, THE MACHINE MAY COMPRISE A NETWORK ROUTER, A

11           NETWORK SWITCH, A NETWORK BRIDGE, A PERSONAL DIGITAL

12           ASSISTANT, A PDA," A TERM WE USED TO USE BACK IN THE

13           EARLY TO MID '90S, AND IMPORTANTLY FOR OUR ANALYSIS

14           HERE, "A CELLULAR TELEPHONE".

15       NOW, WE ARE NOT TRYING TO READ A CELLULAR TELEPHONE

16   CONNECTION IN OUT OF THIN AIR.  IT'S EXPRESSLY MENTIONED HERE

17   IN THE SPECIFICATION OF THE PATENT.

18       IN THE '500 PATENT, YOUR HONOR, IT TAKES IT EVEN A STEP

19   FURTHER.  YOU NOT ONLY SEE THE TERM "CELLULAR PHONE" OR

20   "WIRELESS CONNECTION" IN THE SPECIFICATION, BUT THE CLAIMS

21   THEMSELVES, SOME OF THE DEPENDENT CLAIMS ACTUALLY REFER TO A

22   WIRELESS CONNECTION.

23       SO THAT -- DRAWING ON THE CONCEPT OF CLAIM

24   DIFFERENTIATION, THAT MEANS THAT ANY CONNECTION IN THE

25   DEPENDENT CLAIM -- THE INDEPENDENT CLAIM, RATHER, IS

1    NECESSARILY BROADER THAN THE MORE CONFINING LANGUAGE THAT'S

2    USED IN THE, IN THE LANGUAGE OF THE DEPENDENT CLAIM.

3        SO IN THIS CASE, THE SPECIFICATION ACTUALLY TELLS US AND

4    SHOWS US THAT ELEMENT OR ITEM 24 SHOWN AS THAT GENERAL PURPOSE

5    TERMINAL DEVICE, IF YOU WILL, CAN BE A CELLULAR TELEPHONE.  SO

6    IT'S NOT ARGUMENT, IT'S SUBSTANTIVE, IT IS LANGUAGE DIRECTLY

7    OUT OF THE SPECIFICATION OF THE '049 AND '500 PATENTS, AND IT

8    IS ACTUALLY REFERRED TO AS AN EXEMPLARY ALTERNATIVE EMBODIMENT

9    OF THE INVENTION.

10       MORE TO THE POINT, WITH RESPECT TO OUR DISCUSSION ON

11   COMMUNICATION LINE, ITEM 24, CELLULAR TELEPHONE NUMBER 24

12   COMMUNICATES OVER CHANNEL 96 IN THE DRAWING WHICH THE

13   SPECIFICATION SPECIFICALLY TELLS US IS AND CAN BE A SUBSCRIBER

14   LINE WHICH IS A FORM OF COMMUNICATION LINE.

15       NOW, THE OTHER POINT, YOU HAD ASKED ABOUT DEPENDENT

16   CLAIM 9 AND THE RELEVANCE OF THE QUALIFYING LANGUAGE

17   SUBSCRIBER LINE.  THAT'S IMPORTANT FOR ANOTHER REASON AS WELL.

18       WE SEE IN OTHER CLAIMS, AT LEAST TWO OR THREE OF THE OTHER

19   CLAIMS OF THE '049 PATENT EXAMPLES WHERE SUBSCRIBER LINE IS

20   QUALIFIED.  WE SPEAK OF AN ACCOUNT ASSOCIATED WITH A

21   COMMUNICATION LINE.  WE ALSO SEE LANGUAGE, AN ACCOUNT

22   ASSOCIATED WITH THE SUBSCRIBER LINE AND THEN IN DEPENDENT

23   CLAIMS OR ALTERNATIVE CLAIMS WE SEE A RECITATION OF A

24   TELEPHONE ACCOUNT ASSOCIATED WITH THE SUBSCRIBER LINE.

25       GETTING BACK TO THE POINT, DIFFERENTIATING BETWEEN

1    DIFFERENT TERMS THAT WERE CHOSEN BY MR. LYNAM, HIS

2    CO-INVENTORS, AND HIS PATENT COUNSEL AT THE TIME, THERE HAS TO

3    BE RELEVANCE GIVEN TO THE INCLUSION TO THE TERM "TELEPHONE

4    ACCOUNT" AS OPPOSED TO AN ACCOUNT ASSOCIATED WITH THE

5    SUBSCRIBER LINE.  AND I HAVE GOT SOME SLIDES THAT GET TO THAT

6    SECONDARY POINT IN JUST A MOMENT.

7                     (PAUSE IN THE PROCEEDINGS.)

8        I MENTIONED THIS IN MY INITIAL COMMENTS ABOUT

9    COMMUNICATION LINE.  OUT OF THE BODY OF CLAIM 8, WE SEE THE

10   CLAUSE AT LINE 55, "AN OPTION TO SELECT PAYMENT FOR THE

11   TRANSACTION FROM AN ACCOUNT ASSOCIATED WITH THE COMMUNICATION

12   LINE TO WHICH THE ELECTRONIC TERMINAL IS CONNECTED".

13       THE RELEVANCE HERE IS THE TERM "ACCOUNT ASSOCIATED WITH".

14   IT DOESN'T SAY TELEPHONE ACCOUNT ASSOCIATED WITH.

15       NOW, THERE MIGHT BE A LITTLE BIT OF ROOM TO ARGUE PERHAPS

16   IF THE SPECIFICATION AND THE CLAIMS THAT ARE PART OF THE

17   SPECIFICATION DOES ELSEWHERE SPECIFICALLY CALL OUT A TELEPHONE

18   ACCOUNT ASSOCIATED WITH THE COMMUNICATION LINE OR A SUBSCRIBER

19   LINE.  THEY DO.

20       IF WE TAKE A LOOK AT INDEPENDENT CLAIM 17, THIS IS ONE OF

21   THE EXAMPLES WHERE AT ABOUT LINE 40 THAT RECITES, "TO SELECT

22   PAYMENT FOR THE TRANSACTION FROM A TELEPHONE ACCOUNT

23   ASSOCIATED WITH A SUBSCRIBER LINE".

24       AGAIN, THE VOLITIONAL INCLUSION OF THE TERM "TELEPHONE" TO

25   QUALIFY ACCOUNT, IT IS A DISTINCTION WITH A HUGE DIFFERENCE

1   WITH RESPECT TO THE DISPUTE BETWEEN THE PARTIES ON THE ISSUE

2   OF COMMUNICATION LINE AND SUBSCRIBER LINE.

3       NOW, THAT USE OF THE TERM, CLAIM 17 REFERS TO THE

4   SUBSCRIBER LINE WHICH IS THE TERM THAT YOU POINTED OUT AS

5   BEING IN DEPENDENT CLAIM 9.  CLAIM 21, ACTUALLY CLAIMS 21 AND

6   27, IF I CAN JUXTAPOSE THEM TOGETHER, AND I THINK THIS

7   PROBABLY BEST ILLUSTRATES THE POINT, YOUR HONOR.

8               "A TRANSACTION VALIDATION MODULE AS CLAIMED IN

9               CLAIM 20, IN WHICH CHARGES FOR THE TRANSACTION ARE

10              INCLUDED IN AN ACCOUNT ASSOCIATED WITH THE SUBSCRIBER

11              LINE."

12      IN DEPENDENT CLAIM 27, AFTER THE PREAMBLE, WE SEE, "IN

13  WHICH CHARGES FOR THE TRANSACTION ARE INCLUDED IN A TELEPHONE

14  ACCOUNT ASSOCIATED WITH THE SUBSCRIBER LINE".

15      SO, ACCORDING TO ALL THE CANONS OF CLAIM CONSTRUCTION, THE

16  TERM "TELEPHONE ACCOUNT" CANNOT BE READ, OR MORE SPECIFICALLY,

17  THE WORD "TELEPHONE" CAN'T BE READ INTO OR GRAFTED INTO CLAIMS

18  THAT SPECIFICALLY EXCLUDE IT, SUCH AS 21, SUCH AS DEPENDENT

19  CLAIM 9, SUCH AS CLAIM 8 WHERE WE ARE TALKING ABOUT A

20  COMMUNICATION LINE ASSOCIATED WITH -- AN ACCOUNT ASSOCIATED

21  WITH A COMMUNICATION LINE WITHOUT QUALIFIER.

22      SO, CIRCLING BACK TO THE THREE MAIN POINTS:  THE CLAIM

23  LANGUAGE ITSELF DOES NOT REQUIRE THE VERY RESTRICTIVE

24  CONSTRUCTION THAT HAS BEEN PROFFERED BY PAYPAL IN THIS CASE

25  WITH RESPECT TO COMMUNICATION LINE.

1    SECONDLY AND IMPORTANTLY, WE ARE ALWAYS CONCERNED ABOUT

2    READING EXTRANEOUS LIMITATIONS OR LIMITATIONS FROM THE

3    SPECIFICATION INTO A CLAIM.  IN THIS CASE, WE WOULD NOT ONLY

4    BE DOING THAT BY ADOPTING PAYPAL'S PROPOSED CONSTRUCTION, WE

5    WOULD BE IGNORING AN EXPRESS EXEMPLARY ALTERNATIVE EMBODIMENT

6    OF THE INVENTION WHEREIN A CELLULAR TELEPHONE, ITEM NUMBER 24,

7    COMMUNICATES OVER SUBSCRIBER LINE, NUMBER 96, WHICH IN THAT

8    INSTANCE HAS TO BE, IT HAS TO BE LOGICALLY AND TECHNICALLY A

9    WIRELESS CONNECTION.

10    SO THE LANDLINE WIRED AND CABLE, AND THE PHYSICAL

11    CONTENTION TO THE TELEPHONE COMPANY ITSELF HAVING AN ACCOUNT

12    FOR THAT LINE ARE ALL UNNECESSARY LIMITATIONS.  THEY SHOULD

13    NOT BE GRAFTED INTO THIS CLAIM TERM.

14    DO YOU HAVE ANY QUESTIONS?

15    **THE COURT:**  I DO NOT.

16    **MR. MC ANDREWS:**  OKAY.  I WILL TURN THE FLOOR OVER TO

17    MY COLLEAGUES.

18    **MS. LUTTON:**  YOUR HONOR, GIVEN THE INTERRELATEDNESS

19    OF COMMUNICATION AND SUBSCRIBER LINE, I WOULD SUGGEST THAT

20    PLAINTIFFS PRESENT ON SUBSCRIBER LINE, AND THEN I CAN

21    ADEQUATELY ADDRESS BOTH OF THE TERMS.  IF THAT WOULD WORK FOR

22    THE COURT.

23    **THE COURT:**  IT DOESN'T MATTER TO ME.

24    **MR. MC ANDREWS:**  I AM SORRY, DOES NOT --

25    **THE COURT:**  IT DOES NOT MATTER TO ME.

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2          MR. MC ANDREWS:  YEAH.  I THINK BEFORE I GET INTO THE

 3    ACTUAL PROPOSED CONSTRUCTION, I THINK MAYBE THE LAST SLIDE OF

 4    THE FIRST SET IS A GOOD STARTING POINT.

 5          AND I WOULD SIMPLY POINT OUT, AGAIN, THAT WE ARE

 6    DISTINGUISHING HERE BETWEEN AN ACCOUNT ASSOCIATED WITH THE

 7    SUBSCRIBER LINE, WHICH IS NOW THE TERM THAT WE ARE GOING TO

 8    OFFER ARGUMENT ON, IN THE CASE OF DEPENDENT CLAIM 21, AND

 9    ALTERNATIVELY WITH DIFFERENT LANGUAGE CHOSEN BY THE INVENTORS

10    AND DEPENDENT CLAIM 20, WE ARE TALKING ABOUT A TELEPHONE

11    ACCOUNT ASSOCIATED WITH THE SUBSCRIBER LINE.

12          SO THERE COULD NOT BE A MORE STARK CONTRAST BETWEEN THE

13    IDEA OF A SUBSCRIBER LINE THAT CAN BE ASSOCIATED WITH AN

14    ACCOUNT, THE BROAD LANGUAGE THAT MR. LYNAM AND HIS

15    CO-INVENTORS CHOSE, AND THAT THEY ARE ALLOWED TO CHOOSE, AND

16    THE MORE RESTRICTIVE TERM, THE NARROWER TERM THAT THEY CHOSE

17    IN DEPENDENT CLAIM 27 AND SOME OF THE OTHER CLAIMS.

18          I THINK CLAIM 17, INDEPENDENT CLAIM 17 WAS AN EXAMPLE

19    WHERE WE ALSO SAW A TELEPHONE ACCOUNT ASSOCIATED WITH THE

20    SUBSCRIBER LINE.

21          SO WHAT ARE THE PARTIES' RESPECTIVE POSITIONS WITH RESPECT

22    TO SUBSCRIBER LINE, YOUR HONOR?

23          PERHAPS NOT SURPRISINGLY THEY ARE NOT ENTIRELY DIFFERENT

24    OR VERY DIFFERENT FROM THE PROPOSED CONSTRUCTIONS THAT WE

25    OFFERED, THE PARTIES RESPECTIVELY OFFERED FOR COMMUNICATION
```

```
1    LINE.

2        PAYMENTONE'S PROPOSED CONSTRUCTION FOR SUBSCRIBER LINE IS

3    "A COMMUNICATION CHANNEL IN THE FORM OF A USER'S WIRELESS

4    COMMUNICATION LINE" -- IT'S NOT LIMITED TO THAT, THAT'S AN

5    EXEMPLARY EMBODIMENT AS WE SAW IN FIGURE 1 OF THE '049

6    PATENT -- "A DIGITAL SUBSCRIBER LINE, OR A CABLE LINE."

7        SO COULD IT BE A HARD LINE OR A CABLE LINE?  CERTAINLY.

8    IT'S NOT LIMITED TO IT.  IT IS ESPECIALLY NOT LIMITED TO IT

9    WHEN FIGURE 1 OF THE PATENT DISCLOSES A CELLULAR CONNECTION

10   OVER SUBSCRIBER LINE 96.

11       I WILL PUT THAT GRAPHIC UP AGAIN IN A MINUTE.

12       SO IN THE FORM OF A -- "USES WIRELESS COMMUNICATION LINE,

13   DIGITAL SUBSCRIBER LINE, OR CABLE LINE THAT FACILITATES

14   WIRELESS OR PHYSICAL COMMUNICATION BETWEEN A VENDOR AND AN

15   ELECTRONIC TERMINAL".  THAT ELECTRONIC TERMINAL, AGAIN, WAS

16   ITEM NUMBER 25 IN FIGURE 1 OF THE PATENT -- "OVER A WIRELESS

17   OR PHYSICAL NETWORK".

18       AGAIN, THE FLEXIBILITY IS SOMETHING THAT CERTAINLY COMING

19   INTO COURT WE WOULD LIKE TO HAVE, BUT IN THIS CASE OUR WISH

20   FOR THAT IS ACTUALLY BORNE OUT BY THE SPECIFICATION ITSELF AND

21   THE CLAIM LANGUAGE.

22       PAYPAL'S PROPOSED CONSTRUCTION IS VERY SIMILAR TO THE ONE

23   THEY OFFERED FOR COMMUNICATION LINE:  "A TELEPHONE WIRE", IT

24   IS ACTUALLY EVEN MORE SPECIFIC HERE.  THEY ARE ACTUALLY SAYING

25   IT IS A TELEPHONE WIRE, WHEREAS WITH COMMUNICATION LINE, THEY
```

1    SIMPLY SAID WIRE OR CABLE.

2        "A TELEPHONE WIRE OR CABLE FOR WHICH A CUSTOMER HAS AN

3    ACCOUNT" -- SO WE ARE TALKING ABOUT A TELEPHONE ACCOUNT, "WITH

4    A LOCAL TELEPHONE COMPANY THAT PHYSICALLY CONNECTS THE

5    CUSTOMER'S TELEPHONE OR PERSONAL COMPUTER TO THE LOCAL

6    TELEPHONE COMPANY".

7        AND JUST VERY, VERY QUICKLY PUT A FINAL POINT ON IT,

8    BECAUSE THE SAME PRINCIPLES APPLY FOR THE TERM WITH RESPECT TO

9    THE TERM "SUBSCRIBER LINE".

10       THIS AGAIN IS COLUMN 64 OUT OF THE '049 PATENT.  I WILL

11   NOT RECITE OR REREAD THE ENTIRE THING.  IT IS ROUGHLY BETWEEN

12   LINES 24 AND 35.  AND THIS IS THE EXCERPT, THE IMPORTANT

13   EXCERPT OUT OF THE SPECIFICATION WHERE IT DOESN'T ALLOW FOR,

14   BY INFERENCE, FOR THERE TO BE A WIRELESS COMMUNICATION AS PART

15   OF THE SUBSCRIBER LINE COMMUNICATION.  IT SPECIFICALLY RECITES

16   IT.  IT SAYS A CELLULAR TELEPHONE AS ITEM NUMBER 24.

17       AND, AGAIN, THIS IS REPEATING THE POINT WE ALREADY MADE

18   WITH RESPECT TO COMMUNICATION LINE.  "TERMINAL DEVICE NUMBER

19   24 COMMUNICATES OVER SUBSCRIBER LINE, SUBSCRIBER LINE 96."

20                   (PAUSE IN THE PROCEEDINGS.)

21       AND THE COMBINATION, I WOULD SAY IT IS A THREE-FOLD

22   COMBINATION.  THE LANGUAGE OF THE CLAIMS THEMSELVES THAT DON'T

23   INCLUDE THE RESTRICTIVE TELEPHONE ACCOUNT LANGUAGE, NUMBER

24   ONE, THE TEACHING OUT OF COLUMN 24 AND THE SPECIFICATION OF

25   THE '049 PATENT, AND THEN FIGURE 1 ITEM 24 THE CELLULAR

1    TELEPHONE AND SUBSCRIBER LINE 96 TRUMP PAYPAL'S PROFFERED

2    CONSTRUCTION BECAUSE THEY WOULD ELIMINATE FROM THIS CLEAR

3    TEACHING THE CELLULAR TELEPHONE AND THE CONNECTION OF THAT

4    CELLULAR TELEPHONE OVER THE DISPUTED TERM HERE "SUBSCRIBER

5    LINE".

6        AND FOR THAT REASON, LIKE COMMUNICATION LINE, PAYPAL'S

7    PROPOSED CONSTRUCTION OF SUBSCRIBER LINE IS FAR TOO LIMITING

8    AND IT IS NOT SUPPORTED BY THE CANONS OF CLAIM CONSTRUCTION.

9        **THE COURT:**  LET ME ASK YOU THIS:  I UNDERSTAND THE

10   PARTIES' RESPECTIVE POSITIONS AND I WILL WAIT, OBVIOUSLY, TO

11   HEAR FROM THE OTHER SIDE ABOUT THEIR VIEW OF LIMITING OR MORE

12   SPECIFICALLY DEFINING, HOWEVER THEY ARE GOING TO ARGUE IT, THE

13   TERMS AT ISSUE.

14       IN TERMS OF EITHER COMMUNICATION LINE OR A SUBSCRIBER

15   LINE, I UNDERSTAND YOUR ARGUMENT TO BE THAT IT IS NOT SO

16   LIMITED AS PAYPAL WOULD HAVE IT BE LIMITED.

17       ONE OF THE THINGS THAT YOU DID NOT GET INTO IN YOUR

18   OPENING REMARKS, AND I AM SURE I HAVE SAID THIS TO YOU FOLKS

19   BEFORE, WHAT I THINK ABOUT IS, IS A JURY GOING TO BE CONFUSED

20   ABOUT WHAT THE MEANING OF THESE TERMS ARE BECAUSE THE JURY

21   WILL ULTIMATELY DECIDE WHETHER OR NOT THERE IS INFRINGEMENT

22   AND THEY NEED TO -- THEY ARE THE ONES WHO ARE APPLYING THE

23   FACTS TO THE TERMS IN THE PATENT.

24       SO IN TERMS OF A COMMUNICATION LINE OR A SUBSCRIBER LINE,

25   IS IT YOUR POSITION THAT IT IS JUST NOT LIMITED TO A TELEPHONE

1    WIRE OR CABLE, OR DOES IT HAVE TO BE SPECIFICALLY -- I MEAN

2    YOU'VE GIVEN ME SOME VERY SPECIFIC THINGS THAT YOU WANT ME TO

3    IDENTIFY IT AS BEING WHERE THOSE TERMS ARE NOT SPECIFICALLY IN

4    THE CLAIM.

5        THERE ARE OTHER PLACES I UNDERSTAND THAT I AM TRYING TO

6    DISCERN WHAT THE PATENT MEANS, BUT ISN'T THAT WHAT YOU ARE

7    ARGUING, THAT THEY ARE NOT LIMITED BY A TELEPHONE WIRE OR

8    CABLE?

9            MR. MC ANDREWS:  WITH RESPECT TO COMMUNICATION LINE

10   AND SUBSCRIBER LINE, YOUR HONOR, THAT IS WHAT WE ARE ARGUING,

11   YES.

12           THE COURT:  SO DO TERMS EVER GET DEFINED IN THAT

13   MANNER?

14           MR. MC ANDREWS:  I AM SORRY.  YOU'RE ASKING ARE THEY

15   BOUNDLESS AND WITHOUT LIMIT?  THEN MY ANSWER WOULD BE NO.  ARE

16   THEY LIMITED --

17           THE COURT:  WELL THEY ARE A COMMUNICATION LINE AND

18   THEY ARE A SUBSCRIBER LINE.

19           MR. MC ANDREWS:  YES.  YES.  AND WE AGREE, WE AGREE

20   WITH THE EXEMPLARY SELECTIONS MADE BY PAYPAL; THE CABLE, IS

21   THAT -- CAN THAT BE A COMMUNICATION LINE?  YES, IT CAN BE.

22       CAN A WIRE BE A COMMUNICATION LINE OR A SUBSCRIBER LINE?

23   IT CAN BE.

24       IN FACT, I THINK, I THINK YOU INFER OR YOU CAN SEE FROM

25   EXAMPLES THAT I OFFERED THAT IN SOME INSTANCES THEY ARE, BUT

```
1    THEY ARE NOT LIMITED TO THAT BECAUSE THERE ARE OTHER EXAMPLES.

2        SO THE POINT I AM MAKING IS THAT WITHIN THE CONFINES OF

3    THE CLAIM LANGUAGE ITSELF AS INFORMED BY THE SPECIFICATION,

4    YOU CAN INCLUDE TWO OF THE THREE.  YOU CAN INCLUDE THE NAILS

5    AND THE SCREWS AND THE THUMBTACKS, BUT EXCLUDE THE BOLTS,

6    ESPECIALLY WHEN THE BOLTS ARE ANOTHER EXAMPLE OFFERED IN THE

7    SPECIFICATION.  AND THAT'S EXACTLY WHAT WE HAVE HERE.

8        24 IS IDENTIFIED AS BEING, AMONG OTHER THINGS, A CELLULAR

9    TELEPHONE.  96 IS VERY CLEARLY DEFINED AS BEING THE SUBSCRIBER

10   LINE.

11       AND YOU MIGHT HAVE HEARD ME SAY THIS AT OUR TUTORIAL, I AM

12   NOT A DOUBLE E IN ELECTRICAL ENGINEERING, I AM A SINGLE E.  I

13   AM AN ECON MAJOR, BUT I UNDERSTAND THE GIST OF WHAT THE

14   INVENTORS ARE TEACHING THROUGH THE SPECIFICATION.  WHEN I LOOK

15   AT THAT GENERAL PURPOSE TERMINAL, ITEM NUMBER 4, THAT CAN BE A

16   PDA WITH WIRELESS CONNECTIVITY, A CELLULAR TELEPHONE OR

17   ANYTHING ELSE, AND I SEE A SUBSCRIBER LINE THAT ALLOWS FOR

18   COMMUNICATION, A POINT-TO-POINT COMMUNICATION OR A

19   POINT-TO-NETWORK COMMUNICATION, AS WE SEE IN SOME OF THE

20   EXAMPLES HERE, I UNDERSTAND THAT THAT 96 THERE IN THE CASE OF

21   THE CELLULAR TELEPHONE HAS TO BE A WIRELESS COMMUNICATION.  IT

22   CAN'T BE A LAND LINE OR A HARDWIRED COMMUNICATION.  IT'S TOO

23   LIMITING.

24           THE COURT:  OKAY.

25           MR. MC ANDREWS:  SO TO INCLUDE WIRELESS, WE THINK
```

```
1    IT'S NOT JUST ANOTHER CONVENIENCE FOR PAYMENTONE, IT'S AN

2    EXAMPLE THAT IS ACTUALLY PROVIDED FOR, EXPRESSLY PROVIDED FOR

3    IN THE SPECIFICATION.  AND AS I SAID, WHEN WE GET INTO THE

4    '500 PATENT, WE WILL ACTUALLY SEE EXAMPLES WHERE -- I WILL

5    PULL THEM UP NOW.

6                    (PAUSE IN THE PROCEEDINGS.)

7        THIS IS THE '500 PATENT, COLUMN 42, STARTING AT ABOUT

8    LINE 10, IT'S CLAIMS 1 THROUGH CLAIM 7.

9                    (DISPLAYED ON SCREEN.)

10       I AM SORRY.  I KNOW THAT MAYBE THAT'S ILLEGIBLE, BUT I

11   WILL READ THE RELEVANT PARTS.

12       IN THIS CASE WE ARE TALKING ABOUT A SUBSCRIBER ACCOUNT

13   ASSOCIATED WITH THE BTN.  THE RELEVANCE OF THE DEPENDENT

14   CLAIMS HERE IS THAT DEPENDENT CLAIM 4 RECITES THE METHOD OF

15   CLAIM 1 WHEREIN THE SUBSCRIBER ACCOUNT OF CLAIM 1 IS A

16   TELEPHONE ACCOUNT.

17       SO, BY VIRTUE OF THE DOCTRINE OF CLAIM DIFFERENTIATION, WE

18   KNOW THAT THE ACCOUNT, THE SUBSCRIBER ACCOUNT OF CLAIM 1 ISN'T

19   JUST A TELEPHONE ACCOUNT.  IT CAN'T BE.  IT VIOLATES THE CANON

20   OF CLAIM DIFFERENTIATION.

21       SO, TOO -- OR IN A SIMILAR WAY, I GUESS I SHOULD SAY, WHEN

22   WE GET TO DEPENDENT CLAIM 6, IT RECITES THE METHOD OF

23   PREVIOUSLY RECITED CLAIM 4, WHEREIN THE TELEPHONE NUMBER IS

24   ASSOCIATED WITH A WIRELESS DEVICE.

25       SO, WHAT DOES THAT TELL US?  THAT TELLS US THAT THE
```

1    TELEPHONE NUMBER, THE BTN OF INDEPENDENT CLAIM 1 CAN BE, CAN

2    NECESSARILY BE A WIRELESS DEVICE, BUT IT'S NOT LIMITED TO

3    THAT.  OTHERWISE THE DEPENDENT CLAIM 6 WOULD BE SUPERFLUOUS.

4         IF WE CAN PUT A FINER POINT ON IT AND WE CAN, DEPENDENT

5    CLAIM 7 RECITES THE METHOD OF CLAIM 4, WHEREIN THE TELEPHONE

6    NUMBER IS ASSOCIATED WITH A LANDLINE DEVICE.

7         SO AT THE TIME OF MR. LYNAM'S INVENTION WITH HIS

8    CO-INVENTORS, YOUR HONOR, VERY CLEARLY THE INVENTORS AND THE

9    PROSECUTING COUNSEL UNDERSTOOD THE DISTINCTION BETWEEN

10   ACCOUNTS ASSOCIATED WITH LINES, THE DISTINCTION BETWEEN

11   TELEPHONE ACCOUNTS ASSOCIATED WITH LINES, AND IMPORTANTLY FOR

12   THE PURPOSES OF THESE TWO PROPOSED CONSTRUCTIONS,

13   COMMUNICATION LINE AND SUBSCRIBER LINE, THE DIFFERENCE BETWEEN

14   COMMUNICATION LINES IN GENERAL AND THOSE THAT OCCUR WIRELESSLY

15   ON THE ONE HAND, DEPENDENT CLAIM 6, DEPENDENT CLAIM 7 ON THE

16   OTHER HAND RECITING A LANDLINE, A LANDLINE DEVICE ASSOCIATED

17   WITH A TELEPHONE NUMBER.

18            **THE COURT:**  OKAY.  THANK YOU.

19            **MR. MC ANDREWS:**  OKAY.

20        DID I ANSWER THE QUESTION --

21            **THE COURT:**  GENERALLY.

22            **MR. MC ANDREWS:**  -- WHAT THE LIMITATIONS ARE?

23        OKAY.  MAYBE I CAN CLARIFY LATER.

24        THANK YOU, YOUR HONOR.

25            **THE COURT:**  THANK YOU.

1          **MS. LUTTON:**  GOOD MORNING YOUR HONOR.

2          **THE COURT:**  GOOD MORNING.

3          **MS. LUTTON:**  I WOULD LIKE TO ADDRESS ONE MINOR POINT

4     MADE BY COUNSEL AND THEN CLARIFY A BIGGER ISSUE, AND THEN

5     REALLY GET TO THE ISSUE OF WHERE THE RUBBER MEETS THE ROAD.

6          THE MINOR POINT RELATES TO THE CLAIM DIFFERENTIATION

7     ARGUMENT THAT COUNSEL MADE WITH REGARD TO CLAIMS 21 AND 27 OF

8     THE '049 PATENT.  I WILL JUST POINT OUT THAT THAT ARGUMENT IS

9     NOWHERE IN THE BRIEFING, AND BECAUSE COUNSEL DID NOT DISCLOSE

10    THE DEMONSTRATIVES FOR THAT POINT 48 HOURS IN ADVANCE, WE

11    FIRST HEARD OF THAT TODAY.

12         THAT SAID, I BELIEVE THE ARGUMENT COUNSEL WAS MAKING WAS

13    THAT THERE WAS SOME CLAIMANT DIFFERENTIATION ARGUMENT RELATING

14    TO TELEPHONE ACCOUNT, THAT ONE CLAIM USED THE TERM "ACCOUNT"

15    AND THE OTHER CLAIM USED THE TERM "TELEPHONE ACCOUNT".  BUT

16    THOSE TWO CLAIMS ARE NOT EVEN RELATED.

17         CLAIM 27 IS A CLAIM THAT DEPENDS FROM CLAIM 25 AND

18    CLAIM 21 DEPENDS FROM CLAIM 20.  SO THE RULES OF CLAIM

19    DIFFERENTIATION WHICH WOULD SUGGEST THAT IF YOU HAD A CLAIM

20    TERM THAT SAID -- THAT RECITED ACCOUNT AND THEN YOU HAD A

21    DEPENDENT CLAIM RIGHT OFF OF THAT THAT SAID TELEPHONE ACCOUNT,

22    THAT MIGHT BROADEN THE ACCOUNT.  THAT RULE DOESN'T APPLY HERE

23    BECAUSE THAT IS NOT HOW THE CLAIMS ARE STRUCTURED.

24         I JUST WANTED TO ADDRESS THAT MINOR POINT TO START WITH.

25    I THINK THAT IS NOT GOING TO BE A MAJOR POINT IN THE

```
1   DISCUSSION, BUT I WANTED TO CLEAR THAT UP.

2       THE BIGGER POINT, I THINK, IS THAT THE EVIDENCE THAT WAS

3   DISCUSSED IS EVIDENCE THAT RELATES TO DIFFERENT PATENTS IN

4   DIFFERENT PATENT FAMILIES.  THERE'S ONLY ONE PATENT AT ISSUE

5   WHEN IT COMES TO THE TERM "SUBSCRIBER LINE" AND "COMMUNICATION

6   LINE", AND THAT'S THE '049 PATENT.

7       AND JUST TO GIVE YOUR HONOR A LITTLE BIT OF CONTEXT ON

8   THAT, IN THE 2001 TIME FRAME, AND I BELIEVE WE MENTIONED THIS

9   DURING THE TUTORIAL, PAYMENTONE WAS IN THE BILL TO LANDLINE

10  BUSINESS.  AND, IN FACT, IF YOU LOOK AT STERN'S DECLARATION,

11  PAYMENTONE'S OWN EXPERT DECLARATION, PAYMENTONE'S OWN EXPERT

12  DIDN'T COME TO THIS BILL TO PHONE BUSINESS UNTIL MUCH LATER

13  UNTIL 2006.  PAYMENTONE THEMSELVES DIDN'T COME TO THIS

14  BUSINESS UNTIL 2007.

15      SO THE '049 PATENT IS A PATENT THAT WAS FILED IN 2001.  AT

16  THAT TIME, PAYMENTONE WAS IN THE BILL TO LANDLINE BUSINESS.

17  THAT FACT IN AND OF ITSELF IS NOT RELEVANT TO THE COURT'S

18  INQUIRY, BUT IF YOU LOOK AT ALL THE EVIDENCE IN THE PATENT,

19  WHICH I AM PREPARED TO STEP THROUGH, INCLUDING THE EVIDENCE

20  THAT THEIR OWN EXPERT PRESENTED, IT ALL SUPPORTS THE POSITION

21  THAT THE PATENT WAS RELATED TO THE BILL TO LANDLINE.

22      TWO OTHER PATENTS WERE MENTIONED, AT LEAST ONE OTHER WAS

23  MENTIONED IN THE PAYMENTONE PRESENTATION, AND THAT'S THE '500

24  AND THE '504 PATENTS.  THOSE WERE FILED IN 2006 AND IN 2007.

25  BY THAT TIME, PAYMENTONE WAS MOVING OVER TO THE CELLULAR
```

1    BUSINESS, AND THAT'S YEARS LATER.  THOSE TWO PATENTS ARE IN A

2    COMPLETELY DIFFERENT PATENT FAMILY.  THEY ARE NOT RELATED TO

3    THE '049 PATENT AT ALL.  AND, IN FACT, IF YOU LOOK AT THOSE

4    PATENTS AND GLEAN ANYTHING FROM IT, ONE OF THE PATENT CLAIMS

5    OR TWO OF THE PATENT CLAIMS ACTUALLY ADDRESS WIRELESS.

6         FOR THE FIRST TIME IN THOSE PATENTS THAT WERE FILED IN

7    2006, 2007, AND THE TERM "WIRELESS" WASN'T EVEN ADDED INTO

8    THOSE PATENT CLAIMS UNTIL 2010.  SO THE TERM "WIRELESS"

9    APPEARS NOWHERE IN ANY OF THE CLAIMS AT ISSUE UNTIL 2010.

10        BUT THE BIG PICTURE POINT IS, ON THE TERMS "SUBSCRIBER

11   LINE" AND "LANDLINE" THOSE ARE ONLY IN THE '049 PATENT, SO I

12   AM ONLY GOING TO DISCUSS THAT EVIDENCE.  WHETHER THERE ARE

13   CLAIMS TERMS ADDED IN 2010 RELATED TO WIRELESS, TO ME, IS NOT

14   RELEVANT TO THE COURT'S INQUIRY.

15        PAYMENTONE DID EXCHANGE THE SLIDE DECK THAT HAD THE

16   QUOTATIONS FROM THE FEDERAL CIRCUIT.  I WILL SAY THAT I

17   COMPLETELY AGREE WITH EACH ONE OF THOSE QUOTATIONS.  THIS IS

18   ACCURATE IN TERMS OF WHAT THE LAW IS.  WE DON'T HAVE ANY

19   DISPUTE ABOUT THAT.

20        WHAT I AM CONCERNED WITH IS HOW PAYMENTONE HAS BROUGHT

21   THAT LAW TOGETHER TO SUGGEST A CERTAIN METHODOLOGY FOR CLAIM

22   CONSTRUCTION.  IN PARTICULAR, PAYMENTONE SEEMS TO SUGGEST THAT

23   THE TERM "SUBSCRIBER LINE" AND "COMMUNICATION LINE" NATURALLY

24   MEAN SOMETHING THAT'S NOT A LINE, IT IS A WIRELESS

25   COMMUNICATION THROUGH THE AIR AND, THEREFORE, ANY OTHER

1    CONSTRUCTION HAS TO INVOLVE IMPORTING LIMITATIONS INTO THE

2    CLAIM.

3         WELL, I THINK IT IS VERY TELLING THAT THERE IS NOT ONE

4    CASE THAT PAYMENTONE CITES THAT'S ON ALL FOURS OR EVEN

5    ANALOGOUS TO THIS CASE.  IF YOUR HONOR LOOKS AT THE THORNER

6    CASE ON WHICH PAYMENTONE HEAVILY RELIES, THE ACTUAL DISPUTED

7    TERM WAS "ATTACHED TO SAID PAD".  AND THE ISSUE WAS WHETHER

8    THAT ATTACHMENT HAD TO BE LIMITED TO BEING ATTACHED TO THE

9    EXTERNAL SURFACE.

10        THAT'S A COMPLETELY DIFFERENT SITUATION THAN, FOR EXAMPLE,

11   TRYING TO DEFINE WHAT IT MEANT TO BE ATTACHED, WHETHER A PIECE

12   OF PAPER ON THE COMPUTER WAS ATTACHED OR TRYING TO DEFINE AN

13   ACTUAL TERM.

14        SO THERE IS NO CASE THAT PAYMENTONE CITES THAT SUGGESTS IN

15   A CASE LIKE THIS THE COURT WOULD BE IMPORTING A LIMITATION BY

16   ACTUALLY CONSTRUING THE CLAIM TERM "COMMUNICATION LINE" OR

17   "SUBSCRIBER LINE" TO READ ON A LINE BUT NOT SOME SORT OF AN

18   ETHER WIRELESS CONNECTION.

19        STEPPING BACK AT A HIGH LEVEL AS TO WHAT THE '049 PATENT

20   IS ABOUT, THE ISSUE THAT WAS BEING ADDRESS IN THE '049 PATENT

21   WAS AN ISSUE THAT A LOT OF COMPANIES WERE ADDRESSING IN 2001.

22        IN 2001, CONSUMERS WERE AFRAID TO GIVE THEIR CREDIT CARD

23   INFORMATION OVER THE INTERNET.  I KNOW THAT SOME PEOPLE,

24   INCLUDING MY MOM, ARE STILL AFRAID TO DO THAT, BUT PEOPLE HAVE

25   GRAVITATED BEYOND THAT.

1        SO, IN 2001 BECAUSE PEOPLE WERE AFRAID TO GIVE THEIR

2    CREDIT CARD NUMBER OVER THE INTERNET, A NUMBER OF COMPANIES

3    WERE WORKING IN THIS FIELD CALLED BILL TO LANDLINE WHERE

4    INSTEAD OF USING YOUR CREDIT CARD TO CHARGE A TRANSACTION, YOU

5    COULD USE YOUR HOME TELEPHONE NUMBER.  AND THAT'S ACTUALLY

6    RECITED IN THE '049 PATENT AT COLUMNS 4, LINES 59 TO 60 AND IN

7    PAYPAL'S SLIDE 24, IT ACTUALLY TALKS ABOUT THE FACT THAT USERS

8    WERE UNWILLING TO SUBMIT FINANCIAL CARD INFORMATION TO VENDORS

9    FOR SECURITY REASONS.

10        SO THE PATENT PURPORTS TO TRY AND ADDRESS THAT ISSUE.  AND

11    IT SHOWS ONE WAY OF ATTEMPTING TO ADDRESS IT.  BUT IF YOU CAN

12    IMAGINE, IF YOU ARE ACTUALLY GOING TO USE YOUR HOME PHONE

13    NUMBER TO BILL A CHARGE, THERE ARE OTHER SECURITY CONCERNS.  I

14    DON'T KNOW YOUR CREDIT CARD INFORMATION.  I MIGHT HAVE THE

15    COURT'S PHONE NUMBER BY LOOKING IT UP ON THE INTERNET.  I MAY

16    ALSO HAVE OTHER PEOPLE'S PHONE NUMBERS AND COULD ALSO CHARGE

17    TO THEIR NUMBER.  SO THERE'S OTHER CONCERNS RELATED TO

18    SECURITY THAT ARISE IF YOU'RE GOING TO USE A PHONE NUMBER

19    VERSUS A CREDIT CARD.

20        SO THE TWO WAYS THAT THE PATENT ATTEMPTS TO ADDRESS THIS

21    IS, FIRST, THE PATENT ATTEMPTS TO VALIDATE THAT YOU'RE

22    ACTUALLY COMMUNICATING THROUGH YOUR COMPUTER ON THE SAME LINE

23    THAT IS YOUR TELEPHONE LINE.  THIS WAS 2001.  WE HAD COMPUTERS

24    CONNECTED UP TO DIAL-UP MODEMS, AND IN MOST CASES -- THIS IS

25    ONE EMBODIMENT OF THE PATENT, IN MOST CASES YOU WOULD HAVE A

1    SUBSCRIBER LINE THAT WOULD CONNECT YOUR TELEPHONE TO THE

2    TELEPHONE COMPANY, AND IF YOU WANTED TO USE YOUR COMPUTER AT

3    HOME, YOU WOULD CONNECT YOUR COMPUTER INTO THAT SAME LINE

4    THROUGH A MODEM.

5        YOU MAY REMEMBER IN 2001, YOU WOULD CALL PEOPLE AND YOU

6    WOULD GET A DIAL TONE AND IT WOULD KEEP RINGING AND RINGING

7    BECAUSE THEY WERE ON THEIR COMPUTER AT THE TIME.  THAT WAS ONE

8    EMBODIMENT.

9        SOME PEOPLE ACTUALLY HAD TWO LINES.  SO INSTEAD OF HAVING

10   THE SUBSCRIBER LINE ALSO BE WHAT IS REFERRED TO AS A

11   COMMUNICATION LINE, SO IT'S A SUBSCRIBER LINE BECAUSE IT IS

12   CONNECTING YOUR TELEPHONE AND IT'S ALSO THE COMMUNICATION LINE

13   BECAUSE YOU ARE GOING BACK AND FORTH BETWEEN YOUR TELEPHONE

14   AND YOUR COMPUTER, SOME PEOPLE HAD TWO LINES IN THEIR HOUSE.

15       I REMEMBER AROUND 2004, I WAS ACTUALLY ABLE TO GET TWO

16   LINES.  I WAS VERY DELIGHTED THE PHONE COMPANY WOULD ACTUALLY

17   PUT A PLUG IN THE WALL WITH TWO DIFFERENT LINES.  ONE OF THEM,

18   WHICH WAS CALLED A SUBSCRIBER LINE, AND I GOT MY BILL AT THE

19   END OF THE MONTH.  IT ACTUALLY LISTED ALL MY CHARGES.  AND THE

20   OTHER ONE I USED FOR THE INTERNET.

21       THE PATENT DISCLOSES THAT EMBODIMENT, AND TO DIFFERENTIATE

22   BETWEEN THE TWO LINES, IT SAYS, ONE LINE IS A SUBSCRIBER LINE,

23   AND THE OTHER ONE, EVEN THE CLAIMS ADDRESS THIS, THE ONE THAT

24   CONNECTS THE COMPUTER OR ELECTRONIC TERMINAL, WE'RE GOING TO

25   CALL THAT THE COMMUNICATION LINE.

1        AS CLAIM 9 RECITES, SOMETIMES IT CAN BE ONE IN THE SAME

2   AND BECAUSE CLAIM 8 DOESN'T -- YOU KNOW, SOMETIMES THEY CAN BE

3   DIFFERENT.

4        SO ACTUALLY -- SO THAT'S GENERALLY WHAT THE PATENTS ARE

5   ABOUT.  AND I WANT TO STEP BACK TO PAYMENTONE'S PREMISE THAT

6   THESE TERMS "COMMUNICATION LINE" AND "SUBSCRIBER LINE", WHICH

7   WERE CLEARLY RECITED NUMEROUS TIMES DURING THE PATENT, MUST

8   NECESSARILY MEAN CELLULAR, NOT JUST A PHYSICAL LINE.  AND I

9   WANT TO NOTE A FEW THINGS.

10       FIRST, THEIR OWN EXPERT NEVER TESTIFIED THAT ANYBODY WAS

11  IN THIS BILL-TO-CELLULAR SPACE IN 2001.  NOT JUST THE PARTIES

12  IN THIS SUIT, BUT COMPANIES WEREN'T IN THIS SPACE IN 2001.

13  AND, IN FACT, AS I MENTIONED, SHE DIDN'T EVEN COME TO THE

14  SPACE UNTIL 2006.

15       IT IS ALSO UNDISPUTED THAT THE TECHNOLOGY DISCLOSED IN THE

16  PATENT AS A WHOLE COULD HAVE ONLY BE BEEN USED IN 2001 FOR

17  LANDLINE, NOT FOR CELLULAR.  NOTHING IN STERN'S DECLARATION,

18  PAYMENTONE'S OWN DECLARATION SUGGESTS OTHERWISE.  AT MOST,

19  WHAT STERN TESTIFIED TO WAS THAT CERTAIN OF THE BLOCKS IN, FOR

20  EXAMPLE, FIGURE 15, COULD ALSO HAVE BEEN USED IN THE CELLULAR.

21       AND I WILL SAY, I DO AGREE THAT TO THE EXTENT THE EXPERTS

22  PROVIDED OPINION WITHOUT SUPPORT, THE COURT SHOULD GIVE LITTLE

23  WEIGHT TO THAT.  AND I THINK IF YOUR HONOR LOOKS AT THE STERN

24  DECLARATION, MOST OF THE COMMENTS SHE MADE WERE UNSUPPORTED.

25       I ALSO WANT TO NOTE THAT IF YOUR HONOR WERE TO LOOK AT

1    MS. STERN'S DECLARATION AND LOOK AT HER OWN DEFINITION OF WHAT

2    SHE BELIEVED "LINE" MEANT, HER OWN DEFINITION IS INCONSISTENT

3    WITH THE CLAIMS THEMSELVES.  STERN DECLARATION, PARAGRAPH 12,

4    SAYS THAT THE WIRELESS SIDE OF TELECOMMUNICATIONS INDUSTRY

5    USES A TERM "LINE" AND IT IS WELL UNDERSTOOD TO MEAN

6    SUBSCRIBER ACCOUNT OR NUMBER.

7        SO IT IS NO LONGER A PHYSICAL LINE, IT IS NOW, IN HER

8    VIEW, A SUBSCRIBER ACCOUNT OR A NUMBER.

9        IF YOUR HONOR LOOKS AT THE ACTUAL CLAIMS IN SUIT, I AM ON

10   SLIDE 10, AND LOOKS AT THE TERM "COMMUNICATION LINE", THE

11   FIRST INSTANCE SHOWS THAT THE COMMUNICATION LINE CONNECTS THE

12   ELECTRONIC TERMINAL, LIKE YOUR COMPUTER AT HOME, TO THE

13   COMMUNICATION NETWORK.  THAT'S HOW YOU ARE GOING TO BUY YOUR

14   ITEMS.

15       IN THAT INSTANCE, YOU CAN'T TAKE THE WORD "COMMUNICATION

16   LINE" AND SUBSTITUTE IN SUBSCRIBER OR ACCOUNT OR NUMBER.

17   SUBSCRIBER ACCOUNTS DON'T CONNECT.  NUMBERS DON'T CONNECT.

18       IT'S THE SAME THING THROUGHOUT THE REST OF THE TERM.

19   THERE'S-- THE REFERENCE FROM AN ACCOUNT ASSOCIATED WITH THE

20   COMMUNICATION LINE.  IF THE COMMUNICATION LINE IS THE ACCOUNT,

21   THAT WOULD BE REDUNDANT.

22       SAME THING WITH CLAIM 22, LOOKING AT THE TERM "SUBSCRIBER

23   LINE".  IT'S THE SUBSCRIBER LINE TO WHICH THE ELECTRONIC

24   TERMINAL IS CONNECTED.  AND I AM ON SLIDE 13.  IT'S A PHYSICAL

25   LINE.  IT IS NOT AN ACCOUNT OR A NUMBER.

```
1            THE COURT:  I AM SORRY, I AM MISSING SOMETHING, AND I

2     APOLOGIZE.

3        I AM LOOKING AT PAYMENTONE'S CONSTRUCTION, AND THEY DON'T

4     TALK ABOUT IT BEING AN ACCOUNT OR A NUMBER.

5            MS. LUTTON:  THEIR EXPERT STERN, WHEN SHE PROVIDED

6     TESTIMONY TO SUPPORT THEIR CONCLUSION --

7            THE COURT:  OKAY.

8            MS. LUTTON:  HER DECLARATION WAS SUGGESTING THAT WHEN

9     SHE READ THE PATENT AND SHE SAW THE WORDS "COMMUNICATION LINE"

10    AND "SUBSCRIBER LINE", SHE THOUGHT THEY MEANT WIRELESS.  AND

11    SHE SAID BECAUSE WHEN SHE SEES THE TERM "LINE", HOW SHE

12    CONSTRUES THAT TERM IS SHE CONSTRUES THE TERM TO MEAN

13    SUBSCRIBER ACCOUNT OR NUMBER.  IT'S AT STERN DECLARATION

14    PARAGRAPH 12.

15           THE COURT:  OKAY.

16           MS. LUTTON:  BUT THE BOTTOM LINE IS --

17           THE COURT:  I WILL LET YOU ALL KNOW, I HAVE NOT READ

18    THOSE DECLARATIONS YET BECAUSE I DON'T KNOW THAT I NEED TO, SO

19    I ALWAYS LIKE NOT TO.

20           MS. LUTTON:  OKAY.  GREAT.

21        SO THE BOTTOM LINE IS THAT THE STARTING POINT FOR THIS

22    ANALYSIS CAN'T BE THAT THE TERM "LINE" HAS SOME MEANING AND

23    THAT PAYPAL IS SOMEHOW SUGGESTING THAT THE COURT LIMIT THAT

24    MEANING.

25        AND I WOULD LIKE TO STEP THROUGH -- ACTUALLY, I WILL QUOTE
```

```
1    ONE CASE THAT MAKES THIS VERY CLEAR FROM THE FEDERAL CIRCUIT.

2    I DON'T BELIEVE THIS WAS IN PAYMENTONE'S MATERIAL.  IT'S THE

3    ABBOTT CASE THAT WE HAD CITED WHERE THE FEDERAL CIRCUIT STATED

4    IN 2009 THAT WIDENING THE SCOPE OF THE PATENTEE'S CLAIMS

5    BEYOND THAT WHICH IS ACTUALLY INVENTED, THEY SAID THAT THEY --

6    COURTS SHOULD ATTEMPT TO AVOID THAT BECAUSE THAT WOULD RESULT

7    IN A WINDFALL TO THE INVENTOR AT THE EXPENSE OF FUTURE

8    INNOVATION AND PROPER NOTICE TO THE PUBLIC OF THE SCOPE OF THE

9    CLAIMED INVENTION.  AND I THINK THAT'S EXACTLY WHAT THE ISSUE

10   IS HERE.

11           THE COURT:  ALTHOUGH THERE ARE CASES ON THE OTHER

12   SIDE FOR BOTH OF YOU.  I AM SURE THAT AT SOME POINT IN TIME IN

13   OUR 20-, 30-YEAR HISTORY HERE, YOU WILL ARGUE THE OPPOSITE,

14   RIGHT, THAT THEY ARE ENTITLED TO THE PATENT, TO THE PLAIN

15   LANGUAGE OF THE PATENT.

16           MS. LUTTON:  I BELIEVE THAT THEY ARE.  AND MY POINT

17   IS THAT THERE IS NO PLAIN -- THEY CITED NO EVIDENCE THAT THE

18   PLAIN LANGUAGE FOR COMMUNICATION LINE AND SUBSCRIBER LINE IS

19   SOME SORT OF A WIRELESS CONNECTION.

20       SO I AM SAYING THAT THAT STARTING POINT IS NOT THE RIGHT

21   STARTING POINT.  NOW, THEY COULD HAVE DEFINED THE TERM

22   "COMMUNICATION LINE" TO INCLUDE WIRELESS IF THEY HAD CHOSEN

23   TO, BUT THEY DIDN'T DO THAT.

24           THE COURT:  BUT WHY IS IT -- YOU KNOW, YOU -- BOTH

25   SIDES ARE MAKING THIS VERY SPECIFIC TO AND RESULT ORIENTED.
```

1    WHY AREN'T WE TALKING ABOUT WHAT IS COMMUNICATION?  WHAT

2    IS COMMUNICATION?  IF I TOLD A JUROR TO -- THAT THE DISPUTE IN

3    THIS CASE IS OVER A COMMUNICATION LINE, THAT SUGGESTS A MODE

4    OF COMMUNICATING BETWEEN AT LEAST TWO PARTIES.

5    WHY IS THAT SO DIFFICULT TO UNDERSTAND?  WHY CAN'T A

6    NORMAL -- OR A PERSON OF ORDINARY SKILL IN THE ART UNDERSTAND

7    THAT COMMUNICATION IS WHAT IT MEANS.  MAYBE YOU COULD ADDRESS

8    THAT ISSUE.

9    **MS. LUTTON:**  I DO BELIEVE THAT COMMUNICATION ITSELF

10   IS WHAT IT MEANS.  IT'S LINE THAT IS THE MEDIUM FOR THAT

11   COMMUNICATION.

12   SO COMMUNICATION IS JUST THE ABILITY, AS THE PATENT

13   DESCRIBES, FOR A USER OR AN ORDINARY PERSON TO BE ABLE TO

14   COMMUNICATE WITH SOME SORT OF A WEBSITE TO PURCHASE ITEMS.  SO

15   COMMUNICATION SHOULD HAVE ITS ORDINARY MEANING.

16   LINE IS A SPECIFIC TERM THAT EVEN STERN NOTES CAME FROM

17   THE LANDLINE DAYS AND MEANT SOMETHING.

18   **THE COURT:**  OKAY.  SO WHY AM I CONSTRUING EVERYTHING

19   OTHER THAN JUST LINE HERE?  WHY DOESN'T THIS ALL BOIL DOWN TO

20   WHAT IS A LINE EFFECTIVE, YOU KNOW, 2001, WHEN THIS PATENT WAS

21   WRITTEN?

22   **MS. LUTTON:**  SO I THINK WHEN IT COMES TO THE TERM

23   "COMMUNICATION LINE", THAT WOULD BE APPROPRIATELY APPROPRIATE

24   TO JUST SAY THIS IS WHAT LINE MEANS IN THIS CONTEXT.

25   **THE COURT:**  WHAT ABOUT SUBSCRIBER LINE?

1          **MS. LUTTON:**  SUBSCRIBER HAD MORE OF A -- IT'S EVIDENT

2     FROM THE PATENT, SUBSCRIBER WAS THE TELEPHONE SUBSCRIBER.  SO

3     SUBSCRIBER HAD A LITTLE BIT MORE OF A MEANING.  AND I ALSO

4     THINK THE JURY MIGHT BE MORE CONFUSED WITH THAT TERM.

5          WHAT ARE THEY SUBSCRIBING TO?  THE PATENT SAYS THEY ARE

6     SUBSCRIBING TO THE TELEPHONE SERVICE.  THEY MAY BE CONFUSED AS

7     TO WHAT SUBSCRIBER MEANS.  SO IT'S NOT TO ME AS CLEAR AS

8     COMMUNICATION.

9          **THE COURT:**  OKAY.  GO AHEAD.

10         **MS. LUTTON:**  I KNOW YOUR HONOR HAS NOT LOOKED THROUGH

11    THE VARIOUS DECLARATIONS, I WANT TO STEP THROUGH -- THERE ARE

12    CERTAIN THINGS THAT ARE NOT IN DISPUTE WHEN IT COMES TO THE

13    DECLARATION.

14         AS YOUR HONOR IS WELL AWARE, PAYPAL HIRED MR. FLOOD TO

15    PROVIDE A DECLARATION.  PAYMENTONE THEN TOOK MR. FLOOD'S

16    DEPOSITION AND THEN SUBMITTED THEIR OWN DECLARATION REBUTTING

17    A NUMBER OF THE STATEMENTS MADE IN THE DECLARATION.

18         BUT THERE IS NO DISPUTE ABOUT A NUMBER OF THINGS.  NUMBER

19    ONE, THERE IS NO DISPUTE THAT A LOT OF THE TERMS THAT ARE USED

20    IN THE '049 PATENT ARE LANDLINE ONLY.  THEY ARE NOT CELLULAR.

21    AND I CAN LIST THEM OUT.  IT'S CLEC, CABLE, ONNET, OFFNET.

22    THERE'S NO DISPUTE THAT THOSE ARE ONLY LANDLINE, AND THOSE

23    FORM PART OF THE FIGURE THAT ENABLES THE PATENT THAT SHOWS HOW

24    TO IMPLEMENT THE PATENT.  THEY ARE ACTUALLY USING LANDLINE

25    SPECIFIC TERMS.

1       THERE IS ALSO NO DISPUTE THAT THERE IS NO CELLULAR

2   TERMINOLOGY THROUGHOUT THE PATENT WHEN IT ACTUALLY COMES TO

3   THE INFRASTRUCTURE.  THE ONLY INFRASTRUCTURE DISCLOSED RELATES

4   TO LANDLINE.  AND FLOOD, ACTUALLY, AT PARAGRAPH 16 OF HIS

5   DECLARATION, LISTED NUMEROUS CELLULAR TERMS THAT ARE NOT IN

6   THE PATENT.  HOME LOCATION REGISTER, AUTHENTICATION CENTER.

7   THERE ARE A NUMBER OF THEM THAT HE LISTS.

8       THERE IS NO DISPUTE THAT THE OVERALL INFRASTRUCTURE

9   DISCLOSED IS LANDLINE AND COULDN'T HAVE BEEN USED FOR WIRELESS

10  IN 2001.  SO THE ENTIRE DISCLOSURE RELATES TO LANDLINE.

11      AND IF YOUR HONOR LOOKS AT SOME OF THE INSTANCES OF

12  LANDLINE IN THE PATENT, IT ACTUALLY TALKS ABOUT THE SUBSCRIBER

13  LINE USING A LANDLINE TELEPHONE.  SO EVEN THE EXAMPLE SPECIFIC

14  EXAMPLES THAT ARE GIVEN, ARE GIVEN IN RELATIONSHIP TO

15  LANDLINE.

16      NOT ONLY THAT, BUT WHEN I MENTIONED THAT THE PATENT WAS

17  ABOUT ENSURING THAT BILLS TO A PHONE NUMBER WOULD BE SECURE, I

18  MENTIONED THAT ONE STEP OF THAT PROCESS WAS TO MAKE SURE THAT

19  YOU WERE ACTUALLY USING THE PHYSICAL LINE YOU WERE BILLING TO.

20  YOU HAVE GOT YOUR COMPUTER HOOKED UP TO THE SAME LINE YOU ARE

21  GETTING YOUR BILL TO, SO I AM NOT BILLING TO MY PARTNER'S

22  PHONE NUMBER, I AM ONLY BILLING TO THE PHONE ASSOCIATED WITH

23  THE LINE THAT MY COMPUTER IS HOOKED UP TO.  THAT'S ONE STEP.

24      THE SECOND STEP THAT THE PATENT PROVIDES IS TO CHECK OUT

25  WHETHER THAT PHONE SHOULD EVEN BE BILLED TO.  AND SO THERE ARE

1    HOST OF CODES THE PATENT PROVIDES AS EXAMPLES OF PHONES AND

2    PHONE LINES THAT SHOULD NOT BE BILLABLE.

3        FOR EXAMPLE, THE PATENT GIVES THE EXAMPLE OF A DORM ROOM

4    OR A PRISON OR A HOSPITAL WHERE I MIGHT BRING MY PHONE INTO A

5    DORM OR INTO A HOSPITAL AND HOOK IT UP TO A PHONE LINE, BRING

6    MY COMPUTER AND HOOK IT UP TO A PHONE LINE, BUT I SHOULDN'T BE

7    ABLE TO BILL THAT PHONE LINE IF I WANTED TO CHARGE SOMETHING

8    ON AMAZON.

9        SO THE PATENT LISTS NUMEROUS EXAMPLES WHERE THE PHONE

10   SHOULDN'T BE BILLABLE, AND IT SPECIFICALLY SAYS CELLULAR IS

11   AVAILABLE.  THAT'S BECAUSE THERE WAS NO INFRASTRUCTURE FOR

12   BILLING CELLULAR IN 2001.  IT WAS SPECIFICALLY DISAVOWED

13   DURING THE ACTUAL PATENT ITSELF AS BEING NONBILLABLE.  IT SAYS

14   HERE AT -- THIS IS, I BELIEVE, IN TABLE 2 AND IT'S ON SLIDE 30

15   OF PAYPAL'S SLIDES, IT HAS A CODE 231.  AND THE CODE SAYS

16   "UNBILLABLE".  AND THE REASON IS BECAUSE THE LINE NUMBER

17   BELONGS TO A WIRELESS PROVIDER.

18       SAME THING WITH TABLE 3 IN THE PATENT.  NONBILLABLE, DOES

19   NOT HAVE ROUTING OR ALLOW BILLING E.G. CELLULAR.

20       AND THEN HERE'S ANOTHER DENIED CODE.  THIS IS CHECKING TO

21   SEE CAN WE BILL TO THIS.  IT GIVES A HOST OF CODES THAT ARE

22   JUST NOT BILLABLE.  JUST LIKE YOU COULDN'T BILL A HOSPITAL

23   ROOM, YOU COULDN'T BILL A DORM ROOM, YOU COULDN'T BILL A

24   PRISON PHONE, YOU CAN'T BILL A CELLULAR PHONE EITHER.

25       AND EVEN IF YOUR HONOR DOES NOT CONSIDER THE SPECIFIC

1    STATEMENTS MADE BY THE EXPERTS DURING THEIR DECLARATION,

2    DR. STERN ACTUALLY SUPPORTED -- MS. OR DOCTOR, I DON'T RECALL

3    WHICH ONE SHE IS AND I DON'T WANT TO NOT GIVE HER CREDIT IF

4    SHE IS A DOCTOR, BUT EXPERT STERN PROVIDED SOME EVIDENCE TO

5    ACTUALLY SUPPORT HER POSITIONS.  ALL OF THAT EVIDENCE ACTUALLY

6    SUPPORTS PAYPAL'S POSITION.

7        SHE CITES TO ONE DOCUMENT, A LIFELINE DOCUMENT.  AND THIS

8    IS A MAY 1997 DOCUMENT.  AND SHE SAYS BECAUSE LIFELINE APPLIES

9    IN -- LIFELINE IS MORE OF A MARKETING TERM.  IT WAS A TERM

10   USED IN THE TELEPHONE INDUSTRY TO -- IN ORDER TO GIVE

11   INDIVIDUALS WHO DIDN'T HAVE A LOT OF MONEY OR INCOME ACCESS TO

12   TELEPHONE SERVICES, SO THEY USED THE TERM LIFELINE.

13       SHE SAYS BECAUSE THE MARKETING TERM "LIFELINE" WAS USED IN

14   THE CONTEXT OF CELLULAR, LINE ITSELF MUST BE A CELLULAR TERM.

15   BUT IF YOU LOOK AT THAT ACTUAL DOCUMENT ITSELF, IT MADE CLEAR

16   THAT LIFELINE ITSELF WASN'T USED FOR WIRELESS UNTIL 2005.  AND

17   THAT'S -- I HAVE A CITE ON SLIDE 37 FOR THAT.  IT'S AT

18   FCC.GOV/LIFELINE PROGRAM ITSELF.

19       THE VERY DOCUMENT SHE CITES SAYS, "UNDER EITHER PLAN,

20   QUALIFYING SUBSCRIBERS MAY RECEIVE ASSISTANCE FOR A SINGLE

21   TELEPHONE LINE IN THEIR PRIMARY RESIDENCE."  SO THE DOCUMENT

22   ITSELF IS TALKING ABOUT LANDLINE.

23       NOW, I DON'T THINK THIS LIFELINE IS ALL THAT RELEVANT.  I

24   DON'T THINK A MARKETING TERM IS ALL THAT RELEVANT ANYWAY, BUT

25   I DID WANT TO ADDRESS THAT EVIDENCE.

1       I THINK THE MORE RELEVANT EVIDENCE RELATES TO THE VERIZON

2   2001 ANNUAL REPORT THAT STERN CITES.  SO STERN, IN HER

3   DECLARATION, NOTED THAT SHE WORKED FOR VERIZON FOR 30 YEARS.

4   AND THEN THE ONLY REAL CONTEMPORANEOUS EVIDENCE THAT SHE CITES

5   FROM 2001 THAT ADDRESSES THE TERM "LINE" IS VERIZON'S 2001

6   ANNUAL REPORT.

7       AND WHAT STERN POINTS THE COURT TO IS A PORTION OF THE

8   REPORT THAT ADDRESSES, AGAIN, A MARKETING TERM "HOPELINE".

9       AND SHE SAYS, BECAUSE HOPELINE, AND THIS IS A TERM THAT'S

10  BEING USED FOR DOMESTIC VIOLENCE PROGRAM, CAN BE USED IN THE

11  CELLULAR CONTEXT, THEREFORE, LINE MUST BE CELLULAR.

12      BUT IF YOU ACTUALLY LOOK AT THAT REPORT, AND IT HAS NOW

13  BEEN SUBMITTED AS PART OF THE JOINT CLAIM CONSTRUCTION

14  STATEMENT AS AN APPENDIX, AND WE HAVE REATTACHED IT TO OUR

15  SLIDE DECK SO THE COURT CAN ACTUALLY VIEW THE DOCUMENT.

16      I BELIEVE THE LINK WAS PROVIDED IN STERN'S REPORT.  AND I

17  ACTUALLY FOUND IT EASIER TO GO TO THE LINK AND SEARCH FOR THE

18  TERM "LINE" AND FIND OUT WHERE IT APPEARED AND HOW IT WAS

19  BEING USED BY STERN'S VERY COMPANY IN 2001.  "LINE" IS NEVER,

20  IN THAT REPORT, USED TO REFER TO WIRELESS.  NOT ONCE.

21      IN FACT -- I AM ON SLIDE 39 -- I KNOW THE HIGHLIGHTING IS

22  A LITTLE BIT DIFFICULT TO SEE, BUT IF YOU ACTUALLY TURN TO

23  SLIDE 4 OF THE VERIZON ANNUAL REPORT, VERIZON IS DISCUSSING

24  THEIR VARIOUS BUSINESSES.  AND VERIZON FIRST DISCUSSES THEIR

25  WIRELINE BUSINESS, AND THE FIRST ORANGE HIGHLIGHTED WORD SAYS,

1    "WIRELINE."  "VERIZON SERVICES, RESIDENTIAL AND BUSINESS

2    WIRELINE CUSTOMERS."

3        IN ADDRESSING WIRELINE CUSTOMERS, VERIZON USES THE TERM

4    "LINE" BECAUSE LINE WAS A WIRED TERM.  IF YOU GO FORWARD AND

5    READ MORE OF THAT PARAGRAPH, THEY DEFINE THE SCOPE OF THEIR

6    BUSINESS, HOW MUCH IN THE MARKET THEY HAVE IN TERMS OF THE

7    NUMBER OF ACTUAL PHYSICAL LINES THEY HAVE.

8        THEY SAY "WE HAVE MORE THAN 61 MILLION ACCESS LINES AND

9    MORE THAN 132 MILLION VOICE GRADE EQUIVALENT LINES."

10       SO HERE IS VERIZON ITSELF TALKING ABOUT WIRELINE AND THEY

11   ARE USING THE TERM "LINE" TO DESCRIBE THEIR MARKET.  AS YOU

12   MAY RECALL FROM THE TUTORIAL, LINES RELATE THROUGHOUT THE

13   ENTIRE COUNTRY.  THEY ARE PHYSICAL CABLE WIRES.  THAT IS HOW

14   STERN'S AND PAYMENTONE'S OWN EXPERT, HER COMPANY WAS DEFINING

15   LINE.

16       THEN, ON THE VERY SAME PAGE, ACTUALLY RIGHT BELOW, THEY

17   TALK ABOUT THEIR WIRELESS MARKET.  IN 2001, VERIZON WAS ONE OF

18   THE VERY FEW COMPANIES THAT WAS IN BOTH MARKETS.  SO NOW THEY

19   ARE TALKING ABOUT THEIR WIRELESS MARKET AND THEY'RE TRYING TO

20   DESCRIBE WHAT SHARE OF THE MARKET THEY HAVE.  THEY NEVER USE

21   LINE FOR WIRELESS.  THEY ONLY TALK ABOUT CUSTOMERS OR

22   SERVICES.

23       HERE ON THE CHART, THEY SHOW THEY HAVE 92 PERCENT OF

24   SERVICES.  AND TALKING ABOUT THE SCOPE OF THEIR BUSINESS, THEY

25   TALK ABOUT HAVING 30 MILLION CUSTOMERS.

1          SAME THING ON SLIDE 40.  AGAIN, THEY TALK ABOUT, "VERIZON

2     COMPANIES ARE THE LARGEST PROVIDERS OF WIRELINE AND

3     WIRELESS" -- NOTICE THAT "LINE" IS USED FOR WIRELINE AND

4     WIRELESS MEANS NO LINE -- "COMMUNICATION IN THE UNITED STATES,

5     WITH 132.1 MILLION ACCESS LINE EQUIVALENTS AND 29.4 MILLION

6     WIRELESS CUSTOMERS."

7          SO, AGAIN, THEY ARE USING "LINE" FOR WIRELINE AND

8     CUSTOMERS AND OTHER TERMS FOR WIRELESS.

9          ON THE NEXT FEW PAGES, I JUST PROVIDED ADDITIONAL CITES.

10    I DON'T KNOW THAT THE COURT NEEDS TO GO THROUGH THOSE CITES.

11    IF THE COURT WANTS TO SEARCH FOR LINES THROUGH THAT DOCUMENT,

12    I THINK THE COURT WILL FIND THAT THE VERY EXTRINSIC EVIDENCE

13    SUPPORTED BY PAYMENTONE SUPPORTS PAYPAL'S CONSTRUCTION THAT

14    LINE HAD A MEANING IN 2001, AND THAT MEANING RELATED TO BEING

15    A PHYSICAL LINE.

16         NOW, THE ONLY EVIDENCE WHATSOEVER THAT COULD POSSIBLY

17    SUGGEST THAT THE PATENT MIGHT BE BROADER AND THAT LINE MIGHT

18    RELATE TO SOMETHING BROADER IS SOME REALLY VAGUE CATCH-ALL

19    LANGUAGE.  AND THIS IS THE CATCH-ALL LANGUAGE THAT YOUR HONOR

20    HAS SEEN NUMEROUS TIMES AS PRESENTED BY PAYMENTONE'S COUNSEL,

21    AND THAT'S AT ONE POINT IN THE PATENT, THE APPLICANTS HAVE

22    CATCH-ALL LANGUAGE WHERE THEY TALK ABOUT THE PC 24, WHICH IS

23    THE COMPUTER THAT WOULD CONNECT UP TO THE INTERNET, AND THEN

24    THEY TALK ABOUT TWO OTHER MODULES.  AND MODULES 30 AND 32 ARE

25    OTHER MODULES USED TO IMPLEMENT THIS SYSTEM WHERE YOU CAN

1    ACTUALLY VALIDATE THE LINE.  AND THEY SAY THAT THESE ARE

2    EXEMPLARY FORMS OF COMPUTER SYSTEMS OR MACHINES.  AND THEN

3    DOWN BELOW THEY NOTE, THOSE MACHINES MAY COMPRISE, AND THEY

4    GIVE A LAUNDRY LIST OF POSSIBLE DIFFERENT THINGS THAT THOSE --

5    THAT THOSE MACHINES CAN COMPRISE.

6        WELL, IT'S VERY CLEAR THAT YOU CAN'T USE A NUMBER OF

7    THESE, YOUR NETWORK ROUTERS, NETWORK SWITCHES FOR THESE

8    DIFFERENT ELEMENTS.  I MEAN, A NETWORK ROUTER ITSELF IS

9    SOMETHING THAT ROUTES INFORMATION IN A NETWORK.  IT'S NOT THE

10   PC ITSELF.

11       SO ALTHOUGH THERE'S A LAUNDRY LIST HERE, AND, YES, THE

12   WORD "CELLULAR TELEPHONE" WAS HERE, THIS DOESN'T PROVIDE A

13   CLEAR EXPLANATION THAT YOU WOULD ACTUALLY IMPLEMENT THE

14   EMBODIMENT THAT WAS DESCRIBED IN THE LANDLINE CONTEXT AND

15   SOMEHOW IMPLEMENT IT IN CELLULAR.

16       AND, IN FACT, IF YOUR HONOR WERE TO READ A LITTLE BIT

17   FURTHER DOWN RIGHT AFTER THIS PASSAGE, IT EVEN TALKS ABOUT HOW

18   THE MACHINE CAN HAVE -- LET ME SEE THE LANGUAGE HERE -- "A

19   DISK DRIVE UNIT."  AND THE MACHINE -- SAYS "MACHINE ALSO

20   INCLUDES A DISK DRIVE UNIT, A CURSOR CONTROLLED DEVICE, E.G.,

21   A MOUSE."  PHONES DIDN'T HAVE THIS.  SO THIS IS A VERY VAGUE

22   AND AMBIGUOUS REFERENCE.

23       AND I THINK ON THAT POINT, THE ST. CLAIR CASE, WHICH IS A

24   2001 CASE FROM THE FEDERAL CIRCUIT -- WE CITED IT AT SLIDE

25   50 -- MAKES IT VERY CLEAR THAT YOU CAN'T USE A VAGUE CATCH-ALL

```
1    PHRASE SOMEWHERE IN YOUR PATENT AND TRY AND TEACH AWAY FROM

2    THE ENTIRE TEACHINGS OF THE PATENT, INCLUDING IN THE CASE HERE

3    WHERE THE INVENTORS THEMSELVES SAID YOU CAN'T BILL TO CELLULAR

4    JUST LIKE YOU CAN'T BILL TO A PHONE IN A PRISON.  THIS IS NOT

5    CLEAR LANGUAGE THAT SOMEHOW EXPANDS THE PATENT.

6         AND IF YOU ACTUALLY LOOK AT THE ST. CLAIR CASE, IN THAT

7    CASE THE COURT LIMITED THE USE OF THE WORD "STILL" AND "IMAGE"

8    THROUGHOUT THE PATENT TO A SINGLE IMAGE OR PICTURE.

9         HERE, THEY'RE TRYING TO COMMUNICATE IN DVI -- THE ISSUE

10   WAS WHETHER IMAGE COULD BE MOVIES OR STILL IMAGES.  THERE WAS

11   A VAGUE CATCH-ALL REFERENCE AND IT LISTED MPEG AND DVI WHICH

12   ACTUALLY RELATES TO MOVIES, BUT THE COURT SAID, "FINALLY, WE

13   NOTE THAT, EVEN IF THE MPEG AND DVI COMPRESSION TECHNIQUES

14   REFERENCED IN THE SPECIFICATION ARE DESIGNED FOR MOVIE

15   FORMATS, THESE AMBIGUOUS REFERENCES," WHICH IS WHAT WE HAVE

16   HERE, "CANNOT OVERCOME THE EXPLICIT LIMITATION TO STILL

17   PICTURE FORMATS ELSEWHERE IN THE SPECIFICATION."

18        AND, YOUR HONOR, I AM ALSO PREPARED TO ADDRESS THE IMPACT,

19   IF YOU WOULD LIKE TO DISCUSS THAT, BUT OTHERWISE THAT

20   COMPLETES MY DISCUSSION, UNLESS YOUR HONOR HAS QUESTIONS.

21            THE COURT:  NO, I DON'T WANT TO HEAR ON IMPACT RIGHT

22   NOW, AND I DON'T HAVE QUESTIONS.

23        I WILL TAKE A FEW REBUTTAL COMMENTS ON THIS.  IN

24   PARTICULAR, I WOULD LIKE YOU TO ADDRESS THE ISSUE THAT WAS

25   RAISED IN SLIDE 30 REGARDING THIS WHOLE POINT THAT CELLULAR
```

```
1    COULD NOT BE BILLABLE BECAUSE IT WASN'T PART OF THE LINE, SO

2    TO SPEAK.  AND THEN WE WILL PROBABLY TAKE A SHORT BREAK TO

3    GIVE THE COURT REPORTER A REST.

4         MR. MC ANDREWS:  DO YOU ANTICIPATE TAKING A LUNCH

5    BREAK, YOUR HONOR?

6         THE COURT:  NO.

7         MR. MC ANDREWS:  I WILL FIRST ADDRESS THE IMMEDIATE

8    QUESTION YOU POSED, YOUR HONOR, CONCERNING SLIDE 30.

9      THERE ARE EXAMPLES OF DENIAL CODES OR DENY CODES AS WE ARE

10   REFERRING TO THEM IN THE CONTEXT OF THE PAYMENTONE PATENTS.

11   BUT, LIKE OTHER EMBODIMENTS OF THE INVENTION THAT ARE

12   DISCLOSED IN THE SPECIFICATION OF THE '049, THESE ARE MERELY

13   THAT.  THEY ARE EXEMPLARY --

14        THE COURT:  LOOK, IF I UNDERSTAND THE ARGUMENT,

15   COUNSEL HAS ARGUED THAT AT THE TIME OF THE INVENTION, THE WORD

16   "LINE" AS UNDERSTOOD, DIDN'T INCLUDE ANYTHING CELLULAR AND THE

17   PATENT ITSELF SUGGESTS THAT.  PERIOD.  THAT LINE MEANT A

18   PHYSICAL LINE.  THAT'S WHAT EVERYBODY UNDERSTOOD IT TO MEAN.

19   THAT'S WHAT IT MEANT.

20        MR. MC ANDREWS:  YEAH.

21        THE COURT:  SO IS THERE EVIDENCE IN THE -- IS THERE

22   LANGUAGE IN THE PATENT ITSELF THAT SUGGESTS THE OPPOSITE?

23        MR. MC ANDREWS:  I THINK SO.  I THINK THE EXAMPLE WE

24   OFFERED --

25        THE COURT:  SO YOU DON'T WANT TO RESPOND TO HER
```

1    NOTION THAT EVEN WITH THE COMPUTER, YOU HAD TO PHYSICALLY, IN

2    2001, PLUG A LINE IN.

3        I MEAN, THAT'S WHAT SHE SAYS.  SHE HAS TAKEN YOUR EXAMPLE

4    AND SAID, OKAY, IT'S THERE.  WE AGREE IT'S THERE.  BUT IN

5    ORDER FOR THAT TO WORK, YOU HAD TO PLUG IN A LINE.  NO ONE

6    ANTICIPATED OR EVEN THOUGHT THAT THAT WOULD MEAN CELLULAR.

7        **MR. MC ANDREWS:**  I DON'T AGREE WITH THAT.  THE

8    SPECIFICATION ITSELF SAYS, AS COUNSEL ACKNOWLEDGED, IT RECITES

9    A CELLULAR TELEPHONE IN THOSE TWO WORDS.  THE FACT THAT

10   COUNSEL THINKS THAT THAT APPEARS IN THE CONTEXT OF A CATCH-ALL

11   DOESN'T CHANGE THE FACT THAT MR. LYNAM AND HIS CO-INVENTORS

12   SPECIFICALLY CONTEMPLATED ITEM 24 IS NOT JUST A GENERAL

13   PURPOSE COMPUTER, THAT'S ONE EXEMPLARY EMBODIMENT OF THAT

14   ELEMENT OF THE INVENTION, BUT IT ALSO NECESSARILY INCLUDED A

15   CELLULAR TELEPHONE IN THOSE EXACT TERMS.

16       AND A CELLULAR TELEPHONE, TO TAKE IT A STEP FURTHER, IN

17   CONNECTION WITH SUBSCRIBER LINE 96.  TO COUNSEL'S POINT ABOUT

18   MR. FLOOD'S COMMENT THAT THERE'S NO TEACHING ON HOW THIS WOULD

19   BE IMPLEMENTED, THAT OVERLOOKS THE ISSUE.  RIGHT NOW WE ARE

20   TALKING ABOUT CLAIM CONSTRUCTION.  AND THE FEDERAL CIRCUIT LAW

21   AND DISTRICT COURT LAW IS VERY CLEAR ON THIS POINT.  ALL THAT

22   IS REQUIRED IS THE MINIMUM NECESSARY STRUCTURE TO PERFORM A

23   RECITED FUNCTION OR SERIES OF STEPS, IF YOU ARE TALKING ABOUT

24   A METHOD CLAIM.

25       I THINK THAT APPLIES HERE.  THE ISSUE IS, DID JOE LYNAM

1    AND HIS CONTEMPORARIES, CO-INVENTORS, HIS PATENT COUNSEL, AND

2    THOSE OF ORDINARY SKILL IN THE ART AT THE TIME, COULD THEY

3    HAVE IMPLEMENTED A SYSTEM LIKE THIS GIVEN THE TECHNOLOGY AT

4    THAT TIME?

5        ALL OF THESE VARIOUS DRAWINGS AND FIGURES THAT YOU SEE AND

6    ALL OF THE ACRONYMS THAT WE HEARD FROM MR. FLOOD AND WE HEARD

7    ABOUT IN COUNSEL'S ARGUMENT DON'T HAVE ANYTHING TO DO WITH THE

8    INVENTION OF ANY PARTICULAR CLAIM, YOUR HONOR, IF THOSE OF

9    SKILL IN THE ART COULD HAVE IMPLEMENTED THIS BACK AT THE TIME.

10       AND MR. FLOOD SAYS IT COULD NOT HAVE BEEN IMPLEMENTED.  HE

11   DOESN'T PROVIDE ANY, YOU KNOW, REASONED OR LENGTHY OR DETAILED

12   ANALYSIS IN TERMS OF WHY THAT IS HIS OPINION.  AND IN THAT

13   REGARD, HIS DECLARATION IS CONCLUSORY.

14       I THINK IF YOUR HONOR IS INCLINED TO READ THE EXPERT

15   REPORTS OR DECLARATIONS, I THINK YOU WILL SEE THAT IT MAY

16   AMOUNT TO MORE OF THE SAME, WHERE IT IS A BATTLE OF THE

17   EXPERTS.  IN THIS CASE, IT IS HE SAID AND SHE SAID.  MS. STERN

18   SAID.

19       BACK TO YOUR SPECIFIC QUESTION CONCERNING THE UNBILLABLE

20   DENY CODES WITH RESPECT TO MOBILE OR CELLULAR:  TO THIS DAY,

21   THERE ARE MOBILE CARRIERS FOR WHICH YOU WOULD GET WHAT WOULD

22   BE AKIN TO A DENY CODE.  REMEMBER, THE INVENTION IS DEFINED BY

23   THE CLAIM, NOT BY THE EXAMPLES IN THE SPECIFICATION.

24       THIS GOES BACK NOT JUST TO THE PHILLIPS CASE, AND THEN

25   CERTAINLY NOT TO THE SUBSEQUENT THORNER CASE THAT I TALKED

```
1   ABOUT.  I WASN'T DRAWING A DIRECT ANALOGY WHEN I SPOKE OF THE

2   THORNER CASE THAT I WAS INVOLVED IN.  I CERTAINLY WASN'T

3   SAYING THAT THE FACTS WERE ON ALL FOURS.  I WAS STATING THE

4   GENERAL PRINCIPLE THAT YOU CAN'T LIMIT CLAIMS BASED ON

5   PERCEIVED LIMITATIONS OF DISCLOSURE IN THE SPECIFICATION.

6        IN THIS CASE, WE ARE NOT JUST TALKING ABOUT THAT.  WE

7   ACTUALLY HAVE AFFIRMATIVE DISCLOSURE IN THE FORM OF WHAT

8   COUNSEL NOW ARGUES IS A CATCH-ALL PHRASE.  I THINK TO ANYONE

9   BACK IN THE 2001 TIME FRAME, HECK, IN THE 1995 TIME FRAME, I

10  HAD A CELLULAR PHONE.  IT WAS A LITTLE BIT HEAVIER THAN THE

11  ONE I HAVE NOW, BUT PEOPLE WERE FAMILIAR WITH IT.  AND

12  CERTAINLY THE ELECTRICAL ENGINEERS AND THE SYSTEM DESIGNERS,

13  THE PEOPLE WHO WOULD IMPLEMENT THIS TECHNOLOGY WERE FAMILIAR

14  WITH IT BACK THEN.

15       BACK TO THE POINT.  THERE ARE DENY CODES TODAY.  IF

16  VERIZON, FOR EXAMPLE, IS NOT PART OF THE NETWORK THROUGH WHICH

17  PAYMENTONE OR ANY OF THE OTHER COMPANIES THAT ALLOW THIS TYPE

18  OF BILLING WORK.  YOU HAVE TO BE SET UP IN THE SYSTEM.

19       EVERY CELLULAR CARRIER BY DEFAULT DOES NOT ALLOW

20  COMMERCIAL TRANSACTIONS OTHER THAN NORMAL SUBSCRIBER FEES,

21  LINE CHARGES, OR DATA CHARGES, AS WE NOW SEE ON OUR AT&T OR

22  VERIZON BILLS TO BE BILLED THROUGH THERE.  THERE HAS TO BE A

23  SPECIAL ARRANGE.  THAT'S PRESUMED.

24       AND IN THIS SPECIFIC EXAMPLE, THE SINGULAR EXAMPLE THAT

25  WAS OFFERED IN THE CONTEXT OF THE '049 PATENT, IT IS QUITE
```

1    POSSIBLE THAT THEY WERE SIMPLY REFERRING TO A CARRIER WHO WAS

2    NOT ON NETWORK, WHO WAS NOT WITH THE PAYMENTONE-TYPE PROGRAM,

3    IF YOU WILL.

4        I WASN'T GOING TO TAKE A CALL WHEN I WALKED UP.  I WAS

5    GOING TO USE THIS AS AN EXAMPLE.  BECAUSE I THINK LIKE MANY OF

6    US, I HAVE INTERNET CONNECTIVITY AND I ACTUALLY HAVE

7    APPLICATIONS THAT ALLOW ME TO CONNECT TO VERIZON.  I HAVE

8    VERIZON SERVICE AND I HAVE AN APPLICATION CALLED MY VERIZON.

9        I DON'T THINK ANYONE DISPUTES THAT TODAY IN THE HERE AND

10   NOW CELLULAR CARRIERS REFER TO THIS (INDICATING), THE NUMBER

11   ASSOCIATED WITH THIS ACCOUNT AS A LINE.  I CAN PULL IT UP AND

12   I CAN SHOW LAST NIGHT MARK SNYCERSKI SENT ME AN E-MAIL SAYING,

13   ARE WE REALLY DISPUTING THIS POINT?  AND THREE TIMES IN HIS

14   VERIZON BILL THAT HE PDF'D TO ME, IT SAYS LINE 1, LINE 2, THEY

15   REFER TO IT.

16       I KNOW WE ARE TALKING ABOUT BACK THEN.  THE POINT I AM

17   MAKING IS IF WE COMMONLY REFER TO YOUR CELLULAR NUMBER AS A

18   LINE OR AN ACCOUNT IN A BROADER SENSE AS A LINE, CERTAINLY

19   MR. LYNAM AND HIS CO-INVENTORS WERE ALLOWED TO DO THAT BACK IN

20   2001, LONG AFTER CELLULAR TECHNOLOGY HAD BECOME EMBEDDED IN

21   THE MARKETPLACE.

22       AND THAT IS PARTICULARLY SO WHERE THEY EXPRESSLY CALLED IT

23   OUT AS A CELLULAR TELEPHONE COMMUNICATING OR SUBSCRIBER LINE.

24   THAT HAS TO BE A WIRELESS COMMUNICATION.

25       I ALSO WANT TO CLARIFY.  I DIDN'T REFER TO THE '504 PATENT

1    EARLIER.  MS. LUTTON IS CORRECT, I DID PUT UP THE '500 PATENT

2    AND I THINK I SAID IT WAS THE '500 PATENT WHEN I PUT IT UP.

3        THE ONLY POINT THAT I WAS MAKING IS THAT DRAWING FROM THE

4    SAME DISCLOSURE IN THE SPECIFICATION, AND THAT'S COMMON

5    BETWEEN THE TWO PATENTS, THE '049 AND THE '500 WHERE YOU HAVE

6    THAT REFERENCE TO A CELLULAR TELEPHONE IN THE SPECIFICATION,

7    IT ALLOWS AND GIVES THE INVENTORS, THOSE OF SKILL IN THE ART,

8    THE LATITUDE TO CLAIM THINGS SUCH AS THAT CLAIMED IN THE '500.

9        I THINK THE '500 NICELY ILLUSTRATES THE DISTINCTION.  THAT

10   IS WHERE WE WERE TALKING ABOUT CLAIM DIFFERENTIATION.

11       WHEN I WAS BRINGING UP THE OTHER CLAIMS, CLAIM 17 AND I

12   THINK CLAIMS 21 AND 27 OF THE '049 PATENT, WHICH IS AT ISSUE

13   RIGHT NOW, I WAS NOT JUST TALKING ABOUT CLAIM DIFFERENTIATION.

14   I THOUGHT I MADE THAT CLEAR IN MY INTRODUCTORY REMARKS WITH

15   THE FEDERAL CIRCUIT SLIDE.

16       THE COURT CAN LOOK NOT JUST TO DEPENDENT CLAIMS THAT

17   DEPEND FROM OR HANG FROM DEPENDENT CLAIM 8, OR INDEPENDENT

18   CLAIM 8 OR INDEPENDENT CLAIM 1, YOU CAN ALSO LOOK AT THE

19   SURROUNDING CLAIMS.  THAT'S THE WHOLE IDEA.  IT GIVES -- IT

20   GIVES -- IT BREATHES LIFE INTO CLAIM TERMS THAT USE AND

21   BORROWS SIMILAR LANGUAGE.

22       MS. LUTTON ARGUED THERE WAS NO SIMILARITY OR RELATIONSHIP

23   BETWEEN THE CLAIMS.  I WOULD SAY THAT AT LEAST IN A RELATED

24   SENSE, THE CLAIMS OF THE '500 HAVE SIMILARITIES TO THE CLAIM

25   OF THE '049, BUT LET'S LIMIT IT JUST TO THE '049.

1    THERE ARE DEFINITELY SIMILARITIES BETWEEN THE CLAIMS, AND

2   MORE SPECIFICALLY WITH RESPECT TO THE DISPUTED TERMS

3   "COMMUNICATION LINE" AND "SUBSCRIBER LINE" WHEN THE VARIOUS

4   INDEPENDENT CLAIMS USE THAT IN THE CONTEXT OF THE SAME PATENT.

5    THAT'S WHY I BROUGHT UP THE EXAMPLES OF CLAIM 17 TALKING

6   ABOUT A TELEPHONE ACCOUNT ASSOCIATED WITH A SUBSCRIBER LINE.

7   AND THEN THE CLAIM WHERE THE TERM "NAKED", IF YOU WILL,

8   CLAIM 21 THAT TALKS ABOUT AN ACCOUNT ASSOCIATED WITH THE

9   SUBSCRIBER LINE.  THEN IT BOUNCES BACK IN DEPENDENT CLAIM 27

10   WHERE WE TALK AGAIN ABOUT A TELEPHONE ACCOUNT.

11    THOSE ARE WORDS OF CONSEQUENCE.  AND I THINK IT GOES TO

12   THE HEART OF CLAIM CONSTRUCTION LAW AND THE EXERCISE THAT WE

13   ARE ALL HERE TAKING PART OF.

14    **THE COURT:**  I AM GOING TO STOP YOU UNLESS YOU WANT TO

15   SAY ONE SENTENCE AFTER THE BOTTOM LINE.

16    **MR. MC ANDREWS:**  ONE SENTENCE AFTER THE BOTTOM LINE.

17   THERE IS NO PLACE FOR THE LIMITATIONS THAT PAYPAL ASKS YOUR

18   HONOR TO IMPOSE AND GRAFT INTO THE COURT.  AND THANK YOU.

19    **THE COURT:**  ALL RIGHT.

20    **MR. MC ANDREWS:**  I GUESS THAT'S TWO SENTENCES.

21    **THE COURT:**  ALL RIGHT.  SO WE ARE GOING TO TAKE A

22   BREAK.  YOU HAVE ABOUT AN HOUR AND 20 MINUTES LEFT.  SO, YOU

23   HAVE GOTTEN THROUGH TWO TERMS.

24    **MS. LUTTON:**  THE REST OF THEM WILL GO MUCH MORE

25   SMOOTHLY, YOUR HONOR.

1          **MR. MC ANDREWS:**  THEY WILL GO MORE QUICKLY, YOUR

2     HONOR.

3          **THE COURT:**  CERTAINLY MORE QUICKLY.

4      SO, FRANKLY, IT'S ALL RIGHT.  THIS IS, IN MY VIEW, KIND OF

5     THE CRITICAL ISSUE.  AND I AM SURE THAT THESE OTHER ONES ARE

6     IMPORTANT, TOO, BUT THIS IS PRETTY FUNDAMENTAL TO THE DISPUTE

7     BETWEEN ALL OF YOU.

8      I WOULD SUGGEST THAT YOU MEET AND CONFER, AND COME UP WITH

9     A GENERAL TIME IN TERMS OF HOW MUCH TIME YOU WANT TO GIVE TO

10    EACH TERM.  AND LET ME HAVE THAT, PUT IT IN WRITING, SO THAT I

11    CAN KEEP YOU ON TRACK PER YOUR WISH.  OTHERWISE, YOU ARE GOING

12    TO GET TO THE END OF YOUR TIME AND STILL HAVE MANY MORE TERMS

13    THAT YOU WILL NOT BE ALLOWED TO THEN DISCUSS.

14     IF I HAVE QUESTIONS AND I EXTEND IT, I WON'T COUNT THAT

15    AGAINST YOU.  ALL RIGHT?  BUT IF I DON'T DO THIS, THEN YOU

16    GUYS WILL BE HERE ALL DAY AND I CAN'T AFFORD TO HAVE YOU HERE

17    ALL DAY.

18     WE WILL TAKE A RECESS FOR 15 MINUTES.

19     (RECESS TAKEN AT 12:01 P.M. AND RESUMED AT 12:17 P.M.)

20          **THE COURT:**  WE ARE BACK ON THE RECORD.  DO I HAVE A

21    SCHEDULE?

22          **MR. MC ANDREWS:**  MAY I APPROACH?

23     IT IS NOT VERY ELEGANT, BUT I THINK IT DOES THE JOB, YOUR

24    HONOR.

25          **THE COURT:**  OKAY.  THAT IT DOES.

1          **MR. MC ANDREWS:**  ARE YOU READY, YOUR HONOR?

2          **THE COURT:**  I AM READY.

3          **MR. MC ANDREWS:**  THANK YOU.

4      THE NEXT DISPUTED TERM, LITTLE BIT LENGTHIER, BUT I THINK

5  THAT'S LEGIBLE ON THE SCREEN.

6      THIS APPEARS IN THE '049 PATENT.  THERE ARE ACTUALLY TWO

7  TERMS THAT WERE SO SIMILAR THE PARTIES STIPULATED THAT WE

8  WOULD CONSTRUE THEM TOGETHER.

9      "WHEREIN PAYMENT IS ROUTED TO FINANCIAL CARD GATEWAY IF A

10  VALIDATION MODULE INVALIDATES THE TRANSACTION."  AND THEN THE

11  VERY SIMILAR TERM IS "SELECTIVELY ROUTE PROCESSING OF THE

12  TRANSACTION TO A FINANCIAL INSTRUMENT GATEWAY IN THE EVENT OF

13  A VALIDATION PROCESS NOT VALIDATING THE SUBSCRIBER LINE."

14      WHAT ARE THE PARTIES' RESPECTIVE CONSTRUCTIONS HERE?

15  PAYMENTONE'S IS "WHEREIN PAYMENT IS DIRECTED TO FINANCIAL CARD

16  GATEWAY IF THE VALIDATION MODULE NULLIFIES THE TRANSACTION."

17      THE LANGUAGE IS NOT VERBATIM.  WE THINK IT IS VERY SIMILAR

18  AND TRUE TO THE ORIGINAL LANGUAGE OF THE CLAIM.  FOR THE

19  SECOND PART OF IT, THE OTHER TERM THAT IS VERY SIMILAR, OUR

20  PROPOSED CONSTRUCTION IS "SELECTIVELY DIRECTING PROCESSING OF

21  THE TRANSACTION TO A FINANCIAL INSTRUMENT GATEWAY IN THE EVENT

22  OF A VALIDATION PROCESS NULLIFYING THE SUBSCRIBE LINE."

23      WE THINK THE -- WE THINK THE TERM "SELECTIVELY" IS

24  IMPORTANT.  WE HAVE INCORPORATED THAT INTO OUR PROPOSED

25  CONSTRUCTION BECAUSE IT APPEARS IN THE CLAIM LANGUAGE ITSELF.

1         TURNING TO PAYPAL'S PROPOSED CONSTRUCTION FOR THESE TERMS,

2    "WHEREIN PAYMENT IS ROUTED TO A FINANCIAL CARD GATEWAY," AND

3    HERE'S REALLY THE OPERATIVE TERM AND THE CRUX OF THE PARTIES'

4    DISPUTE ON THESE ELEMENTS, JUDGE, "TO A FINANCIAL CARD GATEWAY

5    AUTOMATICALLY WHEN A VALIDATION MODULE DETERMINES THAT THE

6    TRANSACTION CANNOT BE CHARGED TO THE TELEPHONE BILL."

7         AND SO, TOO, WE SEE IN THE RELATED TERM THE PROPOSED

8    CONSTRUCTION FROM PAYPAL INCLUDES THAT "AUTOMATICALLY"

9    LIMITATION, QUOTE "WHEN A VALIDATION PROCESS DETERMINES THAT

10   THE TRANSACTION CANNOT BE CHARGED TO THE TELEPHONE BILL OF THE

11   SUBSCRIBER AUTOMATICALLY ROUTE PROCESSING OF THE TRANSACTION

12   TO A FINANCIAL INSTRUMENT GATEWAY."

13        IN THIS CASE, I THINK THE ARGUMENT IS SIMPLE.  I ALREADY

14   SAID IT.  THERE IS NO SUPPORT IN THE LANGUAGE OF THE CLAIM --

15   OR THE CLAIMS IN THIS CASE OR THE SPECIFICATION TO SUPPORT A

16   CONSTRUCTION THAT REQUIRES THAT THIS FUNCTIONALITY, THIS CLAIM

17   FUNCTIONALITY OCCUR AUTOMATICALLY.

18        ELSEWHERE IN THE PATENT, IN THE SPECIFICATION, AND MORE

19   IMPORTANTLY ALSO IN THE CLAIMS, WHEN THERE ARE AUTOMATED

20   PROCESSES THEY ARE EXPLICITLY OR EXPRESSLY RECITED AS BEING

21   SUCH.  IN THIS CASE THEY ARE NOT.

22        NOW, TO STREAMLINE THE PROCESS AND CONDENSE OUR ARGUMENTS,

23   I WANT TO PUBLISH -- THIS IS ACTUALLY A PORTION OF OUR BRIEF,

24   BUT IT QUOTES THE RELEVANT EXCERPT OUT OF THE FILE HISTORY OF

25   THE '049 PATENT THAT PAYPAL RELIES ON IN ARGUING THAT THERE

1    HAS BEEN A LIMITING OR A CONSTRICTION OF THE SCOPE OF CLAIM BY

2    VIRTUE OF WHAT TOOK PLACE DURING PROSECUTION OF THE '049

3    PATENT WITH THE EXAMINER.

4        ONE OF THE THINGS THAT THE NOTICE OF ALLOWANCE, WHICH IS

5    THE FINAL DOCUMENT WHERE THE PATENT OFFICE GRANTS THE PATENT,

6    AND THE EXAMINER -- THE EXAMINER FREQUENTLY OFFERS REASONS FOR

7    ALLOWANCE OR FINAL OBJECTIONS OR IN SOME CASES AMENDMENTS, THE

8    EXAMINER NOTED THAT THE PRIOR ART STOPS THE PROCESS AND

9    NOTIFIES THE USER OF THE FAILURE TO VALIDATE INSTEAD OF

10   AUTOMATICALLY GOING TO ANOTHER FORM OF PAYMENT.

11       NOW, THE ARGUMENT BY INFERENCE THAT PAYPAL IS MAKING HERE

12   IS THAT BECAUSE THE EXAMINER POINTED OUT THAT THE PRIOR ART

13   STOPS THE PROCESS UPON A FAILURE TO VALIDATE INSTEAD OF

14   AUTOMATICALLY GOING ON TO ANOTHER FORUM, THAT THAT MEANS THAT

15   NECESSARILY WHAT WE WERE CLAIMING FOR ALLOWANCE OF THE CLAIMS

16   WAS A SYSTEM THAT AUTOMATICALLY ALLOWS THAT.

17       THAT'S NOT THE CASE AT ALL.  IF YOU READ THE EXCERPTS OF

18   THE NOTICE OF ALLOWANCE IN THE FILE HISTORY, IT'S VERY CLEAR

19   THAT THE PRIOR ART SYSTEMS THAT THE EXAMINER WAS SPEAKING OF

20   STOPPED THE PROCESSING OF THE TRANSACTION AND DISCONNECTED THE

21   LINE.

22       AND I CAN ACTUALLY PULL UP THE MORE RELEVANT EXCERPT.  SO

23   THE EXAMINER SAYS:

24           "CHEN DOES NOT DESCRIBE OR EVEN SUGGEST A SYSTEM

25           WHICH ROUTES PROCESSING OF THE TRANSACTION TO A

1          FINANCIAL CARD GATEWAY IN THE EVENT THE SUBSCRIBER

2          LINE IS NOT VALIDATED."

3     HERE'S THE RELEVANT THINGS.  WE HAVE IT IN BOLD.  THAT IS

4  OUR EMPHASIS ADDED.

5     "CHEN DISPLAYS AN ERROR AND EXITS WHEN THE RETRIEVAL CODE

6  AND THE CUSTOMER IDENTIFICATION NUMBER ARE INVALID."

7     FOR THAT REASON ALONE, THERE IS A DISTINCTION BETWEEN THE

8  CLAIM SYSTEM OR THE CLAIM AT ISSUE AND BEFORE THE EXAMINER AND

9  THE PRIOR ART.  CHEN DISPLAYS AN ERROR MESSAGE, IT EXITS, AND

10  IT DISCONNECTS -- THE SYSTEM OF THE CHEN PATENT, THAT IS.

11     THE EXAMINER GOES ON.

12          "IN CHEN, IF THE RECEIVED RETRIEVAL CODE OR CUSTOMER

13          IDENTIFICATION NUMBER IS INVALID, AN ERROR MESSAGE IS

14          TRANSMITTED TO THE CUSTOMER TERMINAL 50 DURING STEP

15          714.  THE SUPPLIER TERMINAL 15 WILL CREATE A RECORD

16          OF THE INVALID TRANSACTION DURING STEP 716 THAT

17          INCLUDES BILLING VERIFICATION INFORMATION AND AN

18          INDICATION OF THE ERROR DISPOSITION."

19     OUR EMPHASIS HERE.  "THE CALL WILL THEN BE DISCONNECTED

20  DURING STEP 718 AND THE SUPPLIER TERMINAL WILL EXIT FROM THE

21  PROCESS."  AND FINALLY, "THE ONLY METHOD OF PAYMENT

22  CONTEMPLATED IN CHEN IS A TELEPHONE ACCOUNT."  THESE ARE ALL

23  COMMENTS BY THE EXAMINER.

24     THESE DISTINCTIONS ALONE, AND THAT IS THAT THE SYSTEMS OF

25  THE TWO CLAIMS IN WHICH THESE TERMS -- THESE RELATED TERMS

```
 1    APPEAR, CLAIMS 8 AND 22, ARE ENOUGH TO OVERCOME PAYPAL'S

 2    PROPOSED CONSTRUCTION HERE.

 3       THE DISTINCTION IS NOT -- WAS NOT ONE DRAWN DURING

 4    PROSECUTION BETWEEN AN AUTOMATED SYSTEM AND A SYSTEM THAT

 5    WASN'T AUTOMATED.  THE PRIOR ART, RATHER, STOPPED, OFFERED A

 6    WARNING OR AN ERROR CODE TO THE USER AND DISCONNECTED.

 7           THE COURT:  ALL RIGHT.

 8           MR. MC ANDREWS:  SO I THINK WE ARE PROBABLY OUT OF

 9    THE ALLOTTED TIME ON THIS UNLESS YOUR HONOR HAS QUESTIONS.

10           THE COURT:  YOU ARE BEYOND YOUR ALLOTTED TIME.

11           MR. MC ANDREWS:  OKAY.

12           THE COURT:  LET ME TELL YOU, THERE'S NO NEED TO READ

13    ME THE PROPOSED CONSTRUCTIONS.  I AM LOOKING AT THEM.  I

14    WOULDN'T WASTE TIME DOING THAT.

15           MR. MC ANDREWS:  OKAY.

16           THE COURT:  ALL RIGHT.  SO WHY, AND LET'S GET TO THE

17    HEART OF IT, WHY SHOULD I INCLUDE "AUTOMATIC" IN THIS

18    CONSTRUCTION?

19           MS. LUTTON:  BECAUSE THAT'S HOW THE COMPUTER SYSTEMS

20    WORK.  IF YOU ACTUALLY LOOK AT THE LANGUAGE OF THE CLAIMS, I

21    HAVE UP HERE ON SLIDE 54, CLAIM 8.

22           THE CLERK:  I HAVE TO SWITCH.  SORRY.

23           MS. LUTTON:  I HAVE IT.  YOU DON'T HAVE IT.

24       SORRY ABOUT THAT.

25       I WILL JUST GO BACK AT A HIGH LEVEL.  RECALL THE '049
```

1   PATENT AGAIN.  THIS IS ABOUT A VALIDATION PROCESS.  AND THE

2   CLAIMS AT ISSUE REQUIRE THAT IF THE PHONE LINE IS VALIDATED,

3   IF IT IS NOT CELLULAR, NOT DORM ROOM, IF IT IS VALIDATED, THEN

4   THE CHARGE WILL APPEAR ON THE PHONE BILL.  IF IT IS NOT

5   VALIDATED, THEN THE CHARGE IS SET TO A CREDIT CARD COMPANY.

6       AND SO THAT HAPPENS AUTOMATICALLY BECAUSE THIS CLAIM SAYS

7   IF SOMETHING HAPPENS, THEN SOMETHING ELSE HAPPENS.

8       AND ACTUALLY, YOUR HONOR, THERE'S A CASE AMERICAN CALCAR

9   THAT IS DIRECTLY ON POINT WHERE THE FEDERAL CIRCUIT ADDRESSED

10  FACTS DIRECTLY RELEVANT TO THIS CASE.

11      IS IT UP?

12          **THE COURT:**  I HAVE 54.

13          **MS. LUTTON:**  GREAT.

14      SO JUST BACK TO THE CLAIM LANGUAGE ITSELF, IT TALKS ABOUT

15  THE PAYMENT BEING ROUTED TO A FINANCIAL CARD GATEWAY.  WE ARE

16  TALKING ABOUT CREDIT CARDS HERE.  IF THE VALIDATION MODULE

17  INVALIDATES THE TRANSACTION.

18      SO, IT'S SOFTWARE, IT'S A DECISION TREE.  YOU HAVE

19  VALIDATION, YOU CHARGE THE PHONE BILL.  IF NOT, YOU SEND IT

20  ELSEWHERE.  THAT'S SOMETHING THAT IS NOT OPTIONAL.  SO

21  AUTOMATIC IS MEANT TO PREVENT THE PLAINTIFFS FROM CONVEYING TO

22  THE JURY THAT THAT'S AN OPTIONAL STEP OR THAT IT IS A STEP

23  THAT NEEDS SOME ADDITIONAL CRITERIA TO HAPPEN.

24      AND THAT EXACT ISSUE WAS ADDRESSED IN THE AMERICAN CALCAR

25  CASE.  IT'S SLIDE 58.  IN THAT CASE, THE ASSERTED CLAIM

```
1    REQUIRED IDENTIFYING ONE OF THE PLURALITY OF PROVIDERS IN
2    RESPONSE TO THE VEHICLE CONDITION.  AND THE DEFENDANT IN THAT
3    CASE HAD THE VERY CONCERN THAT PAYPAL HAS IN THIS CASE, WHICH
4    IS YOU WOULD THINK THAT IN RESPONSE TO WOULD BE ENOUGH EXCEPT
5    THE PLAINTIFF IN THAT CASE WANTED TO ACTUALLY IMPOSE
6    ADDITIONAL CONDITIONS.  SO IT WOULDN'T HAPPEN IN RESPONSE TO
7    THE VEHICLE CONDITION, IT WOULD HAPPEN IN RESPONSE TO SOME
8    OTHER USER INPUTS AND OTHER INTERVENING ACTS.
9         AND THE FEDERAL CIRCUIT MADE IT VERY CLEAR THAT THAT WAS
10   NOT PERMITTED.  THE FEDERAL CIRCUIT HELD THAT IN RESPONSE TO
11   CONNOTES THAT THE SECOND EVENT OCCUR IN REACTION TO THE FIRST
12   EVENT.
13        THAT'S EXACTLY THE CASE HERE.  THE ROUTING TO THE CREDIT
14   CARD COMPANY HAPPENS WHEN THE TRANSACTION IS NOT VALIDATED.
15   AND THEN THE FEDERAL CIRCUIT WENT ON TO SAY, "THE CLAIMS TERMS
16   'IN RESPONSIBLE TO' AND 'WHEN' CREATE A CAUSE-AND-EFFECT
17   RELATIONSHIP."  AND THE FEDERAL CIRCUIT HELD THAT THAT MEANS
18   THERE CAN BE NO INTERVENING ACT, THAT ACTUALLY IS AN AUTOMATIC
19   RESPONSE.
20        AND SO THAT IS THE EXACT CASE WE HAVE BEFORE US TODAY
21   WHERE THE CLAIM TERM ITSELF, THE CLAIM LANGUAGE DICTATES THAT
22   IF THE -- IF THE -- I WILL GO BACK TO THE ACTUAL CLAIM ITSELF,
23   TALKS ABOUT ROUTING THE TRANSACTION TO A FINANCIAL INSTRUMENT
24   GATEWAY IN THE EVENT OF A VALIDATION PROCESS NOT VALIDATING
25   THE SUBSCRIBER LINE.  SO IT'S A CAUSAL RELATIONSHIP THAT IS
```

```
1    BEING RECITED THERE.

2        AND THE EXAMINER HIMSELF RECOGNIZED THIS IN THE NOTICE OF

3    ALLOWANCE.  COUNSEL FOR PAYMENTONE ACTUALLY WAS CITING TO THE

4    PROSECUTION HISTORY THAT OCCURRED BEFORE THE RELEVANT EVENTS.

5    HE WAS CITING TO THE DECEMBER 2004 FILE HISTORY SUBSEQUENT TO

6    THAT BACK AND FORTH BETWEEN THE APPLICANT AND THE PATENT

7    OFFICE.

8        THE PATENT OFFICE HAD AN INTERVIEW WITH THE APPLICANT AND

9    THEN THE PATENT OFFICE ITSELF IN THE NOTICE OF ALLOWANCE --

10   AND HERE I AM ON SLIDE 60 -- THE PATENT OFFICE ITSELF AMENDED

11   THE CLAIMS TO INCLUDE THE VERY LIMITATIONS WE ARE TALKING

12   ABOUT.  SO THOSE WERE ADDED IN ORDER FOR THE PATENT TO BE

13   ALLOWED.

14       AND THEN THE NOTICE OF ALLOWANCE SPECIFICALLY SAID:

15           "THE SPECIFIC ALLOWABLE FEATURE, WHICH DISTINGUISHES

16           THE PRESENT INVENTION OVER THE PRIOR ART IS THAT

17           DURING THE PROCESS OF AUTHORIZING A PAYMENT UTILIZING

18           THE TELEPHONE ACCOUNT," SO, AGAIN, THE EXAMINER KNEW

19           IT WAS A TELEPHONE ACCOUNT, "IF THE SUBSCRIBER LINE

20           CANNOT BE VALIDATED OR VERIFIED," WHICH IS WHAT I

21           MENTIONED, "THE SYSTEM WOULD SELECTIVELY ROUTE

22           PROCESSING OF THE TRANSACTION TO THE FINANCIAL CARD

23           GATEWAY.  THE PRIOR ART STOPS THE PROCESS AND

24           NOTIFIES THE USER OF THE FAILURE TO INVALIDATE --

25           FAILURE TO VALIDATE INSTEAD OF AUTOMATICALLY GOING TO
```

1        ANOTHER FORM OF PAYMENT."

2     SO THE EXAMINER HIMSELF INCLUDED THESE ADDITIONAL

3   LIMITATIONS AND SAID THIS IS WHY THESE ADDITIONAL LIMITATIONS

4   MAKE THIS PATENT ALLOWABLE.

5        **THE COURT:**  OKAY.  I WILL TAKE A BRIEF RESPONSE ONLY

6   WITH RESPECT TO SLIDE 60, AND THAT WON'T COUNT AGAINST YOU.

7        **MR. MC ANDREWS:**  I AM SORRY, IS THIS SLIDE 60?

8        **MS. LUTTON:**  I CAN PUT SLIDE 60 UP.

9            (PAUSE IN THE PROCEEDINGS.)

10    YES, THAT IS 60.

11       **MR. MC ANDREWS:**  OH.  UM.  I ADDRESSED THE ISSUE

12  EARLIER, BUT PUT MORE DIRECTLY HERE, HAD THE SOLE DISTINCTION

13  AND THE REASON FOR ALLOWANCE OVER THE PRIOR ART BEFORE THE

14  EXAMINER BEEN THAT OUR CLAIM SYSTEM, THAT IS THE PAYMENTONE

15  SYSTEM AUTOMATICALLY GOES ON, THE EXAMINER CLEARLY WOULD HAVE

16  GOTTEN INTO A SPECIFIC DISCUSSION OF THAT.

17     THE EXCERPTS I TALKED ABOUT EARLIER DISCUSSED MANY OF THE

18  OTHER DISTINCTIONS BETWEEN THE PRIOR ART AND OUR SYSTEM.  THIS

19  STATEMENT HERE DOES NOT RISE NEARLY TO THE LEVEL OF CLARITY

20  THAT IS REQUIRED TO IMPOSE AN EXTRANEOUS LIMITATION LIKE

21  AUTOMATICALLY IN A CLAIM WHERE IT DOESN'T APPEAR BASED ON

22  SOMETHING IN THE PROSECUTION HISTORY.

23       **THE COURT:**  OKAY.

24       **MR. MC ANDREWS:**  I KNOW THERE'S A GREAT BODY OF CASE

25  LAW ON THAT.  IT HAS TO BE VERY, VERY SPECIFIC.

1      DOES THAT ANSWER YOUR HONOR'S QUESTION?

2          **THE COURT:**  THAT DOES.

3      OKAY.  NEXT.

4          **MR. MC ANDREWS:**  THE NEXT TERM IS "FINANCIAL CARD

5      GATEWAY" AND A RELATED TERM "FINANCIAL INSTRUMENT GATEWAY,

6      YOUR HONOR.  I WILL PULL THE TERM UP FOR REFERENCE.  I WILL

7      NOT READ IT.  THE PROPOSED CONSTRUCTIONS ARE NOT -- THEY ARE

8      NOT VERY LENGTHY IN ANY EVENT.

9      THE DIFFICULTY THAT WE HAVE, THE OBJECTION THAT WE HAVE TO

10     PAYPAL'S PROFFERED CONSTRUCTION IS THAT IT AGAIN IMPOSES A

11     LIMITATION INTO THE CLAIM.  IT GRAFTS THE REQUIREMENT THAT THE

12     ENTRY POINT PROCESS A TRANSACTION INVOLVING A USER, A

13     PURCHASER'S CREDIT OR DEBIT CARD, AND THEN AS TO THE SECOND

14     PART OF IT, IT PROCESSES TRANSACTIONS INVOLVING A USER,

15     PURCHASER'S CREDIT CARD OR DEBIT CARD, OR OTHER FINANCIAL

16     INSTRUMENT.  IN OTHER WORDS, IT IS MAKING IT SPECIFIC JUST TO

17     THAT USER, THAT USER OR THE PURCHASER'S CREDIT CARD.

18     THE SYSTEM, AS CLAIMED, AND EVEN SOME OF THE EMBODIMENTS

19     DISCLOSED ARE MUCH BROADER THAN THAT.  THEY ARE TRYING TO

20     PIGEONHOLE THIS WHERE THE ONLY POSSIBLE INTERPRETATION OR THE

21     ONLY INFRINGEMENT CASE, WHEN WE GET TO THAT POINT IN THE

22     PROCEEDINGS, IS IF THE SYSTEM DIRECTLY ROUTES INTO THE

23     PURCHASER'S OR THE USER'S SPECIFIC CREDIT OR DEBIT CARD

24     SYSTEM.  THE CLAIM LANGUAGE DOESN'T ALLOW FOR THAT.

25     AGAIN, I AM REPEATING THE SAME ARGUMENT.  I TALKED ABOUT

1    THIS RE-OCCURRING THEME EARLIER THIS MORNING THAT WE ARE

2    SEEING LIMITATIONS GRAFTED IN THAT FIND NO SUPPORT IN THE

3    CLAIM LANGUAGE THEMSELVES, NOT IN THE SPECIFICATION, NOR IN

4    THE FILE HISTORY.

5         IN THIS CASE, IF THE INVENTORS INTENDED TO HAVE A

6    TRANSACTION ROUTED SPECIFICALLY TO ONE OF THESE DEFINED

7    GATEWAYS, THEY WOULD HAVE SAID SO.  THEY WOULD HAVE USED

8    SPECIFIC LANGUAGE AS THEY HAVE DONE ELSEWHERE IN THE PATENT

9    AND THE SPECIFICATION.

10        IT'S TOO NARROW OF AN INTERPRETATION.  IT IS

11   UNDERSTANDABLE GIVEN THE PARTIES' COMPETING POSITIONS ON THE

12   POINT, BUT IT OUGHT NOT BE READ INTO THE CLAIM TERM, YOUR

13   HONOR.

14             **THE COURT:**  MS. LUTTON?

15             **MS. LUTTON:**  YOUR HONOR, THE APPLICANT'S DID USE

16   SPECIFIC LANGUAGE.  THEY USED THE TERM "FINANCIAL CARD

17   GATEWAY" WHICH IS A TERM OF ART.  THAT TERM OF ART, WE ARE NOT

18   SUGGESTING MEANS ANY PARTICULAR FINANCIAL CARD.

19        FOR EXAMPLE, I AM ON SLIDE -- CAN WE MOVE TO OURS?

20        WE CITE IN OUR BRIEFS A -- THE MASTERCARD PAYMENT GATEWAY

21   DEFINITION WHICH IS JUST ONE OF A NUMBER OF DEFINITIONS FOR

22   WHAT IT MEANS TO BE A FINANCIAL CARD GATEWAY.  THAT DEFINITION

23   IS A GATEWAY HOSTED BY MASTERCARD --

24             **THE COURT:**  WHAT SLIDE NUMBER IS THIS?

25             **MS. LUTTON:**  SLIDE 70.

1          **THE COURT:**  THANK YOU.

2          **MS. LUTTON:**  IT IS "A GATEWAY HOSTED BY MASTERCARD

3     AND USED FOR ROUTING AND SETTLING THE COMMERCIAL E-PAYMENTS

4     BETWEEN BUYERS AND SUPPLIERS."

5          WE ARE NOT SUGGESTING THAT THE APPLICANTS LIMITED

6     THEMSELVES TO A MASTERCARD FINANCIAL GATEWAY, BUT THEY DID

7     LIMIT THEMSELVES TO A FINANCIAL GATEWAY RELATED TO SOME

8     PAYMENT SYSTEM.  THEY USED A PARTICULAR TERM IN THE ART.

9          AND IF YOU ACTUALLY LOOK AT THE PATENT ITSELF, THERE ARE

10    VERY FEW REFERENCES TO THIS TERM.  THERE IS AT COLUMN 4,

11    LINES 57 TO 58, A REFERENCE TO CREDIT CARD GATEWAY THAT NOTES

12    "THE CREDIT CARD GATEWAY 42 MAY THEN EITHER ACCEPT OR REJECT A

13    TRANSACTION."  AGAIN, SUPPORTING THE SAME CONSTRUCTION THAT

14    MASTERCARD PROVIDES.

15         AND AT COLUMN 6, LINES 39 THROUGH 41, THE PATENT SAYS,

16    "THE RECORD IS COMMUNICATED TO A CREDIT CARD GATEWAY FOR

17    PROCESSING IN A CONVENTIONAL FASHION."

18         SO THIS IS A CASE WHERE THE APPLICANT USED A SPECIFIC TERM

19    IN THE ART "FINANCIAL CARD GATEWAY", AND JUST TO BRING IT UP A

20    LEVEL AGAIN, WE ARE IN THE '049 PATENT.  IF THE PHONE LINE IS

21    VALIDATED, THEN THE CHARGE IS PUT ON THE BILL.  IF THE PHONE

22    LINE IS -- PHONE BILL.  IF THE PHONE LINE IS NOT VALIDATED,

23    THEN THE CHARGE IS SENT TO A FINANCIAL CARD GATEWAY.

24         THAT DOESN'T MEAN ANY ACCESS POINT THAT CAN EVENTUALLY

25    LEAD TO A CREDIT CARD COMPANY.  IT MEANS AN ENTRY POINT INTO

1    THE CREDIT CARD COMPANY SO THE CHARGE CAN BE BILLED TO THE

2    CREDIT CARD.

3        SO THE CONCERN WITH PAYMENTONE'S CONSTRUCTION IS IT IS

4    OVERLY BROAD.  IT CAN BE ANY ACCESS POINT THAT STEPS DOWN THE

5    ROAD AFTER MANY INTERVENING ACTS COULD RESULT IN PAYMENT,

6    WHICH IS NOT AT ALL WHAT THE PATENT WAS ENVISIONING.

7            **THE COURT:**  OKAY.

8        WITH RESPECT TO THE NEXT -- HOLD ON -- TO THE NEXT TERM, I

9    UNDERSTAND THAT YOU DON'T BELIEVE CONSTRUCTION IS REQUIRED.

10            **MR. MC ANDREWS:**  YES, THAT'S RIGHT.

11           **THE COURT:**  SO I AM GOING TO HAVE THE OTHER SIDE

12   START.  THAT WAY YOU CAN RESPOND.

13       MS. BROOKS.

14           **MS. BROOKS:**  THANK YOU.  IF WE COULD GO BACK TO OUR

15   SLIDES THEN.

16       SO YOUR HONOR, WE ARE NOW TURNING TO BOTH THE '500 AND THE

17   '504 PATENTS.  AND JUST TO REORIENT THE COURT, THESE PATENTS

18   WERE FILED RESPECTIVELY IN AUGUST OF 2007 AND IN APRIL OF

19   2006.  WHILE THEY ARE BOTH REFERRED TO AS METHOD AND APPARATUS

20   TO VALIDATE A SUBSCRIBER LINE, THEY ACTUALLY CLAIM TWO

21   DIFFERENT THINGS.

22       THE '500 PATENT IS TALKING ABOUT ESSENTIALLY HOW THINGS

23   ARE BUILT.  THERE IS AN INTERNET TRANSACTION BETWEEN A USER

24   AND AN INTERNET VENDOR.  THAT TRANSACTION, THE FIRST ONE,

25   ACCORDING TO THE CLAIM, IS CHARGED TO A TELEPHONE.

1    THEN THERE IS A SECOND INTERNET TRANSACTION THAT TAKES

2    PLACE, AND IN THAT CASE, THAT TRANSACTION, THE CHARGE TO THE

3    TELEPHONE IS DECLINED.  AS A RESULT OF THAT, WHAT THE CLAIM

4    THEN SAYS --

5            **THE COURT:**  HOLD ON.  SLOW DOWN.

6            **MS. BROOKS:**  YES, YOUR HONOR.

7            **THE COURT:**  WHAT PAGE NUMBER IS THIS?

8            **MS. BROOKS:**  I'M SORRY, YOUR HONOR, I AM ON SLIDE 75.

9            **THE COURT:**  OKAY.  GO AHEAD.

10           **MS. BROOKS:**  SO THIS IS ESSENTIALLY A GRAPHIC

11   PORTRAYING WHAT THE CLAIMS TALK ABOUT.

12       SO WE HAVE THE FIRST INTERNET TRANSACTION GOING THROUGH

13   BETWEEN THE USER AND THE VENDOR OVER THE INTERNET.  IT IS

14   CHARGED TO A TELEPHONE.

15       THEN A SECOND INTERNET TRANSACTION TAKES PLACE, AND

16   ACCORDING TO THE CLAIM, THAT TRANSACTION, THE CHARGE TO THE

17   TELEPHONE IS DECLINED.  WHAT THEN HAPPENS, ACCORDING TO THE

18   CLAIM, IS THAT THE SYSTEM PRESENTS AN ALTERNATIVE OPTION TO

19   PAY, BE IT, FOR EXAMPLE, A CREDIT CARD, A DEBIT CARD, ET

20   CETERA.  SO THAT'S THE CLAIM ESSENTIALLY THE '500 PATENT.

21       THE '504 PATENT, WHICH WAS FILED IN 2006, AGAIN, IT'S

22   CALLED A METHOD, AN APPARATUS TO VALIDATE A SUBSCRIBER LINE.

23   I AM NOW ON SLIDE 77.  BUT IT IS ACTUALLY, THE CLAIMS ACTUALLY

24   COVER SOMETHING DIFFERENT, WHICH THEN THE '500 CLAIMS, WHICH

25   IS IT'S DIRECTED TO, FIRST OF ALL, OBTAINING PHONE NUMBER

1   DATA.  THAT IS EITHER PROVIDED BY THE USER OR IS AUTOMATICALLY

2   DETECTED BY THE SYSTEM.

3       AND SEPARATE FROM THAT IS USER IDENTIFICATION DATA, WHICH

4   IS DIFFERENT THAN THE PHONE NUMBER DATA.  FOR EXAMPLE, IF YOU

5   ENTERED -- USED YOUR DEBIT CARD, FOR EXAMPLE, AT A GAS

6   STATION, YOU MIGHT BE ASKED FOR YOUR ZIP CODE.  THAT IS THE

7   TYPE OF ADDITIONAL USER IDENTIFICATION DATA THAT THE CLAIM IS

8   TALKING ABOUT.

9       THEN WHAT THE CLAIMS GO ON TO TALK ABOUT IS USING THE

10  PHONE NUMBER DATA AND THE USER IDENTIFICATION DATA TO OBTAIN

11  SUBSCRIBER DATA FROM A FIRST DATABASE AND SECOND DATABASE.

12  THAT'S WHAT IS LABELED NUMBER 3 AND 4 ON THIS SLIDE.

13      THEN WHAT THE CLAIM TALKS ABOUT IS COMPARING THOSE TWO.

14  IF THEY MATCH UP, THEN YOU HAVE GOT VALIDATION OF THE

15  PARTICULAR NUMBER.

16      I WILL SKIP OVER THIS SLIDE AND GO STRAIGHT TO THE

17  DISPUTED TERMS.

18      THE FIRST IS WHAT DOES IT MEAN FOR AN EVENT TO BE

19  INDICATIVE OF AN OPTION TO CHARGE?  AND THIS IS WHAT

20  PLAINTIFFS HAD SAID DOES NOT NEED TO BE CONSTRUED BECAUSE ITS

21  MEANING IS CLEAR.

22      AND SPECIFICALLY AT PAGE 12 OF THEIR BRIEF, I AM ON SLIDE

23  80, AT PAGE 12 OF THEIR BRIEF, THE PLAINTIFF DESCRIBES IT AS

24  FOLLOWS.  THEY SAY:

25          "HERE, THERE IS NO MEANINGFUL DISPUTE ABOUT THE

1              PROPER CONSTRUCTION AND IT'S NOT NECESSARY TO EXPLAIN

2              WHAT THE PATENT COVERS BECAUSE THE CLAIM SPEAKS FOR

3              ITSELF.  AS A PRACTICAL MATTER, THIS CLAIM TERM

4              DESCRIBES WHAT HAPPENS IN THE PAYMENT SYSTEM WHEN A

5              PAYMENT BY A TELEPHONE NUMBER IS DECLINED."

6         AND NOW HERE'S WHAT THE PLAINTIFF SAY IS SO CLEAR.  THEY

7    SAY:

8              "IN THAT SCENARIO, THE SYSTEM AUTOMATICALLY DETECTS

9              AN EVENT INDICATIVE OF AN OPTION TO CHARGE A

10             TRANSACTION TO THE USER USING AN ALTERNATIVE PAYMENT

11             METHOD, SUCH AS A CREDIT CARD."

12        WE WOULD RESPECTFULLY SUBMIT, YOUR HONOR, THAT THAT'S

13   ABOUT AS CLEAR AS MUD AND WOULD BE EXTREMELY UNHELPFUL TO A

14   JURY.

15        IF WE LOOK AT SLIDE 83, THIS IS JUST ONE OF MANY, MANY

16   CASES THAT SAY THAT WHAT THE COURT NEEDS TO DO IN CONSTRUING

17   TERMS IS TO ENSURE THAT THE JURY FULLY UNDERSTANDS THE COURT'S

18   CLAIM CONSTRUCTION RULINGS AND WHAT THE PATENTEE COVERED BY

19   THE CLAIMS.

20        HERE, IF THE JURY IS GOING TO BE ASKED WHETHER OR NOT OUR

21   ACCUSED PRODUCTS HAVE AN EVENT INDICATIVE OF AN OPTION TO

22   CHARGE, I THINK THE JURY WILL SPEND HOURS TRYING TO FIGURE OUT

23   WHAT THAT MEANS.  IT DOESN'T HAVE -- IT'S NOT A COMMONPLACE

24   PHRASE.  IT HAS NO SELF-EVIDENT MEANING, THEREFORE,

25   CONSTRUCTION IS NECESSARY IN ORDER TO DETERMINE THE CLAIM

1    SCOPE.

2        UNFORTUNATELY, THEN WHAT DO WE DO, THE CLAIM IS NOT

3    TERRIBLY HELPFUL.  SO OBVIOUSLY WE ARE TAUGHT BY PHILLIPS

4    LET'S TURN TO THE SPECIFICATION, THE INTRINSIC EVIDENCE.

5        UNFORTUNATELY IT IS QUITE SCARCE.  THERE IS ONLY ONE PLACE

6    IN THE SPECIFICATION WHERE THIS LANGUAGE IS ACTUALLY USED OR

7    LANGUAGE SIMILAR TO IT.  I AM NOW ON SLIDE 85, YOUR HONOR.

8        SPECIFICALLY, IF WE LOOK AT COLUMN 11, LINES 33 GOING OVER

9    TO COLUMN 12, LINE 28, IT TALKS ABOUT THIS EVENT HAPPENING.

10   SO, IN THE EVENT THAT THE SUBSCRIBER LINE FAILING THE CHECKS

11   CARRIED OUT ON IT, IN OTHER WORDS, THE CHECK HAPPENS AND IT IS

12   DECLINED, THE SYSTEM PROVIDES OPTIONAL USE OF A CREDIT CARD.

13       THAT'S EXACTLY WHAT OUR PROPOSED CONSTRUCTION IS SAYING.

14   THE SYSTEM THEN PROVIDES THE USER WITH AN OPTION FOR AN

15   ALTERNATIVE PAYMENT.  IN THIS EXAMPLE, IT'S A CREDIT CARD.  IT

16   CAN BE AN OPTION TO USE A DEBIT CARD.  IT CAN BE VARIOUS OTHER

17   OPTIONS, BUT THE USER, ACCORDING TO THE LANGUAGE OF THE CLAIM,

18   HAS TO BE PRESENTED WITH THAT OPTION IN ORDER FOR THE USER TO

19   BE ABLE TO CHOOSE THE OPTION.  AND THAT'S WHY WE HAVE ASKED

20   FOR THE CONSTRUCTION THAT WE HAVE.

21       PLAINTIFFS HAVE ALSO OFFERED THAT IF THE COURT DOES

22   BELIEVE CONSTRUCTION IS NECESSARY, AND I AM NOW ON SLIDE 86,

23   THAT THE COURT SIMPLY SUBSTITUTE THE TERM "INDICATIVE OF" FOR

24   THE TERM "RELATING TO".  FRANKLY, WE SUBMIT THAT THAT MAKES IT

25   EVEN MORE VAGUE AS TO WHAT IT IS TALKING ABOUT.

1      WHAT IS THE EVENT RELATING TO THE OPTION?  IT PROVIDES NO

2   CLARITY AT ALL AND IT IS NOT BASED ANYWHERE IN THE

3   SPECIFICATION OR THE PROSECUTION HISTORY.

4      UNLESS THE COURT HAS ANY OTHER QUESTIONS, I WOULD SUBMIT.

5          **THE COURT:**  MS. BROOKS, NEXT TIME YOU CAN TAKE A

6   BREATH.  I WON'T -- OKAY?  IT WILL HELP THE COURT REPORTER IF

7   YOU BREATHE.

8          **MS. BROOKS:**  I WILL, YOUR HONOR.  THANK YOU.

9          **THE COURT:**  SO A RESPONSE?

10         **MR. MC ANDREWS:**  YES, YOUR HONOR.

11     WE HAVE OFFERED AN ALTERNATIVE CONSTRUCTION ONLY IN THE

12  EVENT THAT YOUR HONOR IS INCLINED TO CONSTRUE THE TERM.

13     MS. BROOKS REFERRED TO THE SPARSE SUPPORT THAT WE MIGHT

14  FIND IN THE SPECIFICATION, AND I AGREE, THE SPECIFICATION DOES

15  NOT FULLY INFORM THIS ISSUE CONCERNING OPTIONS.

16     BUT SHE POINTED TO COLUMN 11 OF THE '500 PATENT, AT 33,

17  LINE 33 TO PAGE (SIC) 12, LINE 30, AND QUOTED THE EXCERPT

18  QUOTE "THE SYSTEM 10 PROVIDES OPTIONAL USE OF A CREDIT CARD."

19     THE IMPORTANT POINT HERE IS IF THE IMMEDIATELY PRECEDING

20  SENTENCE AND THIS REMARK, THIS COMMENT, THIS QUOTE IS MADE

21  WITH RESPECT TO TABLE 2 OF THE '500 PATENT, THE IMMEDIATELY

22  PRECEDING EXCERPT OUT OF THE PATENT READS QUOTE "THE TABLE

23  PROVIDES AN EXEMPLARY DESCRIPTION OF THE EXPLANATION OF EACH

24  CODE."

25     SO, AGAIN, THIS WAS AN OPPORTUNITY WHERE MR. LYNAM AND HIS

1    CO-INVENTORS COULD HAVE VERY SPECIFICALLY INCLUDED THE

2    LIMITATION.  FORGET THE SPECIFICATION FOR THE MOMENT, YOUR

3    HONOR, THEY COULD HAVE INCLUDED RIGHT IN THE CLAIM WHERE

4    LIMITATIONS ARE SUPPOSED TO APPEAR.  WHAT THEY DID SAY ABOUT

5    THIS EXAMPLE IN THE SPECIFICATION, THE EXAMPLE CITED TO BY MY

6    COLLEAGUE IS EXACTLY THAT; IT IS AN EXAMPLE AND NOTHING MORE.

7         AND THE LIMITATION IS A CONSEQUENTIAL LIMITATION.

8    "AUTOMATICALLY DETECTING AN EVENT THAT PROMPTS PRESENTATION OF

9    AN OPTION TO THE USER."  PROMPTS PRESENTATION OF AN OPTION TO

10   THE USER.  THAT'S A RATHER DRAMATIC STEP IN THE PROCESS AND

11   THERE IS NO SUPPORT FOR IT IN THE LANGUAGE OF THE CLAIM AT

12   ALL.

13        FOR THAT REASON, WE DON'T THINK THAT CONSTRUCTION IS

14   REQUIRED.  IF YOUR HONOR IS INCLINED TO CONSTRUE THE TERM, WE

15   HAVE OFFERED OUR PROPOSED CONSTRUCTION.  AND I WON'T READ THAT

16   BECAUSE IT IS IN THE MATERIALS.

17        ANY QUESTIONS, YOUR HONOR?

18             **THE COURT:**  NO.

19             **MR. MC ANDREWS:**  OKAY.  CAN I VERY, VERY BRIEFLY GET

20   BACK ON A POINT THAT I -- YOU HAD GIVEN ME REBUTTAL, BUT YOU

21   LIMITED ME TO ONE SLIDE.

22             **THE COURT:**  NOT RIGHT NOW.

23             **MR. MC ANDREWS:**  OKAY.

24             **THE COURT:**  WE WILL SEE HOW WE ARE DOING AT THE END.

25             **MR. MC ANDREWS:**  I APPRECIATE THAT.  THANK YOU.

1      **THE COURT:**  ALL RIGHT.  THE NEXT ONE WE HAVE THEN IS

2   BILLING TELEPHONE NUMBER.  JUST LOOK AT THIS REAL QUICK.

3               (PAUSE IN THE PROCEEDINGS.)

4          **MR. MC ANDREWS:**  ON THIS ONE --

5          **THE COURT:**  HOLD ON.

6          **MR. MC ANDREWS:**  I AM SORRY.

7          **THE COURT:**  OKAY.  MR. MC ANDREWS COME ON UP.

8      YOU WANT ME TO ADD IN THE WORDS ASSOCIATED WITH --

9   "TELEPHONE NUMBER ASSOCIATED WITH A BILLING ACCOUNT" INSTEAD

10  OF "BILLING TELEPHONE NUMBER", "TELEPHONE NUMBER ASSOCIATED

11  WITH A BILLING ACCOUNT".

12     GO AHEAD.

13         **MR. MC ANDREWS:**  THAT'S RIGHT.  I THINK OUR PROPOSED

14  CONSTRUCTION IS BY WAY OF CONTRAST TO PAYPAL'S.  THIS IS A NEW

15  CONSTRUCTION.  YOU CAN SEE THE FOOTNOTE, THE FOOTNOTE 1.  WE

16  OBVIOUSLY HAD A CHANCE TO LOOK AT IT.  WE JUST GOT THE

17  PROPOSED CONSTRUCTION THIS PAST WEEKEND.  THE TEAM AND I DID

18  NOT HAVE AN OPPORTUNITY TO LOOK AT IT UNTIL WE STARTED

19  PREPARING FOR THIS SPECIFIC ISSUE --

20         **THE COURT:**  AM I MISSING SOMETHING?  IS THERE A NEW

21  CONSTRUCTION ON THIS?

22         **MS. BROOKS:**  YOUR HONOR, THERE IS A NEW -- NOT FROM

23  WHAT WE JUST SUBMITTED TO THE COURT, BUT FROM WHAT WE

24  ORIGINALLY SUBMITTED TO THE COURT AFTER WE HAD AN OPPORTUNITY

25  TO REVIEW PAYMENTONE'S BRIEFS AND IN AN ATTEMPT TO NARROW THE

```
 1    ISSUES BETWEEN THE PARTIES; THAT THE SIGNIFICANT CHANGE IS
 2    THAT WE HAD ORIGINALLY PROPOSED A LIMITATION AGAIN OF
 3    "LANDLINE", BUT IN LIGHT OF THE CLAIM DIFFERENTIATION
 4    ARGUMENTS THAT PAYMENTONE MADE IN THEIR BRIEFS AS TO THE '500
 5    AND THE '504 PATENTS, NOT AS TO THE '049, WE MADE THE
 6    DETERMINATION THAT WE WOULD REMOVE THE DISPUTED LANDLINE
 7    REQUIREMENT AND SIMPLY -- SIMPLIFY THIS TO BE THE TELEPHONE
 8    NUMBER THAT IS BILLED.
 9         THE COURT:  OKAY.  WHEN I WAS TAKING MY NOTES IT WAS
10    OVER THE WEEKEND, SO I DID NOT HAVE THE NEW FILING.  SO THEN
11    PAYPAL'S CONSTRUCTION, IS IT IN HERE?
12         MS. BROOKS:  YES, IT IS, YOUR HONOR.  IT IS AT SLIDE
13    89.  IF WE CAN, YOUR HONOR WOULD LIKE, IF WE CAN SWITCH TO OUR
14    SLIDES, WE CAN PUT IT ON THE SCREEN.
15         THE COURT:  SO YOU JUST WANT "TELEPHONE NUMBER
16    ASSOCIATED WITH A BILLING ACCOUNT".
17         MS. BROOKS:  THAT'S PAYMENTONE, YOUR HONOR.
18         THE COURT:  SORRY.  TELEPHONE NUMBER BILLED FOR A
19    TRANSACTION.
20         MS. BROOKS:  CORRECT, YOUR HONOR.
21         THE COURT:  THANK YOU.
22      MR. MC ANDREWS, YOU CAN START.
23         MR. MC ANDREWS:  YOUR HONOR, PART OF THE JOINT
24    SUBMISSION THAT WE INCLUDED, I ACTUALLY ADDED TO PAYPAL'S
25    FOOTNOTE 1 AND I SAID THAT WE DON'T OBJECT TO THE INCLUSION.
```

```
 1    OBVIOUSLY THIS IS A SEARCH FOR THE TRUTH.  WE WANT THE CLAIMS

 2    TO BE CONSTRUED PROPERLY.

 3        WE DID SAY WE WANT TO RESERVE THE RIGHT TO TAKE A LOOK AT

 4    THIS, AND WE SIMPLY DID NOT HAVE TIME TO DO IT BETWEEN THEN

 5    AND NOW.

 6        YOUR HONOR, IT MAY BE OF NO CONSEQUENCE.  WE MAY STIPULATE

 7    TO THIS.  I JUST DON'T WANT TO DO THAT ON THE RECORD RIGHT NOW

 8    UNTIL I HAVE HAD A CHANCE TO CONFER WITH MY CLIENT AND MY TEAM

 9    ABOUT IT.

10        I THINK WHAT I WOULD PROPOSE IS GIVING US JUST A FEW DAYS

11    TO TAKE A LOOK AT THIS, AND THEN I WILL GET IN TOUCH WITH OUR

12    PAYPAL COLLEAGUES WITH AN ANSWER.  AND IT IS POSSIBLE,

13    ALTHOUGH I AM NOT CERTAIN, BUT IT IS POSSIBLE THAT WE WILL

14    STIPULATE TO THE TERM.

15            THE COURT:  OKAY.  NEXT ISSUE.

16        AND JUST -- I WOULD LIKE A RESPONSE ON THIS BY FRIDAY

17    CLOSE OF BUSINESS.

18            MS. SZPONDOWSKI:  THE NEXT TERMS WE ARE TURNING TO

19    THE '504 PATENT.

20        SO "DETERMINE FIRST OR SECOND REFERENCE SUBSCRIBER DATA".

21    THE REASON I AM PULLING THIS UP IS I JUST WANT TO HIGHLIGHT

22    WHAT IS DIFFERENT ABOUT THESE TERMS.  SO PAYPAL'S PROPOSED

23    CONSTRUCTION INCLUDES THE WORDS "STORED DATA" AND THE OTHER

24    DIFFERENCE IS "ABOUT A SUBSCRIBER" VERSUS "ASSOCIATED WITH A

25    CUSTOMER".
```

```
1        SO WITH RESPECT TO THE STORED DATA, I THINK IT'S HELPFUL

2   HERE TO LOOK AT THE CLAIM LANGUAGE.  SO THE CLAIM LANGUAGE IN

3   LINE 18 IS WHERE THIS STARTS, "SEARCHING A FIRST DATABASE

4   USING THE ANI DATA" --

5        THE COURT:  HOLD ON.  WHEN I SEE A COURT REPORTER'S

6   HANDS GO UP LIKE THIS (PHONETIC) THAT MEANS -- AND OUT OF THE

7   CORNER OF MY EYE I CAN SEE THEM, THEY WERE SO HIGH.

8        MS. SZPONDOWSKI:  I APOLOGIZE.

9        THE COURT:  I UNDERSTAND I HAVE YOU ON TIGHT -- YOU

10  ARE DOING WELL.  EVERYBODY IS DOING WELL.  WE HAVE YOU ON A

11  SCHEDULE HERE.  DON'T KILL MY COURT REPORTER.

12       ALL RIGHT.  GO AHEAD.

13       MS. SZPONDOWSKI:  SO STARTING, THIS IS CLAIM 1 OF THE

14  '504 PATENT STARTING AT LINE 18 THROUGH ABOUT LINE 21 IS WHERE

15  THESE CLAIM TERMS ARE LOCATED.  SO "SEARCHING A FIRST DATABASE

16  USING THE ANI DATA OR THE BTN DATA TO DETERMINE FIRST

17  REFERENCE SUBSCRIBER DATA."

18       NOW, PAYPAL WANTS TO IMPORT THE WORD "STORED" INTO THIS

19  CONSTRUCTION TO SAY THAT THE FIRST REFERENCE SUBSCRIBER DATA

20  AND THE SECOND REFERENCE SUBSCRIBER DATA IS STORED.  THERE IS

21  NOTHING IN THE SPECIFICATION THAT REQUIRES THAT DATA BE

22  STORED.  IN FACT, THE WORD "DETERMINE" WAS USED IN THE CLAIMS.

23       SO, WE DON'T DISPUTE THAT IT COULD BE STORED, OUR POSITION

24  IS THAT IT DOESN'T HAVE TO BE STORED.  THE PATENTEE DIDN'T USE

25  THE WORDS LIKE RETRIEVE, OR RETURN, OR INQUIRY IN THE CLAIM,
```

1  WORDS THAT YOU MIGHT ASSOCIATE WITH DATA THAT IS STORED IN A

2  DATABASE.

3      SO -- SO FOR THAT REASON WE DON'T BELIEVE THAT THE DATA --

4  THE FIRST REFERENCE SUBSCRIBER DATA OR SECOND REFERENCE

5  SUBSCRIBER DATA HAS TO BE STORED.

6      SECOND, PAYPAL CITES IN THEIR BRIEF TO COLUMN 7 OF THE

7  '504 PATENT.  SO PAYPAL CITES TO COLUMN 7, ROWS 34 TO 37,

8  WHICH STARTS, "ONCE THE LIDB DATABASE OR HOST HAS BEEN

9  INTERROGATED, IT RETURNS INDUSTRY STANDARD LIDB CODES", ET

10 CETERA.

11     IF WE LOOK UP A FEW LINES, WE CAN SEE THAT THIS

12 DESCRIPTION IS DESCRIBING A CERTAIN EMBODIMENT, AN EXEMPLARY

13 EMBODIMENT.  AND, IN FACT, IF WE GO BACK TO THE '504 PATENT TO

14 CLAIM 17, WE CAN SEE THAT THAT IS THE EMBODIMENT THAT'S

15 ACTUALLY DESCRIBED AND WHAT PAYPAL CITES IN SUPPORT FOR

16 IMPORTING THE WORD "STORED" INTO THE CLAIM.

17     SO, AGAIN, WE DON'T DISPUTE THAT THE DATA COULD BE STORED;

18 OUR POSITION IS THAT IT DOESN'T HAVE TO BE AND THERE'S NOTHING

19 IN THE SPECIFICATION THAT SAYS IT HAS TO BE.

20     MOVING ON TO THE "ABOUT" AND "ASSOCIATED WITH" TERMS AS

21 WELL AS THE "CUSTOMER" AND "SUBSCRIBER" DISPUTES.  I THINK

22 THIS JUST GOES TO CLARITY FOR THE JURY.  PAYMENTONE USED THE

23 WORDS "ASSOCIATED WITH" BECAUSE CLAIM 1 USES THE WORDS

24 "ASSOCIATED WITH".  THE WORDS "ASSOCIATED WITH" ARE USED

25 THROUGHOUT THE PATENT.  IT ALLOWS FOR CONSISTENCY.

1          IN OUR BRIEF, WE ACTUALLY CITED TWO EXAMPLES IN THE

2     SPECIFICATION THAT SUPPORT USE OF "ASSOCIATED WITH".  FOR

3     EXAMPLE, IN COLUMN 1, LINES 44 TO 46 AND IN COLUMN 2, LINES 37

4     TO 39.  SO WE BELIEVE "ASSOCIATED WITH" IS A BETTER -- IS

5     BETTER WORDING TO USE IN ORDER TO MAKE THE CONSTRUCTION CLEAR

6     FOR THE JURY.

7          AND, FINALLY, WITH RESPECT TO "CUSTOMER" VERSUS

8     "SUBSCRIBER", BOTH OF THESE TERMS ARE USED INTERCHANGEABLY IN

9     THE PATENT.  I WILL PULL UP ONE EXAMPLE HERE.

10         SO, IN COLUMN 41, LINES 26 THROUGH 40 -- HERE WE GO, YOU

11    CAN SEE THAT "SUBSCRIBER" OR "CUSTOMER" IN LINES 28 AND 29 IS

12    USED.  THAT'S JUST ONE EXAMPLE.

13         AT PAGE 16 OF PAYMENTONE'S OPENING BRIEF, WE LIST A WHOLE

14    BUNCH OF OTHER EXAMPLES THAT SHOW THAT "CUSTOMER" AND

15    "SUBSCRIBER" IS USED INTERCHANGEABLY THROUGHOUT THE '504

16    PATENT.  WE SIMPLY BELIEVE THAT IS A MORE CLEAR WORD TO USE

17    FOR THE JURY.

18         AND IT'S INTERESTING IN THAT IN PAYPAL'S CONSTRUCTION OF

19    "SUBSCRIBER LINE", IN THE '049 PATENT, THEY SUBSTITUTE THE

20    WORD "CUSTOMER" FOR "SUBSCRIBER" FOR THAT TERM.  AND I BELIEVE

21    MS. LUTTON SAID EARLIER TODAY THAT THEY BELIEVED THAT WOULD BE

22    A MORE CLEAR TERM FOR THE JURY.  AND SO WE AGREE WITH THAT,

23    AND THAT'S WHY WE USED THE WORD CUSTOMER IN THOSE TERMS.

24              **THE COURT:**  THANK YOU.

25         MS. BROOKS, WHY DON'T YOU START WITH THAT LAST COMMENT

1    BECAUSE I HAD THAT EXACT THOUGHT.

2           **MS. BROOKS:**  YES, YOUR HONOR.

3       ACTUALLY, IN REFERENCE TO THE WORD "SUBSCRIBER" VERSUS

4    "CUSTOMER", AS FAR AS THIS CLAIM IS CONCERNED -- IF I CAN FIND

5    MY SLIDE WHERE IT SPECIFICALLY TALKS ABOUT THAT -- IF WE LOOK

6    AT THE SPECIFICATION IN RELATION TO THIS CLAIM VERSUS THE

7    CLAIMS THAT MS. LUTTON WAS TALKING ABOUT IN THE '049, IT IS

8    TALKING HERE ABOUT WHAT HAPPENS WHEN THE ANI IS COMMUNICATED

9    TO THE API LOCATION DATA IS ALSO PROVIDED WHICH HAS BEEN FED

10   IN BY THE USER.

11      THEN IT TALKS ABOUT, "IF, HOWEVER, THE ADDRESS SUPPLIED BY

12   THE CUSTOMER DOES NOT MATCH", THEN WHAT HAPPENS IS, IT GOES

13   ON, IT SAYS, "INDICATES THE LEVEL OF LIKELIHOOD THAT THE

14   CALLER", THAT'S THE CUSTOMER, "AND THE ACCOUNT OWNER," THAT'S

15   THE SUBSCRIBER, "ARE THE SAME PERSON".

16      SO, WHAT WE ARE TALKING ABOUT HERE IS THERE ARE

17   CIRCUMSTANCES WHERE THE CUSTOMER MAY NOT BE THE SUBSCRIBER.

18   THERE ARE CERTAINLY CIRCUMSTANCES WHERE THE CUSTOMER AND THE

19   SUBSCRIBER ARE ONE IN THE SAME, BUT WHEN THEY ARE NOT, THEN

20   YOU HAVE THIS SITUATION THAT IS DESCRIBED HERE IN THIS

21   SPECIFICATION AT COLUMN 8, LINES 45 THROUGH 59.

22      HENCE, WHEN IN RELATION TO THIS PATENT AND THIS CLAIM, WE

23   DO NEED TO DIFFERENTIATE BETWEEN CUSTOMER AND SUBSCRIBER

24   BECAUSE THE SPECIFICATION DOES.

25           **THE COURT:**  WHAT SLIDE NUMBER IS THAT?

1          **MS. BROOKS:**  THAT IS SLIDE 103, YOUR HONOR.

2          AND GOING BACK NOW TO SLIDE 96, JUST VERY BRIEFLY.  WE

3     ALSO HAVE AN ISSUE OF NOT JUST "SUBSCRIBER" VERSUS "CUSTOMER",

4     BUT OF "STORED", AND WHETHER OR NOT STORED IS REQUIRED.

5          FIRST OF ALL, THE CLAIM TERM IS "DETERMINED FIRST

6     REFERENCE SUBSCRIBER DATA, DETERMINE SECOND REFERENCE

7     SUBSCRIBER DATA."

8          BOTH PARTIES AGREE THAT THE WORD "DETERMINE" MEANS OBTAIN.

9     WHERE WE DISAGREE IS WHETHER OR NOT THAT SUBSCRIBER DATA NEEDS

10    TO BE STORED IN THE DATABASE IN ORDER TO OBTAIN IT.  AND

11    THAT'S WHERE WE SEE OUR DISAGREEMENT ON SLIDE 97.

12         HERE IS THE SITUATION, YOUR HONOR.  IF, FOR EXAMPLE, I

13    WANT TO OBTAIN MY BLACK HIGH HEELS BY SEARCHING MY CLOSET, IF

14    THEY ARE NOT STORED IN MY CLOSET, I AM NOT GOING TO BE ABLE TO

15    OBTAIN THEM.

16         AND SO, IT'S -- WHAT PAYMENTONE IS ARGUING RENDERS THE

17    CLAIM NONSENSICAL.  THEY AGREE THAT THE SEARCH OF THE DATABASE

18    IS IN ORDER TO OBTAIN THE SUBSCRIBER INFORMATION AND YET THEY

19    DON'T AGREE THAT THAT INFORMATION NEEDS TO BE STORED IN THE

20    DATABASE.

21         CASE LAW HAS ALREADY DEALT WITH THIS ISSUE ON SLIDE 100.

22    WE CITE THE COMCAST CASE.  IT SPECIFICALLY TALKS ABOUT HOW LAY

23    JURY MEMBERS WOULD UNDERSTAND THAT A DATABASE IS STORED IN

24    SOME FASHION.  IF WE GO TO THE DICTIONARY TERM, THE SAME

25    THING.  DATABASE IS DEFINED AS A COLLECTION OF DATA STORED

```
1    ELECTRONICALLY.

2         PAYMENTONE, FOR THEIR IDEA THAT IT DOESN'T NEED TO BE

3    STORED, CITES NO INTRINSIC EVIDENCE AND SIMPLY ARGUES IN THEIR

4    BRIEF THAT A PERSON OF ORDINARY SKILL IN THE ART WOULD

5    RECOGNIZE ONLY THAT A DATABASE MUST BE SEARCHED IN ORDER TO

6    OBTAIN THE DATA ASSOCIATED WITH THE CUSTOMER, NOT THAT THE

7    DATABASE ITSELF -- THE DATA ITSELF MUST BE STORED IN THAT

8    DATABASE.  THAT RENDERS THE CLAIM COMPLETELY NONSENSICAL.  I

9    CAN'T OBTAIN DATA FROM A DATABASE UNLESS THAT DATA IS STORED

10   THERE.

11        THE BECTON, DICKINSON CASE, AND COUNSEL REPRESENTED

12   BECTON, DICKINSON AND WE REPRESENTED TYCO.  AND IN THAT

13   SITUATION, THE COURT HAD RENDER THE CLAIMS -- THE COURT'S

14   CONSTRUCTION HAD RENDERED THE CLAIM NONSENSICAL BY MAKING THE

15   SPRING IN THE SAFETY GUARD THE SAME AS THE HINGE, THEREFORE,

16   THE SPRING WOULD HAVE TO CONNECT TO ITSELF, AND ITSELF WOULD

17   HAVE TO BE THE SPRING.

18        AND THE FEDERAL CIRCUIT SAID IT'S JUST -- IT'S NONSENSICAL

19   UNFORTUNATELY.  AND THE JURY WAS SO CONFUSED BY IT THAT THEY

20   ENDED UP RETURNING A VERDICT FOR BECTON, DICKINSON AT THE

21   TRIAL.

22        THE FEDERAL CIRCUIT, IN REVERSING THE CLAIMS CONSTRUCTION

23   AND SAYING THE COURT HAD RENDERED THE CLAIM NONSENSICAL, THEN

24   ENTERED JUDGMENT ON BEHALF OF TYCO.  SO A NONSENSICAL CLAIM

25   CONSTRUCTION CAN HAVE SIGNIFICANT RAMIFICATIONS ESPECIALLY
```

1  WITH A JURY.  IF THEY THINK THE DATA DOESN'T HAVE TO BE STORED

2  IN THE DATABASE, SOMEHOW YOU ARE ABLE TO OBTAIN IT FROM A

3  DATABASE IN WHICH IT IS NOT STORED.

4      I HAVE ALREADY ADDRESSED THE "SUBSCRIBER" AND "CUSTOMER".

5      THE LAST ISSUE IS WHETHER THE TERM SHOULD BE "ABOUT" OR

6  "ASSOCIATED WITH".  THIS IS NOT A GREAT SIGNIFICANCE.  WE WERE

7  ATTEMPTING TO CLARIFY, AGAIN FOR THE JURY, WHAT IT MEANS.

8  "ASSOCIATED WITH" HAS CERTAIN -- IT'S CERTAIN LOOSE LANGUAGE.

9  WHAT DOES IT MEAN TO BE ASSOCIATED WITH?  WHEREAS IF THE DATA

10  IS SPECIFICALLY ABOUT A CUSTOMER, THAT IS THE KIND OF LANGUAGE

11  A JURY WOULD UNDERSTAND.

12      AND I DON'T THINK, REALLY, PAYMENTONE IS DISPUTING THAT

13  IT'S TALKING ABOUT SOMETHING OTHER THAN DATA ABOUT THE

14  CUSTOMER, BUT FOR SOME REASON THEY PREFER THIS LANGUAGE.

15      UNLESS THE COURT HAS ANY QUESTIONS, I WOULD SUBMIT.

16          **THE COURT:**  NO.  THANK YOU.

17      LET ME ASK THIS:  IS THERE A SUGGESTION THAT THE DATA CAN

18  BE OBTAINED FROM ANYWHERE ELSE OTHER THAN A DATABASE THAT

19  EXISTS WITH INFORMATION?

20          **MS. SZPONDOWSKI:**  I AM SORRY, IS THERE A WHAT?

21          **THE COURT:**  I SAID IS THERE -- AM I MISSING

22  SOMETHING?  THAT IS, IS THERE A CONTENTION THAT SOMEHOW THE

23  DATA CAN, IN FACT, BE OBTAINED FROM A DATABASE SOMEWHERE THAT

24  IS NOT STORING THE DATA WHICH IT IS SEEKING TO OBTAIN?

25          **MS. SZPONDOWSKI:**  I THINK THE CLAIM LANGUAGE IS

 1    TELLING HERE ABOUT WHAT'S HAPPENING.

 2         SO, WE ARE SEARCHING A "FIRST DATABASE USING THE ANI DATA

 3    OR THE BTN DATA".  THAT'S WHERE THE SEARCHING OF THE DATABASE

 4    IS HAPPENING.  IN ORDER -- I PUT THAT IN -- "TO DETERMINE

 5    FIRST REFERENCE SUBSCRIBER DATA".

 6         SO THERE'S NO INDICATION NECESSARILY THAT THAT FIRST

 7    REFERENCE SUBSCRIBER DATA HAS TO COME FROM THE DATABASE.

 8    THERE COULD BE SEARCHING HAPPENING POTENTIALLY.  THERE COULD

 9    BE SOMETHING ELSE HAPPENING.

10         AGAIN, WE DON'T DISPUTE THAT IT COULD BE STORED IN THE

11    DATABASE, BUT FROM A TECHNICAL PERSPECTIVE, AND I AM NOT A

12    TECHNICAL EXPERT, IT'S PRETTY CLEAR IN THE PATENT THAT THESE

13    ARE EXAMPLES OF WAYS THAT THE FIRST REFERENCE SUBSCRIBER DATA

14    CAN BE OBTAINED.

15              **THE COURT:**  MS. BROOKS, COME ON BACK.

16              **MS. BROOKS:**  YES, YOUR HONOR.

17              **THE COURT:**  YOU CAN BOTH STAY UP THERE.

18         AGAIN, I AM TRYING -- I HAVE TO GO BACK AND READ ALL THESE

19    PATENTS MORE CAREFULLY.

20         CLAIM NUMBER 1 HERE IS SUPPOSED TO BE TEACHING SOMETHING.

21    IT'S NOT JUST AN EXAMPLE, IT'S TEACHING SOMETHING.  SO WHAT IS

22    IT TEACHING IF NOT THAT YOU ARE SUPPOSED TO GET THE DATA FROM

23    SOMEWHERE TO VERIFY WHAT IS HAPPENING?

24              **MS. SZPONDOWSKI:**  WELL, YOU COULD BE GETTING THE DATA

25    ACROSS A NETWORK WHERE POTENTIALLY IT ISN'T STORED IN THE

```
1    DATABASE.

2              THE COURT:  IS THAT WHAT IT WAS TEACHING?  IS THAT

3    WHAT YOU ARE SUGGESTING?

4              MS. SZPONDOWSKI:  WELL, IT'S TEACHING THAT YOU GET

5    YOUR FIRST REFERENCE SUBSCRIBER DATA, AND THE EXAMPLE USED ARE

6    THE DATABASES, BUT IT'S NOT LIMITED TO THAT IN THE

7    SPECIFICATION.

8              MS. BROOKS:  YOUR HONOR, I SUBMIT IF WE LOOK AT THE

9    CLAIM, THE CLAIM LIMITS IT TO THAT.  IT SPECIFICALLY SAYS

10   "SEARCHING A FIRST DATABASE USING THE ANI", WHICH STANDS FOR

11   AUTOMATIC NUMBER IDENTIFICATION DATA, "OR THE BTN," THE -- WE

12   JUST ARGUED THIS TERM, THE "BILLING TELEPHONE NUMBER" DATA TO

13   DETERMINE THE FIRST -- OR OBTAIN, WE HAVE ALL AGREED, MEANS

14   OBTAIN THE FIRST REFERENCE SUBSCRIBER DATA.

15        SO YOU ARE SEARCHING A DATABASE USING EITHER THE ANI OR

16   THE BTN TO OBTAIN THE SUBSCRIBER DATA.  YOU CAN'T OBTAIN IT IF

17   IT'S NOT THERE.  IT HAS TO BE STORED IN THAT FIRST DATABASE.

18        THEN YOU SEARCH A SECOND DATABASE USING THE IDENTIFICATION

19   DATA TO DETERMINE THE SECOND REFERENCE SUBSCRIBER DATA.  SO,

20   AGAIN, TO OBTAIN A SECOND REFERENCE SUBSCRIBER DATA.

21        WHY?  WHY DO YOU DO THAT?  THE NEXT LIMITATION TELLS US.

22   THE REASON YOU DO THAT IS NOW YOU COMPARE THE FIRST REFERENCE

23   SUBSCRIBER DATA THAT YOU GOT FROM THE FIRST DATABASE TO THE

24   SECOND REFERENCE SUBSCRIBER DATA THAT YOU GOT FROM THE SECOND

25   DATABASE, AND THEREBY, NOW WE GO TO THE LAST LIMITATION,
```

```
1    VERIFY THE IDENTITY OF THE SUBSCRIBER IF THAT FIRST REFERENCE

2    SUBSCRIBER DATA CORRESPONDS TO THE SECOND REFERENCE SUBSCRIBER

3    DATA.

4        SO, WITHOUT THE STORAGE, THEN THIS IS ALL MEANINGLESS.

5    YOU ARE LOOKING FOR SOMETHING THAT ISN'T THERE AND THEN

6    COMPARING IT TO SOMETHING YOU DIDN'T FIND.  AND THE WHOLE

7    POINT OF THE CLAIM THEN WOULD BE RENDERED MEANINGLESS.

8            MS. SZPONDOWSKI:  I DISAGREE THAT THE CLAIM LANGUAGE

9    STATES THAT THE FIRST REFERENCE SUBSCRIBER DATA OR THE SECOND

10   REFERENCE SUBSCRIBER DATA HAS TO COME FROM THE DATABASE

11   BECAUSE OF THAT WORD "DETERMINE" THAT'S USED.

12       IF IT WAS SUPPOSED TO COME FROM THE DATABASE, WHY

13   DIDN'T -- WHY DIDN'T THEY USE THE WORD LIKE RETRIEVE OR

14   INQUIRY OR RETURN.  THOSE WORDS ARE USED ELSEWHERE IN THE

15   PATENT TO DESCRIBE CERTAIN EMBODIMENTS, BUT NOT HERE IN THE

16   CLAIM.

17           MS. BROOKS:  YOUR HONOR, I SUBMIT IT USES THE WORD

18   "SEARCHING".  SEARCHING THE FIRST DATABASE AND SEARCHING THE

19   SECOND DATABASE.

20       AS I GAVE THE EXAMPLE, IF I SEARCHED TO OBTAIN MY SHOES

21   FROM MY CLOSET, THEY ARE NOT STORED IN MY CLOSET, I AM NOT

22   GOING TO BE ABLE TO OBTAIN THEM.  THAT'S THE WHOLE POINT.  IT

23   SPECIFICALLY SAYS "SEARCHING A FIRST DATABASE, SEARCHING A

24   SECOND DATABASE", AND THEN OBTAINING THAT DATA.

25           MS. SZPONDOWSKI:  BUT THE SEARCHING IS SEPARATE FROM
```

1    THE DETERMINING.

2        THEY CAN BE UNRELATED.  THE SEARCHING CAN BE UNRELATED TO

3    THE DETERMINING.  IN SOME CASES IT MAY BE RELATED, IN WHICH

4    CASE IT MAY BE STORED IN THE DATABASE.  WE DON'T DISPUTE THAT.

5    IN OTHER CASES, IT MAY BE UNRELATED.

6        **MS. BROOKS:**  I WOULD SUBMIT, YOUR HONOR, THAT IS

7    COMPLETELY CONTRARY TO THE CLAIM LANGUAGE.  IT SAYS "SEARCHING

8    A FIRST DATABASE TO OBTAIN THE FIRST REFERENCE SUBSCRIBER

9    DATA".  "SEARCHING A SECOND DATABASE TO OBTAIN THE SECOND

10   REFERENCE SUBSCRIBER DATA."

11       THE PARTIES AGREE THE WORD "DETERMINE" MEANS OBTAIN, AND

12   SPECIFICALLY SAYS YOU ARE DOING THE SEARCHING IN ORDER TO

13   OBTAIN.  THEY ARE NOT DISCONNECTED.  THEY ARE DIRECTLY

14   CONNECTED BY THAT WORD "TO".  THAT IS WHY YOU ARE DOING THE

15   SEARCHING.

16       **MS. SZPONDOWSKI:**  BUT, AGAIN, I DON'T THINK THE WORD

17   "OBTAIN" NECESSARILY MEANS COMING FROM THE DATABASE.  OBTAIN

18   IS MORE LIKE DETERMINE, AND RETRIEVE, RETURN, OR QUERY ARE

19   WORDS THAT WE WOULD USE TO INDICATE THAT SOMETHING HAS TO COME

20   FROM A DATABASE.

21       **THE COURT:**  OKAY.  THAT HELPS CLARIFY THE DISPUTE.

22   NEXT TOPIC.

23       **MS. SZPONDOWSKI:**  THE NEXT TERM "FIRST OR SECOND

24   DATABASE".  PAYMENTONE AGREES NOW WITH PAYPAL THAT THIS TERM

25   DOESN'T REQUIRE CONSTRUCTION.

1          **THE COURT:**  PERFECT.

2          **MS. SZPONDOWSKI:**  THEN THE FINAL TERM FOR THE '504

3    PATENT IS THE -- BASICALLY THE LAST SECTION OF CLAIM 1.  AND

4    THE DISPUTE HERE IS ONE WORD, WHICH IS THIS WORD "SEPARATE",

5    WHICH PAYPAL INCORPORATES IN.

6          THERE IS NO REASON TO PUT THE WORD "SEPARATE" INTO THE

7    CLAIM CONSTRUCTION.  IT'S CLEAR FROM THE CLAIM LANGUAGE THAT

8    SEARCHING A FIRST DATABASE HAPPENS, SEARCHING A SECOND

9    DATABASE HAPPENS, THE FIRST REFERENCE SUBSCRIBER DATA IS

10   OBTAINED, THE SECOND REFERENCE SUBSCRIBER DATA IS OBTAINED,

11   AND THOSE ARE COMPARED.

12         THERE IS NOTHING IN THE SPECIFICATION THAT SAYS THAT THE

13   REFERENCE SUBSCRIBER DATA HAS TO BE DIFFERENT.  BOTH COULD BE

14   ADDRESS DATA, FOR EXAMPLE, THAT IS BEING COMPARED.  IN FACT,

15   IF THEY ARE DIFFERENT, THEN THAT WOULD RENDER THE LAST ELEMENT

16   OF CLAIM 1.  LET ME PUT IT BACK UP.

17         THE LAST ELEMENT OF CLAIM 1 HERE, WHICH IS ACTUALLY TRYING

18   TO DETERMINE WHETHER THE FIRST REFERENCE SUBSCRIBER DATA

19   CORRESPONDS TO THE SECOND REFERENCE SUBSCRIBER DATA.  IT WOULD

20   RENDER IT USELESS IF THEY ALWAYS HAVE TO BE SEPARATE AND

21   DIFFERENT THEN WHY ARE WE COMPARING THEM TO DETERMINE WHETHER

22   THEY CORRESPOND TO EACH OTHER.

23         SO, FROM PAYMENTONE'S PERSPECTIVE, WE DON'T BELIEVE THE

24   WORD "SEPARATE" SHOULD BE INCORPORATED INTO THE CLAIM

25   CONSTRUCTION.

```
1        THAT'S THE ONLY DISPUTE THAT THE PARTIES HAVE.  WE HAVE

2    AGREED TO ALL OTHER ASPECTS OF THE CONSTRUCTION.  AND I THINK

3    FROM A JURY PERSPECTIVE, THE WORD "SEPARATE" IN THERE IS JUST

4    GOING TO BE CONFUSING.  SO THAT'S REALLY ALL I HAVE ON THAT

5    SECTION.

6             THE COURT:  ALL RIGHT.

7        MR. MARSHALL?

8             MR. MARSHALL:  GOOD AFTERNOON, YOUR HONOR.

9        I THINK HERE THE INQUIRY REALLY DOES START WITH THE CLAIM

10   LANGUAGE.  IN THE THIRD LIMITATION, "THE FIRST REFERENCE

11   SUBSCRIBER DATA IS DETERMINED BY A FIRST SEARCH OF A FIRST

12   DATABASE" AND THE --

13            THE COURT:  WHAT SLIDE ARE YOU ON?

14            MR. MARSHALL:  THAT IS SLIDE 112.

15            THE COURT:  GO AHEAD.

16            MR. MARSHALL:  IN THE SECOND -- I AM SORRY, IN THE

17   FOURTH LIMITATION, "THE SECOND REFERENCE SUBSCRIBER DATA IS

18   OBTAINED BY SEARCHING A SECOND DATABASE".  IN THE LAST

19   LIMITATION THESE TWO ARE COMPARED TO VERIFY THE IDENTITY OF

20   THE SUBSCRIBER.  AND, AGAIN, THE SEPARATE TERM IS THE POINT OF

21   DISPUTE.

22       BUT, AGAIN, AS MR. MC ANDREWS POINTED OUT EARLIER, THE

23   FOCUS HERE SHOULD BE THE PRIMACY OF THE CLAIM LANGUAGE.  THE

24   CLAIMS DICTATE THAT THERE ARE FOUR PIECES OF INFORMATION, THE

25   TELEPHONE NUMBER DATA, THE IDENTIFICATION DATA, THE FIRST
```

1    REFERENCE SUBSCRIBER DATA, AND THE SECOND REFERENCE SUBSCRIBER

2    DATA.

3        THIS IS DEPICTED HERE IN THIS GRAPHIC ON SLIDE 115.

4    AGAIN, THERE ARE TWO SEPARATE STEPS USING THE FIRST AND SECOND

5    PIECES OF INFORMATION TO IDENTIFY A THIRD AND FOURTH PIECE OF

6    INFORMATION.

7        NOW, THE FEDERAL CIRCUIT HAS TOLD US BEFORE THAT THE USE

8    OF THE TERMS "FIRST" AND "SECOND" IN A CLAIM IS A WAY TO

9    DISTINGUISH REPEATED INSTANCES OF AN ELEMENT.  SO WHAT WE ARE

10   DEALING WITH HERE ARE TWO DIFFERENT PIECES OF INFORMATION.

11       NOW, PAYPAL DOES NOT DISPUTE THAT THE TWO PIECES OF

12   INFORMATION COULD HAVE THE SAME VALUE, BUT THESE ARE TWO

13   SEPARATE ITEMS.  THEY ARE TWO SEPARATE CONTAINERS, IF YOU

14   WILL, THAT MAY HAVE THE SAME VALUE.

15       PAYMENTONE WOULD SUGGEST THAT THESE ARE, IF THEY HAVE THE

16   SAME VALUE, THAT MEANS THEY ARE THE SAME PIECE OF INFORMATION;

17   THAT'S WHY WE WOULD LIKE TO CLARIFY FOR THE JURY THAT THESE

18   ARE SEPARATE PIECES OF INFORMATION.

19       IF THEY WERE NOT, AS WE SHOW IN SLIDE 117, THE COMPARISON

20   STEP WOULD BE MEANINGLESS.  WHY WOULD YOU COMPARE PIECES OF

21   INFORMATION WITH ITSELF?  YOU MIGHT CERTAINLY COMPARE TWO

22   PIECES OF INFORMATION WITH THE SAME VALUE, BUT NOT A PIECE OF

23   INFORMATION WITH ITSELF.  WE THINK "SEPARATE" CLARIFIES THAT.

24            **THE COURT:**  WELL A -- YOU ARE ASKING THAT I PUT IN

25   THE WORD "DATABASE".  NO, "STORED DATA".

1          **MR. MARSHALL:**  "SEPARATE".

2          **THE COURT:**  I AM TALKING ABOUT ANOTHER -- AREN'T WE

3    IN ANOTHER PORTION OF THE '504 -- A DATABASE SUGGESTS THAT

4    THERE'S LOTS OF INFORMATION.  SO WHY CAN'T YOU COMPARE

5    INFORMATION IN ONE DATABASE?

6          **MR. MARSHALL:**  WELL, I THINK THAT YOU ARE QUERYING

7    THE DATABASE, WHETHER IT'S ONE DATABASE OR TWO DATABASES

8    ULTIMATELY --

9          **THE COURT:**  I HAVE A DATABASE THAT HAS FIVE DIFFERENT

10   FIELDS.  SO WHY COULDN'T I COMPARE INFORMATION IN THE SAME

11   DATABASE AMONG VARIOUS FIELDS?

12         **MR. MARSHALL:**  YOU ABSOLUTELY COULD.  I DON'T THINK

13   THAT BY ADDING "SEPARATE" OR BY LOOKING AT THE LANGUAGE OF

14   THIS CLAIM, IT PRECLUDES THAT COMPARISON.

15      IT SIMPLY SAYS THAT YOU ARE COMPARING YOUR STREET ADDRESS

16   WITH YOUR ZIP CODE.  OR, FOR INSTANCE, YOU'RE COMPARING --

17   PAYMENTONE IN THEIR BRIEFING RELIED ON AN EXAMPLE BY WHICH THE

18   ADDRESS SUPPLIED BY THE CUSTOMER IS COMPARED WITH THE ADDRESS

19   STORED IN A VERIFICATION DATABASE.  IT IS STILL AN ADDRESS

20   BEING COMPARED WITH AN ADDRESS, BUT THE POINT IS IS THAT THESE

21   ARE SEPARATE PIECES OF INFORMATION THAT ARE DETERMINED AT

22   SEPARATE TIMES IN SEPARATE STEPS.

23         **THE COURT:**  OKAY.  I AM NOT SO SURE THAT YOUR

24   CONSTRUCTION MAKES IT MORE CLEAR FOR ME, BUT WE WILL SEE.

25      GO AHEAD.

1        **MS. SZPONDOWSKI:**  THAT'S MY EXACT POINT, BASICALLY.

2   I DON'T THINK ADDING THE WORD "SEPARATE" MAKES IT ANY MORE

3   CLEAR.

4        IF PAYPAL'S POSITION IS THAT THE DATA COULD HAVE THE SAME

5   VALUE, THEN I THINK HAVING THE WORD "SEPARATE" IN THERE -- THE

6   WORD "SEPARATE" INSINUATES THAT THEY HAVE TO BE DIFFERENT.  TO

7   ME, AT LEAST, I DON'T SEE WHAT IS GAINED BY IMPORTING THE WORD

8   "SEPARATE" INTO THE CLAIM CONSTRUCTION.

9        **THE COURT:**  OKAY.  NEXT.

10        **MS. BROOKS:**  YOUR HONOR, I BELIEVE WE ARE NOW TURNING

11   THEN TO PAYPAL'S PATENT THE '917 PATENT.  AND THAT WOULD BE

12   STARTING AT SLIDE 119.

13        AND MIGHT I INQUIRE YOUR HONOR, BECAUSE MY COPY OF THE

14   SLIDE DECK THAT WE HANDED YOUR HONOR STOPS AT 122.  HOPEFULLY

15   YOUR HONOR'S DOES NOT AND GOES THROUGH SLIDE 134.

16        **THE COURT:**  I HAVE BEYOND 122.  MINE ENDS ON

17   PAGE 136.

18        **MS. BROOKS:**  THANK YOU.

19        JUST TO RECAP, YOUR HONOR, ON THE '917 PATENT, PAYPAL'S

20   AFFIRMATIVE PATENT.  IT DEALS WITH THE COMPUTERIZED PAYMENT

21   SYSTEM FOR PURCHASING GOODS AND SERVICES ON THE INTERNET.

22        YOUR HONOR MAY RECALL FROM THE TUTORIAL A DESCRIPTION OF

23   HOW THIS WORKED.  THIS WAS ONE OF THE FOUNDATIONAL PATENTS

24   THAT ENABLED VENDORS AND CUSTOMERS TO BE ABLE TO INTERACT AND

25   SELL GOODS AND SERVICES OVER THE INTERNET.

1          AS THE PATENT DESCRIBES, IT WAS VERY SLOW TO BEGIN WITH,

2     THIS TYPE OF TRANSACTION.  IN THE OLD DAYS YOU GO, YOU KNEW

3     THE GROCER, THE GROCER KNEW YOU.  YOU KNEW YOU WERE GETTING

4     WHAT THE GROCER SAID YOU WERE GETTING.  THE GROCER KNEW YOU

5     WERE PAYING YOUR BILLS.  EVERYTHING WAS FINE.  YOU HAD THIS

6     FACE-TO-FACE INTERACTION.

7          THEN WHAT HAPPENS, YOU GET TO THE INTERNET.  THE BUYER

8     DOESN'T KNOW THE SELLER, VICE VERSA, PLUS YOU HAVE POTENTIALLY

9     THESE THIRD PARTIES COMING IN AND HACKING INTO THIS

10    BUYER/SELLER RELATIONSHIP AND OBTAINING VERY SENSITIVE

11    INFORMATION.

12         SO WHAT THE '917 ARCHITECTURE DOES IS THAT WHEN THE

13    PAYMENT INFORMATION GOES FROM THE BUYER TO THE SELLER, IT GOES

14    THROUGH THIS COMPUTER NETWORK THAT HAS BOTH A PUBLIC PART TO

15    IT AND A NONPUBLIC PART, OR A SECURE PART.  AND IT'S THE

16    SENSITIVE INFORMATION THAT GOES INTO THAT SECURE PART TO

17    PREVENT, FOR EXAMPLE, THE THIRD PARTIES FROM GETTING AHOLD OF

18    IT AND ALSO PREVENT THE SELLER, FOR EXAMPLE, FROM ABUSING AND

19    TAKING THAT INFORMATION AND USING IT FOR OTHER THAN THE

20    PARTICULAR TRANSACTION.

21         SO THE ACTUAL TRANSACTION BETWEEN THE BUYER AND THE SELLER

22    WHERE THE CREDIT INFORMATION IS PASSED OR THE PAYMENT

23    INFORMATION IS PASSED IS DONE IN THIS NONPUBLIC PART.  THAT

24    THEN GOES TO THE BANK, FOR EXAMPLE, WHERE IT IS CONFIRMED THAT

25    THE BUYER HAS THE AUTHORIZATION TO MAKE THAT SORT OF A CHARGE.

1        SO THE DISPUTED TERM IS WHAT IS, WHAT DOES IT MEAN BY

2   "SECURE PART OF THE COMPUTER SYSTEM".  SO HERE WE LOOK AT

3   SLIDE 124.  THIS IS WHERE IT'S USED IN THE CLAIM.

4        SO WHAT HAPPENS IS THIS INFORMATION GOES THROUGH THE

5   SECURE PART OF THE COMPUTER SYSTEM, COMMUNICATING TO AN AGENT

6   OF THE SELLER VIA SECURE COMMUNICATION, ET CETERA.  HERE ARE

7   THE TERMS.

8        WE BELIEVE IT STANDS FOR ITSELF.  SECURE PART OF THE

9   COMPUTER SYSTEM IS THE SECURE PART OF THE COMPUTER SYSTEM.  IT

10   IS THE ORDINARY MEANING.

11        PAYMENTONE WOULD HAVE THE COURT CONSTRUE IT AS A PRIVATE

12   NETWORK, SUCH AS AN ETHERNET NETWORK.  I WILL EXPLAIN IN A

13   MOMENT WHY THAT OBLITERATES THE INVENTION AND CLAIM ITSELF.

14        IF ORDINARY MEANING, IF YOUR HONOR BELIEVES A JURY

15   WOULDN'T UNDERSTAND WHAT SECURE PART OF THE COMPUTER SYSTEM

16   MEANS, WE WOULD PROPOSE "A PORTION OF THE COMPUTER SYSTEM WITH

17   RESTRICTED ACCESSIBILITY VIA THE QUASI-PUBLIC NETWORK".

18        WHY DO WE MAKE THAT PROPOSAL?  FIRST OF ALL, IF WE LOOK AT

19   THE CLAIM LANGUAGE ITSELF, YOU CAN SEE WHERE IT IS DESCRIBING

20   THE SECURE PART OF THE COMPUTER SYSTEM.  THAT'S ON SLIDE 126.

21        NOW, IF WE LOOK AT THE SPECIFICATION ON SLIDE 127, IT IS

22   DESCRIBING HOW THE PROBLEM TO BE SOLVED WAS THE DIFFICULTY TO

23   PAY FOR GOODS OR SERVICES USING THE INTERNET, AND THAT IT WAS

24   VERY SLOW TO TAKE OFF BECAUSE OF THIS -- PEOPLE HAVING

25   HESITANCY TO SEND CREDIT CARD NUMBER OVER THE INTERNET BASED

1    ON SECURITY PURPOSES.

2        SO, HERE'S THE SOLUTION.  ON SLIDE 128 WE SHOW THE ACTUAL

3    STRUCTURE.  AND WHAT WE HAVE IS THE INFORMATION COMING IN,

4    YOU'VE GOT YOUR USER, THEN YOU HAVE YOUR USER/SELLER.  THEY

5    ARE COMMUNICATING VIA THE INTERNET.  THEN INFORMATION GOES --

6    THE PAYMENT SYSTEM ITSELF IS IN THE RED BOX.

7        YOU'VE GOT ABOVE-THE-LINE SYSTEM, WHICH WOULD BE THE

8    PUBLIC SYSTEM OR ATTACHED TO THE QUASI-PUBLIC NETWORK, THE

9    INTERNET, AND THEN YOU HAVE THE FIREWALL.  BELOW THAT, YOU'VE

10   GOT THE BLOW-THE-LINE SYSTEM WHERE THE SECURE INFORMATION

11   RESIDES AND CANNOT BE USED BY OTHERS.

12       THIS IS A DESCRIPTION ON SLIDE 129, COLUMN 3, LINES 60

13   THROUGH 67, WHAT THE PURPOSE IS TO THIS SECURE PART OF THE

14   COMPUTER SYSTEM.  IT PREVENTS UNAUTHORIZED ACCESS TO THE

15   BELOW-THE-LINE SYSTEM, IT PREVENTS HACKERS ON THE INTERNET

16   FROM ENTERING THE BELOW-THE-LINE SYSTEM.

17       BOTH PORTIONS -- AND THIS IS WHERE WE DIFFER NOW FROM

18   PAYMENTONE -- BOTH PORTIONS, THE ABOVE THE LINE AND BELOW THE

19   LINE ARE THE COMPUTER SYSTEM.  YOU CAN'T HAVE ONE WITHOUT THE

20   OTHER AND HAVE THIS INVENTION WORK OR HAVE THE CLAIM HAVE ANY

21   MEANING.

22       SO OUR PROPOSED CONSTRUCTION TALKS ABOUT THE SYSTEM, THE

23   PART OF THE COMPUTER SYSTEM THAT IS BELOW THE LINE.  THE CLAIM

24   LANGUAGE SPECIFICALLY DICTATES THAT THE WHOLE COMPUTER SYSTEM

25   IS BOTH, SECURE AND THE NONSECURE ARCHITECTURE.

1       ON SLIDE 131, AGAIN, WE ARE SHOWING YOU WHERE IN THE CLAIM

2   THIS TALKS ABOUT THIS SPECIFIC LANGUAGE.

3       THE SECURE PART WE TALK ABOUT ON SLIDE 132.  AND THE

4   SPECIFICATION IS NOT THE INTERNET.  THAT'S THE PUBLIC PART.

5   THAT'S ONE THAT VIRTUALLY ANYONE WOULD HAVE ACCESS TO.  IT'S

6   THE PART BELOW THE WALL.

7       NOW WE COME TO WHAT PAYMENTONE'S PROPOSED CONSTRUCTION IS.

8   IT'S ON SLIDE 133.

9       PAYMENTONE'S PROPOSED CONSTRUCTION IS, THAT "IT IS A

10  PRIVATE NETWORK SUCH AS, FOR EXAMPLE, THE ETHERNET".  AND WE

11  CIRCLED ON THIS SLIDE, YOUR HONOR, THAT THIS IS ALL THEY WOULD

12  BE TALKING ABOUT THEN IS THIS COMMUNICATION THAT OCCURS

13  BETWEEN THE ABOVE THE LINE PART OF THE COMPUTER SYSTEM AND THE

14  BELOW THE LINE PART OF THE COMPUTER SYSTEM.

15      IF THAT'S ALL THAT IS, THE SECURE PART IS SIMPLY THAT

16  LITTLE PIECE OF COMMUNICATION, THEN THE CLAIM, ONCE AGAIN,

17  WOULD NOT COVER ANY INVENTION.  IT WOULD HAVE NO MEANING.

18  THERE WOULD BE NO WAY TO CONNECT WITH THE OUTSIDE OR TO CONVEY

19  THE INFORMATION ON.  IT WOULD SIMPLY BE TALKING TO EACH OTHER,

20  THE ABOVE THE LINE VERSUS BELOW THE LINE.

21      IT WOULD READ OUT THE EMBODIMENTS IN THE SPECIFICATION.

22  IN SLIDE 134 WE SHOW A COUPLE OF THEM.  IT TALKS ABOUT, FOR

23  EXAMPLE, HOW THE BELOW-THE-LINE COMPUTER RUNS A BELOW-THE-LINE

24  PROGRAM AND THE ABOVE-THE-LINE PROGRAM COMMUNICATES.  IF IT IS

25  JUST THAT LITTLE PRIVATE INFORMATION SECTION BETWEEN THE TWO,

1    IT WOULDN'T BE ABLE TO RUN A PROGRAM AS REQUIRED IN THE

2    SPECIFICATION.

3        THE SPECIFICATION ALSO REQUIRES THE STORAGE OF A FILE.

4    AGAIN, IF IT WAS JUST WHAT PAYMENTONE ARGUES, IT WOULDN'T BE

5    ABLE TO DO THAT EITHER.

6        PAYMENTONE'S ALTERNATIVE CONSTRUCTION ALSO VITIATES A

7    PORTION OF THE CLAIM TERM.  SO PAYMENTONE SUGGESTS THAT IF

8    IT'S NOT JUST A PRIVATE NETWORK SUCH AS AN ETHERNET NETWORK,

9    THEN IT'S THE COMPUTER HARDWARE AND SOFTWARE RUNNING ON A

10   PRIVATE NETWORK.  THIS VITIATES THE TERM PART OF THE COMPUTER

11   SYSTEM.  IT ELIMINATES THE REQUIREMENT THAT IT FORM PART OF

12   THE COMPUTER SYSTEM.

13       AND WE CITE THE BALDWIN CASE ON SLIDE 135, YOUR HONOR,

14   THAT EXPLAINS TO THE COURT WHY ONE CANNOT DO THAT WITH A CLAIM

15   CONSTRUCTION.

16       AND UNLESS YOUR HONOR HAS ANY QUESTIONS, I WOULD SUBMIT ON

17   THAT.

18           **THE COURT:**  THANK YOU.

19       LET'S SEE.  A NEW FACE.

20           **MR. YANG:**  GOOD AFTERNOON, YOUR HONOR.

21       BEFORE I GET STARTED, I WOULD LIKE TO JUST LET THE COURT

22   KNOW THAT WE HAD RESERVED TEN MINUTES FOR THIS CLAIM TERM, BUT

23   THERE WAS ACTUALLY AN IMPORTANT REBUTTAL WHICH WE HAD

24   PREVIOUSLY WHERE THE COURT --

25           **THE COURT:**  ACTUALLY YOU RAN OVER YOUR TIME.

1    MR. MC ANDREWS RAN OVER HIS TIME WITH HIS FIRST TERM BY FIVE

2    MINUTES.

3        GO AHEAD.

4            **MR. YANG:**  SO I'D JUST LIKE TO LIMIT MYSELF TO MAYBE

5    EIGHT OR NINE MINUTES, AND GIVE HIM THAT LAST MINUTE TO --

6            **THE COURT:**  I WOULD SUGGEST YOU START MOVING.

7            **MR. YANG:**  ALL RIGHT.

8        WHAT I WOULD LIKE TO START WITH IS FIGURE 1 OF THE PATENT

9    BECAUSE IT REALLY SHOWS WHAT PAYPAL DID AND MORE IMPORTANTLY

10   WHAT THEY DID NOT INVENT.  FIGURE 1 WAS ALREADY SHOWN BY MY

11   COLLEAGUE AT PAYPAL.  I AM GOING TO PULL IT UP RIGHT HERE.

12   IT'S --

13           **THE COURT:**  I HAVE IT.  GO AHEAD.

14           **MR. YANG:**  IN FIGURE 1, YOU SEE THE ABOVE-THE-LINE

15   SYSTEM AS WELL AS BELOW-THE-LINE SYSTEM.  WE ALSO SEE THE

16   INTERNET.  AND FIGURE 1 ALSO SHOWS USERS AND BUYERS

17   INTERACTING ON THE INTERNET.

18       WHAT IT ALSO SHOWS IS THAT THERE'S A SELLER'S AGENT, WHICH

19   IS THIS ELEMENT 115 HERE.  AND THE SELLER'S AGENT IS NOT

20   COMMUNICATING WITH THE PAYMENT SYSTEM OVER THE INTERNET.  AND

21   THAT'S WHAT IS CRITICALLY IMPORTANT HERE, YOUR HONOR, BECAUSE

22   THE COMMUNICATION BETWEEN THE PAYMENT SYSTEM AND THE SELLER'S

23   AGENT HAPPENS OFF OF THE INTERNET.

24       AND I CAN, JUST TO SHOW YOU I AM NOT MAKING THIS UP, I

25   WOULD LIKE TO DIRECT THE COURT'S ATTENTION TO COLUMN 4, FOR

```
 1    INSTANCE, AT LINE 8 -- OR SORRY, STARTS AT LINE 6.  SAYS:

 2              "THE ABOVE-THE-LINE COMPUTER 50 AND THE

 3              BELOW-THE-LINE COMPUTER 52 ARE CONNECTED TOGETHER VIA

 4              A PRIVATE NETWORK."  IN A PREFERRED EMBODIMENT, THE

 5              PRIVATE NETWORK IS AN ETHERNET NETWORK."

 6        AND THEN IF WE LOOK TO COLUMN 10, IT FURTHER EXPLAINS

 7    THIS.  COLUMN 10 AT LINE 56 SAYS:

 8              "THE COMMUNICATION TO 50 TO THE SELLER'S AGENT 115 IS

 9              PERFORMED OFF OF THE INTERNET ON A SECURE

10              COMMUNICATION CHANNELS."

11        THIS IS NOT A SEMINAL OR A FOUNDATIONAL PATENT AS PAYPAL

12    WOULD CLAIM.  IT'S REALLY LIMITED TO A TRANSACTION WHICH THE

13    BANK CARD PROCESSOR, WHICH IS THE SELLER'S AGENT, SUCH AS VISA

14    IS COMMUNICATING ON A PRIVATE NETWORK.  AND THAT IS WHAT OUR

15    PROPOSED CONSTRUCTION REFLECTS.

16        AND IF I CAN MAYBE DIRECT THE COURT'S ATTENTION TO CLAIM 1

17    ITSELF.  IT IS OBVIOUSLY A METHOD CLAIM HAVING SIX STEPS.

18        OKAY.  I THINK OUR SCANNER IS BACK SO I AM GOING TO ZOOM

19    IN ON CLAIM 1.

20        AND AS YOUR HONOR CAN SEE THE FIRST THREE CLAIM

21    LIMITATIONS HERE, I WILL DISCUSS A QUASI-PUBLIC NETWORK.  STEP

22    ONE IS ON A COMPUTER SYSTEM COUPLED TO SAID QUASI-PUBLIC

23    NETWORK.  SAME GOES FOR STEP TWO.  SAME GOES FOR STEP THREE.

24        ONCE YOU GET TO STEP FOUR, THOUGH, THERE'S MENTION OF A

25    SECURE PART OF THE COMPUTER SYSTEM.  THAT'S WHAT I WAS TALKING
```

1    ABOUT WHEN I SHOWED YOU FIGURE 1 WHERE THE COMMUNICATION

2    BETWEEN THE SELLER'S AGENT AND THE PAYMENT SYSTEM IS HAPPENING

3    OFF OF THE INTERNET.  THAT'S THE SECURE PART IN

4    CONTRADISTINCTION TO THE QUASI-PUBLIC NETWORK, WHICH IS THE

5    INTERNET.

6        NOW, THAT DISTINCTION IS PARTICULARLY IMPORTANT HERE

7    BECAUSE IF YOU LOOK AT THE HISTORY OF THE '917 PATENT BEFORE

8    THE PATENT OFFICE, I CAN SHOW YOU THAT PAYPAL, OR REALLY THEIR

9    PREDECESSOR -- THIS WASN'T -- THIS IS NOT AN INVENTION THAT

10   WAS INVENTED BY PAYPAL.  IT WAS ACQUIRED BY PAYPAL.  AND IN

11   1997, THE PATENT OFFICE REJECTED THESE BROADER CLAIMS.

12       SO WHAT PAYPAL'S PREDECESSOR HAD TO DO IN RESPONSE TO THAT

13   IS THEY HAD TO AMEND THE CLAIMS.  WHAT I AM SHOWING YOU HERE

14   IS A PAGE FROM THAT AMENDMENT.

15       AND YOU WILL SEE THAT THE WORDS "COMPUTER SYSTEM ON THE

16   QUASI-PUBLIC NETWORK" AS WELL AS THE TERM "SECURE PART" ARE

17   UNDERLINED HERE.  AND THE REASON THEY ARE UNDERLINED IS

18   BECAUSE PAYPAL HAD TO ADD THOSE LIMITATIONS TO GET THE PATENT.

19   SO THE PATENT OFFICE TOLD THEM THAT A BROADER CLAIM WOULDN'T

20   BE VALID BECAUSE IT HAS ALREADY BEEN DONE.

21       IF YOU LOOK AT PAGE 5 -- PAGE 5 OF THAT SAME AMENDMENT,

22   PAYPAL CONFIRMS THERE THAT THE -- SAYS, "UPON CONFIRMATION,

23   THE THIRD PARTY INITIATES THE PROCESSING OF A PAYMENT FROM THE

24   SECOND PARTY TO THE FIRST PARTY VIA OFFLINE CHANNELS."

25       AND I WON'T READ THE REMAINDER OF THIS.  IT IS STYLED AS

1    EXHIBIT 1 TO DOCKET 108 IN OUR BRIEF.  BUT ON PAGE 10 OF THAT

2    DOCUMENT, PAYPAL FURTHER DISCUSSES HOW THESE AMENDMENTS NOW

3    DIFFERENTIATE THEM FROM THE PRIOR ART.

4        AND THE CASE LAW IS PRETTY CLEAR.  I THINK PAYPAL EVEN

5    CITED IT FOR US IN THEIR BRIEF.  THEY CITED THE CASE SEACHANGE

6    VERSUS C-COR, AND SPECIFICALLY SAYS, "AN APPLICANT'S ARGUMENT

7    MADE DURING PROSECUTION MAY LEAD TO A DISAVOWAL OF CLAIM SCOPE

8    EVEN IF THE EXAMINER DID NOT RELY ON THE ARGUMENT."

9        AND FINALLY I WOULD LIKE TO ADDRESS THIS IDEA THAT OUR

10   CLAIM DOESN'T MAKE -- OUR PROPOSED CONSTRUCTION DOESN'T MAKE

11   SENSE IN THE CONTEXT OF THE CLAIM.

12       I DISAGREE WITH THAT, YOUR HONOR, BECAUSE, FOR EXAMPLE,

13   MS. BROOKS GAVE EXAMPLES SUCH AS THE FACT THAT A PRIVATE

14   NETWORK COULD NOT RUN A PROGRAM OR COULD NOT STORE A FILE.  I

15   THINK IT'S CLEAR TO A PERSON HAVING ORDINARY SKILL IN THE ART,

16   YOUR HONOR, THAT THE NETWORK ITSELF IS NOT RUNNING A PROGRAM

17   OR STORING A FILE, BUT RATHER THAT IT IS COMPUTER HARDWARE OR

18   SOFTWARE RUNNING ON THAT PRIVATE NETWORK.

19       FOR THAT REASON WE GAVE THAT ALTERNATIVE CONSTRUCTION IN

20   OUR BRIEF.  IT'S IN OUR BRIEF.  WE SAID "COMPUTER HARDWARE AND

21   SOFTWARE RUNNING ON A PRIVATE NETWORK".

22       TO THE EXTENT THAT THE COURT IS CONCERNED THE JURY MIGHT

23   BE CONFUSED ABOUT A PRIVATE NETWORK STORING OR RUNNING A

24   PROGRAM, WE THINK THIS ALTERNATIVE CONSTRUCTION CURES THAT.

25       FINALLY, MS. BROOKS SUGGESTED THAT OUR ALTERNATIVE

1    CONSTRUCTION STILL DOESN'T CURE THE FACT THAT -- I GUESS SHE

2    ALLEGES WE READ THE TERM "SAID COMPUTER SYSTEM" OUT.

3        WHAT SHE'S SAYING IS THAT WE'RE SUGGESTING THAT THIS

4    COMPUTER HARDWARE/SOFTWARE DOES NOT NEED TO BE A PART OF THE

5    OVERALL COMPUTER SYSTEM.

6        I THINK IT'S CLEAR, THOUGH, THAT THE COMPUTER

7    HARDWARE/SOFTWARE THAT WE ARE PROPOSING IS PART OF THAT

8    COMPUTER SYSTEM.  AND IF NOT, THEN WE WOULD NOW ALTERNATIVELY

9    PROPOSE "COMPUTER HARDWARE AND SOFTWARE RUNNING ON A PRIVATE

10   NETWORK WHICH IS PART OF SAID COMPUTER SYSTEM", AND THEN THE

11   "SUCH AS AN ETHERNET NETWORK LIMITATION."

12       YOUR HONOR, UNLESS THERE ARE QUESTIONS FROM THE COURT, I

13   WOULD LIKE TO SAVE THE LAST TWO MINUTES FOR MY COLLEAGUE.

14           **THE COURT:**  WHAT LAST TWO MINUTES?

15       HAVE A SEAT.

16           **MS. BROOKS:**  MAY I HAVE A MINUTE OF REBUTTAL, YOUR

17   HONOR?

18           **THE COURT:**  ONE MINUTE.

19           **MS. BROOKS:**  THANK YOU, YOUR HONOR.  VERY QUICKLY.

20   IF WE CAN SWITCH TO OUR SLIDES.

21       COUNSEL'S ARGUMENT JUST PROVED OUR POINT, YOUR HONOR.  HE

22   CITED YOUR HONOR TO COLUMN 10, LINES 56 THROUGH 60 WHERE IT

23   TALKS ABOUT THE COMMUNICATION TO THE SELLER'S AGENT IS

24   PERFORMED OFF THE INTERNET ON SECURE COMMUNICATION CHANNELS.

25       IF WE LOOK AT THE CLAIM, THOSE EXACT WORDS APPEAR IN THE

1    CLAIM, NOT AS THE SECURE PART OF THE SAID COMPUTER SYSTEM, BUT

2    RIGHT BELOW IT, IT SAYS "VIA SAID SECURE COMMUNICATION

3    CHANNELS".

4        WHAT THEIR CONSTRUCTION IS TALKING ABOUT IS THIS SECURE

5    COMMUNICATION CHANNEL WHICH IS NOT THE SECURE PART OF THE

6    COMPUTER SYSTEM.  IT'S THE COMMUNICATION CHANNEL BETWEEN THE

7    SECURE PART OF THE COMPUTER SYSTEM AND THE UNSECURE PART OF

8    THE COMPUTER SYSTEM.

9        SO COUNSEL IS RIGHT, THAT LANGUAGE HE READ DOES TALK ABOUT

10   THE SECURE COMMUNICATION CHANNEL AND IT IS REFERRING TO A

11   COMPLETELY DIFFERENT CLAIM TERM.

12       AND IF I COULD JUST -- I DON'T KNOW -- ON PAGE 17 OF OUR

13   BRIEF, YOUR HONOR, WE ACTUALLY LAY SIDE BY SIDE THE FIGURE 1

14   THAT COUNSEL JUST TALKED ABOUT SHOWING WHERE THEIR

15   CONSTRUCTION LAYS, WHICH IS RIGHT HERE IN THIS COMMUNICATION

16   CHANNEL BETWEEN THE SECURE AND UNSECURE PART AND WHERE OUR

17   CONSTRUCTION IS, WHICH IS TALKING ABOUT THE SECURE PART OF THE

18   COMPUTER SYSTEM, NOT THE COMMUNICATION CHANNEL BETWEEN THE

19   TWO.

20       THANK YOU.

21         **THE COURT:**  ALL RIGHT.  BECAUSE IT IS THE HOLIDAY

22   SEASON, I WILL ALLOW YOU FIVE MINUTES BOTH SIDES.  YOU CAN SAY

23   WHATEVER IT IS YOU WANT TO SAY BECAUSE I KNOW MR. MC ANDREWS

24   IS CHOMPING AT THE BIT THERE AND GET UP AND SAY ONE MORE

25   THING.

1        I WILL SAY YOU ARE BOTH LUCKY, YOU'RE ALL LUCKY YOU

2    WEREN'T HERE AT THE END OF YESTERDAY WHEN WE WERE ON THE

3    RECORD FROM 8:30 UNTIL 4:30 WITHOUT LUNCH.  SO WE ARE BUSY

4    THESE DAYS.

5        **MR. MC ANDREWS:**  THANK YOU FOR THE EXTRA TIME, YOUR

6    HONOR.  I WILL BE VERY BRIEF ON THE POINT.

7        THIS RELATES TO THE CLAIM ELEMENT "WHEREIN PAYMENT IS

8    ROUTED TO A FINANCIAL CARD GATEWAY."  THIS IS NUMBERED AS ITEM

9    C IN OUR MAIN BRIEF.  I AM JUST GETTING THAT INTO THE RECORD

10   SO I DON'T HAVE TO READ EVERYTHING HERE.

11       THE ONE THING I DIDN'T TALK ABOUT WHEN I ADDRESSED

12   PAYPAL'S CONSTRUCTION IS THEIR INCLUSION OF THE QUALIFIER

13   "WHEREIN PAYMENT IS ROUTED TO A FINANCIAL CARD GATEWAY

14   AUTOMATICALLY" -- WE DID TALK ABOUT THE GRAFTING OF THE

15   AUTOMATICALLY LIMITATION IN -- "WHEN A VALIDATION MODULE

16   DETERMINES THAT THE TRANSACTION CANNOT BE CHARGED TO THE

17   TELEPHONE BILL."

18       NOW, THIS TERM COMES OUT OF CLAIM 8 OF THE '049 PATENT,

19   AND I WANT TO RETREAT TO OUR SLIDE OF CLAIM 8 AND TO THE

20   SPECIFIC LANGUAGE THAT WE TALKED ABOUT EARLIER.  IT'S AN

21   IMPORTANT POINT AND A CRITICAL DISTINCTION WHEN IT COMES TO

22   WHETHER WE ARE TALKING ABOUT TELEPHONE LINES, TELEPHONE

23   ACCOUNTS, OR THE TELEPHONE COMPANY.

24       IN THIS CASE, AS WE DISCUSSED EARLIER, THE COMMUNICATION

25   LINE IS ASSOCIATED HERE WITH AN ACCOUNT.  WE ARE JUST TALKING

1    ABOUT AN ACCOUNT ASSOCIATED WITH THE COMMUNICATION LINE.

2        THE OTHER CLAIMS THAT I GAVE YOU BY WAY OF EXAMPLE, YOUR

3    HONOR, CLAIM 17, CLAIMS 21, AND CLAIM 27 SHOW THE BACK AND

4    FORTH DISTINCTION OF THE VOLITIONAL LANGUAGE THAT MR. LYNAM

5    AND HIS CO-INVENTORS CHOSE.  IN SOME INSTANCES THEY SAID AN

6    ACCOUNT ASSOCIATED WITH THE COMMUNICATION LINE OR THE

7    SUBSCRIBER LINE; IN OTHERS THEY SPECIFICALLY SAID A TELEPHONE

8    ACCOUNT.

9        TO ADOPT PAYPAL'S PROPOSED CONSTRUCTION ON THIS POINT

10    WOULD UNNECESSARILY LIMIT THE ENTIRE CLAIM TO A TELEPHONE

11    LINE, A TELEPHONE ACCOUNT, AND A COMMUNICATION NECESSARILY

12    WITH THE TELEPHONE COMPANY.

13        UNLESS YOUR HONOR HAS ANY ADDITIONAL QUESTIONS WITH

14    RESPECT TO THE PAYPAL OR THE PAYMENTONE CLAIMS OR PROPOSED

15    CONSTRUCTIONS, I THINK WE ARE DONE.

16        HAPPY HOLIDAYS TO YOU AND YOUR STAFF.  WE APPRECIATE YOUR

17    TIME TODAY.

18            **THE COURT:**  OKAY.

19        ANYTHING ON THIS SIDE?

20            **MS. BROOKS:**  I THINK WE ARE DONE.

21        THANK YOU, YOUR HONOR.

22            **THE COURT:**  OKAY THEN.  YOU ARE NOW IN QUEUE.  SO WE

23    WILL GET TO YOU AS SOON AS WE REASONABLY CAN.

24        MY BEST INFORMATION IS THAT WE ARE -- THERE'S A VERY GOOD

25    SHOT THAT WE GET JUDGE TIGAR A VOTE BEFORE THE END OF THE

```
 1   YEAR, IN WHICH CASE THAT WILL BE A GREAT CHRISTMAS PRESENT TO

 2   ALL OF US ARTICLE III JUDGES.  MEANS THAT SOMEONE TAKES A

 3   NUMBER OF OUR CASES.  YOURS WON'T BE ONE THEM.  I WILL KEEP

 4   YOUR CASE BECAUSE WE HAVE NOW GONE THROUGH THE MARKMAN.  AND

 5   WE ARE WORKING THROUGH THE BACKLOG, BUT I DID WANT TO LET YOU

 6   KNOW THERE IS A BACKLOG.  WE WILL GET TO THIS AS SOON AS WE

 7   REASONABLY CAN.

 8        HAPPY HOLIDAYS TO EVERYONE.  I SEE YOU DIDN'T BRING THE

 9   YOUNG ASSOCIATE WHO WAS HERE LAST TIME.  LET HER KNOW SHE'S

10   WELCOME BACK.

11             MR. MC ANDREWS:  OURS, TOO.

12             THE COURT:  YOURS TOO.

13             MR. MC ANDREWS:  ASHLEY.

14             THE COURT:  BRING THEM ALL BACK.  TELL THEM I DON'T

15   BITE.  I REALLY DON'T.

16        BUT IN ANY EVENT, HAPPY HOLIDAYS TO EVERYBODY.  WE WILL

17   TAKE IT UNDER SUBMISSION.

18        THANK YOU.

19             MR. MC ANDREWS:  THANK YOU, YOUR HONOR.

20             (PROCEEDINGS CONCLUDED AT 1:43 P.M.)

21

22

23

24

25
```

1

2

3                    **CERTIFICATE OF REPORTER**

4            I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

5     UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6     CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

7     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9     _____

10            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

11                THURSDAY, JANUARY 10, 2013

12

13

14

15

16

17

18

19

20

21

22

23

24

25